FILED

2012 OCT 25   AM 10: 52

CLERK, U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY_____

Annette Kazmerski (SBN 211364)
    Annette.A.Kazmerski@newegg.com
Newegg Inc.
16839 East Gale Avenue
City of Industry, California 91745
Telephone (626) 271-9700
Facsimile (626) 271-9480

Attorney for Defendants
**NEWEGG INC. and NEWEGG.COM INC.**
and Counter-Plaintiff **NEWEGG INC.**

## UNITED STATES DISTRICT COURT

### CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Digitech Image Technologies, LLC,<br><br>            Plaintiff,<br><br>     vs.<br><br>Newegg Inc. and Newegg.com Inc.,<br><br>            Defendants,<br><br>Newegg Inc.,<br><br>            Counter-Plaintiff,<br><br>     vs.<br><br>Digitech Image Technologies, LLC, and<br><br>Acacia Research Corporation,<br><br>            Counter-Defendants. | Case No.: Civil Action No. SACV12-01688 ODW (MRWx)<br><br>Defendants Newegg Inc. and Newegg.com Inc.'s Answer and Affirmative Defenses to Complaint for Infringement of U.S. Patent No. 6,128,415 and Newegg Inc.'s Counterclaims to Counter-Defendants Digitech Image Technologies, LLC and Acacia Research Corporation<br><br>**Demand for Jury Trial** |

**DEFENDANTS NEWEGG INC. AND NEWEGG.COM INC.'S ANSWER AND AFFIRMATIVE DEFENSES TO COMPLAINT FOR INFRINGEMENT OF U.S. PATENT NO. 6,128,415 AND NEWEGG INC.'S COUNTERCLAIMS TO COUNTER-DEFENDANTS DIGITECH IMAGE TECHNOLOGIES, LLC AND ACACIA RESEARCH CORPORATION**

Defendants Newegg Inc. and Newegg.com Inc. (collectively, hereafter, "Newegg") by and through their undersigned counsel, hereby answer the Complaint of Digitech Image Technologies, LLC (hereinafter, "Digitech" or "Plaintiff"), as follows:

1.      Upon reasonable investigation, Newegg is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 1 of the Complaint, and therefore denies same.

2.      Admitted in part.  Newegg admits the information relating to Newegg Inc.  However, Newegg.com Inc. was merged into Newegg Inc. in 2009.  Accordingly, Newegg.com Inc. no longer exists as a separate entity, and thus the allegations relating to Newegg.com Inc. are denied.

## JURISDICTION AND VENUE ALLEGATIONS

3.      Paragraph 3 of the Complaint states a legal conclusion regarding subject matter jurisdiction to which no response is required.  To the extent a response is required, Newegg denies that it has committed or is committing acts of infringement in this District or any other District.  Newegg denies that it has caused or is causing any harm to Plaintiff in this District or in any other District.  Newegg denies that any patent infringement action has arisen in this District or any other District to invoke the Court's jurisdiction under the patent laws of the United States.

4.      Paragraph 4 of the Complaint states legal conclusions regarding personal jurisdiction to which no response is required.  To the extent a response is required, Newegg admits that it has conducted and continues to conduct business in California.  Newegg denies that any of the business it has conducted or

continues to conduct in California has infringed U.S. Patent No. 6,128,415 (hereafter, "Patent-In-Suit").   Newegg further denies that it has induced infringement of the Patent-In-Suit.  Newegg admits that it maintains a website at www.newegg.com.  Newegg denies all other allegations of Paragraph 4 of the Complaint.

5.     Paragraph 5 of the Complaint states legal conclusions regarding venue to which no response is required.  To the extent a response is required, Newegg incorporates by reference its response to Paragraph 4 of the Complaint as if fully set forth herein.

## DIGITECH'S COUNT I

## ALLEGED INFRINGEMENT OF U.S. PATENT NO. 6,128,415

6.     Admitted in part.  Newegg admits that the face of the Patent-In-Suit identifies the title and issue date set forth in Paragraph 6 of the Complaint. However, Newegg, upon reasonable investigation, is without knowledge or information sufficient to form a belief as to the truth of any other allegations set forth in Paragraph 6 of the Complaint, including the veracity of the information purportedly reported on the face of the Patent-In-Suit, and therefore denies same.

7.     The allegations of Paragraph 7 of the Complaint constitute legal conclusions to which no response is required.  To the extent a response is required, upon reasonable investigation, Newegg is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 7 of the Complaint, and therefore denies same.

8.     Denied.   The Patent-In-Suit is a document the content of which speaks for itself.

9.     The allegations of Paragraph 9 of the Complaint constitute legal conclusions regarding infringement to which no response is required.   To the extent a response is required, Newegg denies that it has infringed or is infringing the Patent-In-Suit, and denies the allegations in Paragraph 9 of the Complaint.

10.     The allegations of Paragraph 10 of the Complaint constitute legal conclusions regarding infringement to which no response is required.   To the extent a response is required, Newegg denies that it has infringed or is infringing the Patent-In-Suit, and denies the allegations in Paragraph 10 of the Complaint.

11.     The allegations of Paragraph 11 of the Complaint constitute legal conclusions regarding infringement to which no response is required.   To the extent a response is required, Newegg denies that it has infringed or is infringing the Patent-In-Suit, and denies the allegations in Paragraph 11 of the Complaint. Newegg does admit, however, that it has sold and/or sells camera products on its website, www.newegg.com.

12.     The allegations of Paragraph 12 of the Complaint constitute legal conclusions regarding infringement to which no response is required.   To the extent a response is required, Newegg denies that it has infringed or is infringing the Patent-In-Suit, and denies the allegations in Paragraph 12 of the Complaint.

13.     The allegations of Paragraph 13 of the Complaint constitute legal conclusions regarding infringement and damages to which no response is required. To the extent a response is required, Newegg denies that it has infringed or is infringing the Patent-In-Suit, and further denies that Digitech has sustained any damages.

14.     The allegations of Paragraph 14 of the Complaint constitute legal conclusions regarding infringement, validity, willfulness and damages to which no response is required.   To the extent a response is required, Newegg denies all of the allegations set forth in Paragraph 14, and specifically reserves its rights to contest infringement, validity, willfulness and damages.

## PLAINTIFF'S PRAYER FOR RELIEF

15.     Newegg denies that Digitech is entitled to any of the relief requested in paragraphs 1 through 7 inclusive of the section of its Complaint entitled "Prayer for Relief".

## AFFIRMATIVE DEFENSES
## FIRST AFFIRMATIVE DEFENSE
## (Failure to State a Claim)

The Complaint, and each and every purported claim for relief therein, fails to allege facts sufficient to state a claim against Newegg.   In addition, Newegg.com Inc. was merged into Newegg Inc. in 2009, and does not exist as a separate entity.

## SECOND AFFIRMATIVE DEFENSE
## (Noninfringement)

Newegg has not infringed and is not infringing the Patent-In-Suit under any theory, including direct infringement, infringement by inducement or contributory infringement.

## THIRD AFFIRMATIVE DEFENSE
## (Invalidity)

The Patent-In-Suit and all of the claims thereof are invalid for failure to comply with one or more of the requirements for patentability, including those set forth in the Patent Act, 35 U.S.C. §§ 1 *et seq.*, including, but not limited to, 35 U.S.C. §§ 101, 102, 103 and/or 112.

## FOURTH AFFIRMATIVE DEFENSE
## (Estoppel)

Digitech is estopped from claiming that the Patent-In-Suit covers any method, system, apparatus, or product of Newegg by virtue of prior art and/or prosecution history.

## FIFTH AFFIRMATIVE DEFENSE

### (Limitation on Damages)

To the extent Digitech seeks damages from Newegg for any alleged infringement more than six years before filing this action, the claims are barred by the statute of limitations on damages pursuant to 35 U.S.C. §286.

## SIXTH AFFIRMATIVE DEFENSE

### (Waiver, Laches, and Acquiescence)

Digitech's claims for damages and other relief are barred in whole or in part by the equitable doctrine of waiver, laches and/or acquiescence, including, but not limited to, Digitech's and any predecessors, assignors, etc. unreasonable delay in asserting the Patent-In-Suit against Newegg.

## SEVENTH AFFIRMATIVE DEFENSE

### (Failure to Provide Notice)

To the extent Digitech seeks damages for any alleged infringement prior to giving actual notice of the Patent-In-Suit to Newegg, its claims are barred pursuant to 35 U.S.C. §287(a).

## EIGHTH AFFIRMATIVE DEFENSE

### (License / Exhaustion)

Digitech is barred from enforcing the Patent-In-Suit against Newegg under the doctrines of patent exhaustion, implied or express license, estoppel, have-made rights and the use or sale of products by and/or the use or sale of products supplied by licensees cannot give rise to liability for infringement.

## NEWEGG'S PRAYER FOR RELIEF AS TO PLAINTIFF'S CLOMPLAINT

WHEREFORE, Newegg respectfully requests that the Court enter judgment in favor of Newegg and against Digitech, as follows:

A.    that Digitech takes nothing by the Complaint and that the Complaint be dismissed with prejudice;

B.    that Newegg does not infringe and has not infringed any claim of the Patent-In-Suit under any theory;

C.    that each asserted claim of the Patent-In-Suit is invalid and/or unenforceable;

D.    that no injunctive relief shall issue in favor of Digitech;

E.    that no damages shall be awarded to Digitech;

F.    that no costs, expenses, or attorneys' fees shall be awarded to Digitech;

G.    that no other relief shall be awarded to Digitech;

H.    that this case is declared exceptional pursuant to 35 U.S.C. § 285 and that attorneys' fees shall be awarded to Newegg;

I.    that costs and expenses shall be awarded to Newegg; and

J.    that such other and further relief as the Court deems just and proper shall be awarded to Newegg.

## NEWEGG INC.'S COUNTERCLAIMS

### PARTIES

1.    Newegg Inc. ("Newegg") is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located at 16839 E. Gale Avenue, City of Industry, California 91745.

2.    On information and belief, Digitech Image Technologies, LLC ("Digitech") is a California limited liability company with a place of business at 500 Newport Center Drive, Suite 700, Newport Beach, CA 92660.

3.     On information and belief, Acacia Research Corporation ("Acacia") is a Delaware corporation with a principal place of business at 500 Newport Center Drive, 7th Floor, Newport Beach, CA 92660.

4.     On information and belief, Digitech has the same physical address and place of business as Acacia.

5.     On information and belief, Digitech is a wholly owned subsidiary of Acacia, or is otherwise affiliated with Acacia.

## JURISDICTION AND VENUE

6.     A justiciable controversy exists within the meaning of 28 U.S.C. §§ 2201 and 2202 between Newegg and Digitech and Acacia regarding the noninfringement and invalidity of U.S. Patent No. 6,128,415 (hereafter, "Patent-In-Suit") because Digitech has asserted that it is the owner of the Patent-In-Suit and that Newegg infringes it.

7.     On information and belief, Acacia has an ownership interest in the Patent-In-Suit and/or has an ownership interest in Digitech directly or indirectly. Specifically, Acacia represented in a July 19, 2012 Press Release, filed with the Securities and Exchange Commission that, in "May 2012 [Acacia and its affiliates] acquired patents, originally issued to Polaroid, covering digital imaging and related technologies." *See* Ex. 1 at 12. In the same press release, Acacia also represented that all of its "intellectual property acquisitions, developments, licensing and enforcement activities are conducted solely by certain of Acacia's wholly and majority-owned operating subsidiaries." *Id.* at n. 1.

8.     This Court has personal jurisdiction over Digitech because, *inter alia*, Digitech has submitted itself to the jurisdiction of this Court by filing a Complaint and Demand for Jury Trial in this Court asserting its alleged rights in the Patent-In-Suit against Newegg. To the extent that Acacia has an interest in the Patent-In-Suit, it has likewise submitted to this Court's jurisdiction.

9.     This Court has personal jurisdiction over Digitech because upon information and belief, *inter alia*, Digitech has purposefully availed itself of the laws and protections of California, and Digitech is a California limited liability company that regularly conducts business within this state.

10.     This Court has personal jurisdiction over Acacia because upon information and belief, *inter alia*, Acacia regularly conducts business within this state.

11.     Newegg brings these Counterclaims under the Patent Laws of the United States, 35 U.S.C. § 1, *et seq.*, and the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.  This Court has jurisdiction over the subject matter of these Counterclaims under 28 U.S.C. §§ 1331, 1338 and 1367.

12.     Upon information and belief, venue for these Counterclaims is proper in this judicial district pursuant to 28 U.S.C. §§ 1391 and 1400, and under the doctrine of pendent venue.  Venue is further proper as Digitech has consented to the propriety of venue in this judicial district by filing its present claim for infringement of the Patent-In-Suit in this Court.  To the extent that Acacia has an interest in the Patent-In-Suit, it has likewise agreed to this venue.

## COUNT I

### (Declaratory Judgment of Non-Infringement)

13.     Newegg repeats and realleges each and every allegation from paragraphs 1-12 of its Counterclaims as if fully set forth herein.

14.     As evidenced by its Complaint, Digitech and Acacia purport to own the Patent-In-Suit and have asserted that certain acts by Newegg infringe that patent.

15.     Newegg has not infringed and is not infringing, in any way, any claim of the Patent-In-Suit.

16.     On information and belief, absent a declaration of non-infringement, Digitech and Acacia will continue to wrongfully assert the Patent-In-Suit against Newegg, and thereby cause Newegg irreparable injury and damage.

17.     Under these circumstances, there is a substantial controversy between parties having adverse legal interests that is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.  Moreover, principles of fair play and substantial justice require that the controversy be resolved in this judicial forum.

18.     To resolve the legal and factual questions raised by Digitech and Acacia, and to afford relief from the uncertainty and controversy that Digitech and Acacia's representations have caused, Newegg is entitled to a declaratory judgment that it does not infringe any claim of the Patent-In-Suit.

19.     This is an exceptional case and Newegg should receive an award of its attorney's fees incurred in connection with this action pursuant to 35 U.S.C. § 285.

## COUNT II

### (Declaratory Judgment of Invalidity)

20.     Newegg repeats and realleges each and every allegation from paragraphs 1-19 of its Counterclaims as if fully set forth herein.

21.     Some or all of the claims of the Patent-In-Suit are invalid for failure to comply with one or more of the requirements of Title 35 of the United States Code, including, without limitation, 35 U.S.C. §§ 101, 102, 103, 112, 256 and/or 305, and one or more sections of Title 37, Code of Federal Regulations.

22.     Upon information and belief, absent a declaration of invalidity, Digitech and Acacia will continue to wrongfully assert claims of the Patent-In-Suit against Newegg and thereby cause Newegg irreparable injury and damage.

23.     To resolve the legal and factual questions raised by Digitech and Acacia, and to afford relief from the uncertainty and controversy that Digitech and Acacia's representations have caused, Newegg is entitled to a declaratory judgment that some or all of the claims of the Patent-In-Suit are invalid.

## NEWEGG'S PRAYER FOR RELIEF ON ITS COUNTERCLAIMS

WHEREFORE, Newegg respectfully requests that the Court enter judgment in favor of Newegg and against Digitech and Acacia, and grant the following relief:

A.     a declaration that Newegg has not infringed and does not infringe, either directly or indirectly, any claim of U.S. Patent No. 6,128,415;

B.     a declaration that some or all claims of U.S. Patent No. 6,128,415 are invalid;

C.     a declaration that Digitech and Acacia shall take nothing by way of the Complaint;

D.     dismissal with prejudice of the claims of Digitech and Acacia in the Complaint, in their entirety;

E.     an order awarding Newegg its costs pursuant to 35 U.S.C. § 284;

F.     an order finding that this is an exceptional case and awarding Newegg its reasonable attorney's fees pursuant to 35 U.S.C. § 285 and other applicable statutes, rules, and law;

G.   an order enjoining Digitech and Acacia, their owners, agents, employees, attorneys, representatives, and any successors or assigns thereof, from charging or asserting infringement of any claim of U.S. Patent No. 6,128,415 against Newegg or anyone in privity with Newegg; and

H.   such other and additional relief as the Court may deem just and proper.

## **RESERVATION OF RIGHTS**

Newegg reserves the right to add any additional defenses and/or counterclaims that discovery may reveal.

## JURY DEMAND

Under Federal Rule of Civil Procedure 38(b), Newegg respectfully requests a trial by jury on all matters raised in its Answer, Affirmative Defenses, and Counterclaims or in Plaintiff's Complaint and Demand for Jury Trial.


Dated this 24th day of October, 2012

*Annette Kazmershi*

Annette Kazmerski, SBN 211364
Newegg Inc.
16839 East Gale Avenue
City of Industry, CA 91745
Telephone (626) 271-9700
Facsimile (626) 271-9480
Annette.A.Kazmerski@newegg.com

Attorney for Defendants Newegg Inc.
and Newegg.com Inc.
and Counter-Plaintiff Newegg Inc.

## **CERTIFICATE OF SERVICE**

I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document on this 24th day of October, 2012, via the Court's CM/ECF system.

_Annette Komershi_

Attorney for Defendants Newegg Inc.
and Newegg.com Inc.
and Counter-Plaintiff Newegg Inc.

# Exhibit A

EX-99.1 2 acacia_8k-ex9901.htm PRESS RELEASE

**EXHIBIT 99.1**



<u>FOR RELEASE</u>
July 19, 2012
**Contacts:** Rob Stewart
Investor Relations
Tel (949) 480-8300
Fax (949) 480-8301

**Media Contact:** Adam Handelsman
Managing Director
Lippert/Heilshorn & Associates
(212) 201-6622
ahandelsman@lhai.com

**ACACIA RESEARCH REPORTS**
**SECOND QUARTER FINANCIAL RESULTS**

Newport Beach, Calif. – (BUSINESS WIRE) – July 19, 2012 – Acacia Research Corporation[1] (Nasdaq: ACTG) today reported results for the three months ended June 30, 2012.

— Revenues in the second quarter of 2012 were $50,484,000, as compared to $39,746,000 in the comparable prior year quarter.
— Revenues for the six months ended June 30, 2012 were $149,524,000, as compared to $100,876,000 in the comparable prior year period.
— GAAP net income in the second quarter of 2012 was $6,321,000, or $0.13 per diluted share, as compared to GAAP net income of $2,139,000, or $0.05 per diluted share for the comparable prior year quarter.
— Non-GAAP net income in the second quarter of 2012 was $20,953,000, or $0.43 per diluted share, as compared to $8,161,000, or $0.19 per diluted share for the comparable prior year quarter. See below for information regarding non-GAAP measures.
— Trailing twelve-month revenues as of the end of the second quarter of 2012 increased 31% to $233,355,000, as compared to $177,927,000 as of the end of the prior year quarter.

**Consolidated Financial Results**
*Overview*

Financial highlights and operating activities during the periods presented included the following:

| | Three Months Ended June 30, | | | | Six Months Ended June 30, | | | |
|---|---|---|---|---|---|---|---|---|
| | | 2012 | | 2011 | | 2012 | | 2011 |
| Revenues (in thousands) | $ | 50,484 | $ | 39,746 | $ | 149,524 | $ | 100,876 |
| Net income (in thousands) | $ | 6,321 | $ | 2,139 | $ | 56,249 | $ | 14,492 |
| Non-GAAP net income (in thousands) | $ | 20,953 | $ | 8,161 | $ | 88,708 | $ | 27,210 |
| Diluted earnings per share | $ | 0.13 | $ | 0.05 | $ | 1.19 | $ | 0.37 |
| Pro forma non-GAAP net earnings per common share - diluted | $ | 0.43 | $ | 0.19 | $ | 1.88 | $ | 0.69 |
| New revenue agreements | | 38 | | 29 | | 78 | | 64 |
| Licensing programs generating revenues | | 27 | | 24 | | 45 | | 43 |
| Licensing programs with initial revenues | | 7 | | 5 | | 13 | | 13 |
| New patent portfolios | | 27 | | 9 | | 32 | | 17 |

Newegg's Answer, Affirmative Defenses, and Counterclaims, Exhibit A

As of June 30, 2012, trailing twelve-month revenues were as follows (in thousands):

| As of Date: | Trailing Twelve-Month Revenues | % Change |
|---|---|---|
| June 30, 2012 | $ 233,355 | 5% |
| March 31, 2012 | 222,617 | 21% |
| December 31, 2011 | 184,707 | 4% |
| September 30, 2011 | 177,014 | -1% |
| June 30, 2011 | 177,927 | |

As of June 30, 2012, on a consolidated basis, we have generated revenues from 125 technology licensing and enforcement programs, as compared to 104 programs as of the end of the prior year quarter.

### Summary Financial Results
### For the Three Months Ended June 30, 2012 and 2011

*Revenues (in thousands):*

| | Three Months Ended June 30, | | Change | |
|---|---|---|---|---|
| | 2012 | 2011 | $ | % |
| Revenues | $ 50,484 | $ 39,746 | $ 10,738 | 27% |

Revenues in the second quarter of 2012 increased $10,738,000, or 27%, to $50,484,000, as compared to $39,746,000 in the prior year quarter.

*Cost of Revenues (in thousands):*

| | Three Months Ended June 30, | | Change | |
|---|---|---|---|---|
| | 2012 | 2011 | $ | % |
| Inventor royalties | $ 9,573 | $ 8,588 | $ 985 | 11% |
| Contingent legal fees | 6,607 | 13,039 | (6,432) | -49% |

Second quarter 2012 inventor royalties and contingent legal fees, on a combined basis, as a percentage of total revenues, decreased to 32%, as compared to 54% in the comparable prior year quarter. The decrease was due primarily to a higher percentage of revenues recognized during the three months ended June 30, 2012 having no corresponding inventor royalty or contingent legal fee obligations, as compared to the revenues recognized in the comparable prior year quarter.

The economic terms of the inventor agreements and contingent legal fee arrangements, if any, including royalty rates, contingent fee rates and other terms, vary across the patent portfolios owned or controlled by our operating subsidiaries. These expenses fluctuate period to period, based on the amount of revenues recognized each period, the terms and conditions of revenue agreements executed each period and the mix of specific patent portfolios with varying economic terms generating revenues each period.

| | Three Months Ended June 30, | | Change | |
|---|---|---|---|---|
| | 2012 | 2011 | $ | % |
| Litigation and licensing expenses - patents | $ 5,268 | $ 3,761 | $ 1,507 | 40% |

Litigation and licensing expenses-patents in the second quarter of 2012 increased due primarily to higher net levels of litigation support, third-party technical consulting and professional expert expenses associated with our investment in new licensing and enforcement programs commenced since the end of the comparable prior year quarter. We expect patent-related legal expenses to continue to fluctuate period to period in connection with our current and future patent acquisition, development, licensing and enforcement activities.

Newegg's Answer, Affirmative Defenses, and Counterclaims, Exhibit A

2

| | Three Months Ended June 30, | | Change | |
|---|---|---|---|---|
| | 2012 | 2011 | $ | % |
| Amortization of patents | $ 5,393 | $ 2,600 | $ 2,793 | 107% |

Second quarter 2012 non-cash patent amortization charges increased due primarily to $3.7 million of amortization expense related to new patent portfolios acquired since the end of the comparable prior year quarter, comprised primarily of non-cash patent amortization expense related to the patents acquired in connection with our acquisition of ADAPTIX, Inc. in the first quarter of 2012. The increase was partially offset by a $1.1 million decrease in accelerated patent amortization related to recoupable up-front patent portfolio acquisition costs recovered in the second quarter of 2012, as compared to the prior year quarter.

*Other Operating Expenses (in thousands):*

| | Three Months Ended June 30, | | Change | |
|---|---|---|---|---|
| | 2012 | 2011 | $ | % |
| Marketing, general and administrative expenses | $ 5,903 | $ 4,880 | $ 1,023 | 21% |
| Non-cash stock compensation expense - MG&A | 6,000 | 3,422 | 2,578 | 75% |
| Total marketing, general and administrative expenses | $ 11,903 | $ 8,302 | $ 3,601 | 43% |

Second quarter 2012 marketing, general and administrative expenses increased due primarily to an increase in non-cash stock compensation charges resulting from an increase in the average grant date fair value of restricted shares expensed in the second quarter of 2012, as compared to the prior year quarter, a net increase in licensing, business development, and engineering personnel since the end of the comparable prior year quarter, an increase in variable performance-based compensation costs, and a net increase in corporate administrative costs.

| | Three Months Ended June 30, | | Change | |
|---|---|---|---|---|
| | 2012 | 2011 | $ | % |
| Research, consulting and other expenses - business development | $ 1,967 | $ 1,335 | $ 632 | 47% |

Second quarter 2012 research, consulting and other business development expenses increased due to an increase in business development related activities.

*Provision for Income Taxes:*

| | Three Months Ended June 30, | | Change | |
|---|---|---|---|---|
| | 2012 | 2011 | $ | % |
| Provision for income taxes (in thousands) | $ 3,494 | $ 306 | $ 3,188 | +100% |
| Effective tax rate | 35% | 14% | | |

3

Tax expense for the second quarter of 2012, as compared to the prior year quarter, included the impact of the following:

Newegg's Answer, Affirmative Defenses, and Counterclaims, Exhibit A

18

— For financial reporting purposes, tax expense is calculated without the excess tax benefit related to the exercise and vesting of equity-based incentive awards. Under U.S. generally accepted accounting principles, if a deduction reported on a tax return for an equity-based incentive award exceeds the cumulative compensation cost for those instruments recognized for financial reporting purposes, any resulting realized tax benefit that exceeds the previously calculated and recognized compensation expense for those instruments is considered an excess tax benefit, and is recognized as a credit to additional paid-in capital, as the expense does not reflect cash taxes payable. The deductions related to the exercise and vesting of equity-based incentive awards is available to offset taxable income on our consolidated tax returns. Accordingly, the noncash tax expense calculated without the excess benefit, totaling approximately $3.2 million for the second quarter of 2012, was credited to additional paid-in capital, not taxes payable.

— As of June 30, 2012, taxes paid or payable totaled approximately $12.4 million, primarily comprised of $11.9 million of foreign withholding taxes withheld by the applicable foreign tax authority on revenue agreements executed with third party licensees domiciled in certain foreign jurisdictions, and other state related taxes payable.

*Financial Condition (in thousands)*

*Summary Balance Sheet Information:*

|  | June 30, 2012 | December 31, 2011 |
|---|---|---|
| Cash & cash equivalents and investments | $ 430,868 | $ 323,286 |
| Accounts receivable | 10,822 | 2,915 |
| Total assets | 694,701 | 352,877 |
| Accounts payable and accrued expenses/costs | 18,648 | 6,625 |
| Royalties and contingent legal fees payable | 19,103 | 23,508 |
| Total liabilities | 70,997 | 30,765 |

*Summary Cash Flow Information:*

|  | Three Months Ended June 30, | | Six Months Ended June 30, | |
|---|---|---|---|---|
|  | 2012 | 2011 | 2012 | 2011 |
| Net cash provided by (used in): |  |  |  |  |
| Operating activities | $ 14,453 | $ (11,333) | $ 63,405 | $ 25,119 |
| Investing activities | (36,227) | (1,154) | (313,113) | (1,858) |
| Financing activities | 3,142 | (1,709) | 231,841 | 173,639 |
| (Decrease) increase in cash and cash equivalents | $ (18,632) | $ (14,196) | $ (17,867) | $ 196,900 |

Patent related acquisition costs in the second quarter of 2012 totaled $48,335,000, as compared to $1,125,000 during the comparable prior year quarter.

Refer to the section below entitled "Summary Financial Information" for additional summary consolidated balance sheet, income statement and cash flow information as of and for the applicable periods presented.

4

## INFORMATION ABOUT NON-GAAP FINANCIAL MEASURES

As used herein, "GAAP" refers to accounting principles generally accepted in the United States of America. To supplement our consolidated financial statements prepared and presented in accordance with GAAP, this earnings release includes financial measures, including (1) non-GAAP net income and (2) non-GAAP Earnings Per Share ("EPS"), that are considered non-GAAP financial measures as defined in Rule 101 of Regulation G promulgated by the Securities and Exchange Commission. Generally, a non-GAAP financial measure is a numerical measure of a company's historical or future performance, financial position, or cash flows that either excludes or includes amounts that are not normally excluded or included in the most directly comparable measure calculated and presented in accordance with GAAP. The presentation of this non-GAAP financial information is not intended to be considered in isolation or as a substitute for, or superior to, the financial information prepared

Newegg's Answer, Affirmative Defenses, and Counterclaims, Exhibit A

and presented in accordance with GAAP.

We use these non-GAAP financial measures for internal financial and operational decision making purposes and as a means to evaluate period-to-period comparisons of the performance and results of operations of our core business. Our management believes that these non-GAAP financial measures provide meaningful supplemental information regarding the performance of our core business by excluding non-cash stock compensation charges, non-cash patent amortization charges and excess benefit related non-cash tax expense, that may not be indicative of our recurring core business operating results. These non-GAAP financial measures also facilitate management's internal planning and comparisons to our historical performance and liquidity. We believe these non-GAAP financial measures are useful to investors as they allow for greater transparency with respect to key metrics used by management in its financial and operational decision making and are used by our institutional investors and the analyst community to help them analyze the performance and operational results of our core business.

*Non-GAAP Net income and EPS.* We define non-GAAP net income as net income calculated in accordance with GAAP, plus non-cash stock compensation charges, non-cash patent amortization charges and excess benefit related non-cash tax expense. Non-GAAP EPS is defined as non-GAAP net income divided by the weighted average outstanding shares, on a fully-diluted basis, calculated in accordance with GAAP, for the respective reporting period.

Due to the inherent volatility in stock prices, the use of estimates and assumptions in connection with the valuation and expensing of share-based awards and the variety of award types that companies can issue under FASB ASC Topic 718, management believes that providing a non-GAAP financial measure that excludes non-cash stock compensation allows investors to make meaningful comparisons between our recurring core business operating results and those of other companies, as well as providing our management with a critical tool for financial and operational decision making and for evaluating our own period-to-period recurring core business operating results. Similarly, due to the variability associated with the timing and amount of patent acquisition payments and estimates inherent in the capitalization and amortization of patent acquisition costs, management believes that providing a non-GAAP financial measure that excludes non-cash patent amortization charges allows investors to make meaningful comparisons between our recurring core business operating results and those of other companies, and also provides our management with a useful tool for financial and operational decision making and for evaluating our own period-to-period recurring core business operating results. Lastly, for financial reporting purposes, tax expense is required to be calculated without the excess tax benefit related to the exercise and vesting of equity-based incentive awards, however, the deduction related to the exercise and vesting of equity-based incentive awards is available to offset taxable income on our consolidated tax returns. Accordingly, the non-cash tax expense calculated without the excess benefit for financial statement purposes is credited to additional paid-in capital, not taxes payable, and does not represent a cash tax obligation. Management believes that providing a non-GAAP financial measure that excludes excess benefit related non-cash tax expense allows investors to asses our net results and the economic impact of income taxes based largely on cash tax obligations, make more meaningful comparisons between our recurring core business net results and those of other companies, and also provides our management with a useful tool for financial and operational decision making and for evaluating our own period-to-period recurring core business net results.

5

There are a number of limitations related to the use of non-GAAP net income and EPS versus net income and EPS calculated in accordance with GAAP. For example, non-GAAP net income excludes significant non-cash stock compensation charges, non-cash patent amortization charges and excess benefit related non-cash tax expense that are recurring, and will continue to be recurring for the foreseeable future. In addition, non-cash stock compensation is a critical component of our employee compensation programs and non-cash patent amortization reflects the cost of certain patent portfolio acquisitions, amortized on a straight-line basis over the estimated economic useful life of the respective patent portfolio, and may reflect the acceleration of amortization related to recoupable up-front patent portfolio acquisition costs. Management compensates for these limitations by providing specific information regarding the GAAP amounts excluded from non-GAAP net income and EPS and evaluating non-GAAP net income and EPS in conjunction with net income and EPS calculated in accordance with GAAP.

The accompanying table provided below provides a reconciliation of the non-GAAP financial measures presented to the most directly comparable financial measures prepared in accordance with GAAP.

A conference call is scheduled for today. The Acacia Research presentation and Q&A will start at 1:30 p.m. Pacific Time (4:30 p.m. Eastern).

To listen to the presentation by phone, dial (888) 646-0797 for domestic callers and (706) 758-6764 for international callers, both of whom will need to enter the conference ID 90771402 when prompted. A replay of the audio presentation will be available for 30 days at (855) 859-2056 for domestic callers and (404) 537-3406 for international callers, both of whom will need to enter the Conference ID 90771402 when prompted.

The call is being webcast by CCBN and can be accessed at Acacia's website at www.acaciaresearch.com.

Newegg's Answer, Affirmative Defenses, and Counterclaims, Exhibit A

20

**ABOUT ACACIA RESEARCH CORPORATION**

Acacia Research Corporation's subsidiaries partner with inventors and patent owners, license the patents to corporate users, and share the revenue. Acacia Research Corporation's subsidiaries control over 200 patent portfolios, covering technologies used in a wide variety of industries.

Information about Acacia Research Corporation and its subsidiaries is available at www.acaciaresearchgroup.com and www.acaciaresearch.com.

**Safe Harbor Statement under the Private Securities Litigation Reform Act of 1995**

*This news release contains forward-looking statements within the meaning of the "safe harbor" provisions of the Private Securities Litigation Reform Act of 1995. These statements are based upon our current expectations and speak only as of the date hereof. Our ability to become the licensing partner for companies, and our actual results may differ materially and adversely from those expressed in any forward-looking statements as a result of various factors and uncertainties, including the effect of the global economic downturn on technology companies, the ability to successfully develop licensing programs and attract new business, rapid technological change in relevant markets, changes in demand for current and future intellectual property rights, legislative, regulatory and competitive developments addressing licensing and enforcement of patents and/or intellectual property in general and general economic conditions. Our Annual Report on Form 10-K, recent and forthcoming Quarterly Reports on Form 10-Q, recent Current Reports on Forms 8-K and 8-K/A, and other SEC filings discuss some of the important risk factors that may affect our business, results of operations and financial condition. We undertake no obligation to revise or update publicly any forward-looking statements for any reason.*

*The results achieved in the most recent quarter are not necessarily indicative of the results to be achieved by us in any subsequent quarters, as it is currently anticipated that Acacia Research Corporation's financial results will vary, and may vary significantly, from quarter to quarter. This variance is expected to result from a number of factors, including risk factors affecting our results of operations and financial condition referenced above, and the particular structure of our licensing transactions, which may impact the amount of inventor royalties and contingent legal fees expenses we incur period to period.*

6

**ACACIA RESEARCH CORPORATION**
**SUMMARY FINANCIAL INFORMATION**
**(In thousands, except share and per share information)**
**(Unaudited)**

**CONDENSED CONSOLIDATED STATEMENTS OF INCOME**

| | Three Months Ended June 30, | | Six Months Ended June 30, | |
|---|---|---|---|---|
| | **2012** | **2011** | **2012** | **2011** |
| Revenues | $ 50,484 | $ 39,746 | $ 149,524 | $ 100,876 |
| Operating costs and expenses: | | | | |
| Cost of revenues: | | | | |
| Inventor royalties | 9,573 | 8,588 | 17,167 | 21,677 |
| Contingent legal fees | 6,607 | 13,039 | 10,355 | 22,406 |
| Litigation and licensing expenses - patents | 5,268 | 3,761 | 8,649 | 7,295 |
| Amortization of patents | 5,393 | 2,600 | 10,519 | 6,372 |
| Marketing, general and administrative expenses (including non-cash stock compensation expense of $6,000 and $11,090 for the three and six months ended June 30, 2012, respectively, and $3,422 and $6,323 for the three and six months ended June 30, 2011, respectively) | 11,903 | 8,302 | 25,634 | 18,287 |
| Research, consulting and other expenses - business development | 1,967 | 1,335 | 3,083 | 2,043 |
| Total operating costs and expenses | 40,711 | 37,625 | 75,407 | 78,080 |
| Operating income | 9,773 | 2,121 | 74,117 | 22,796 |
| Total other income | 102 | 24 | 158 | 53 |

Newegg's Answer, Affirmative Defenses, and Counterclaims, Exhibit A

21

| | | | | |
|---|---|---|---|---|
| Income from operations before provision for income taxes | 9,875 | 2,145 | 74,275 | 22,849 |
| Provision for income taxes | (3,494) | (306) | (18,241) | (7,454) |
| Net income including noncontrolling interests in operating subsidiary | 6,381 | 1,839 | 56,034 | 15,395 |
| Net (income) loss attributable to noncontrolling interests in operating subsidiaries | (60) | 300 | 215 | (903) |
| Net income attributable to Acacia Research Corporation | $ 6,321 | $ 2,139 | $ 56,249 | $ 14,492 |
| | | | | |
| Net income per common share attributable to Acacia Research Corporation: | | | | |
| Basic earnings per share | $ 0.13 | $ 0.05 | $ 1.22 | $ 0.38 |
| Diluted earnings per share | $ 0.13 | $ 0.05 | $ 1.19 | $ 0.37 |
| | | | | |
| Weighted average number of shares outstanding, basic | 47,944,193 | 40,994,082 | 46,155,846 | 38,104,500 |
| Weighted average number of shares outstanding, diluted | 48,938,766 | 42,453,782 | 47,208,105 | 39,477,616 |

**Reconciliation of GAAP Net Income and EPS to Non-GAAP Net Income and EPS**
**(In thousands, except share and per share data)**

| | Three Months Ended June 30, | | Six Months Ended June 30, | |
|---|---|---|---|---|
| | 2012 | 2011 | 2012 | 2011 |
| GAAP net income | $ 6,321 | $ 2,139 | $ 56,249 | $ 14,492 |
| | | | | |
| Non-cash stock compensation | 6,000 | 3,422 | 11,090 | 6,323 |
| Non-cash patent amortization | 5,393 | 2,600 | 10,519 | 6,372 |
| Excess benefit related non-cash tax expense | 3,239 | — | 10,850 | 23 |
| Non-GAAP net income | $ 20,953 | $ 8,161 | $ 88,708 | $ 27,210 |
| | | | | |
| Pro forma non-GAAP net earnings per common share — basic | $ 0.44 | $ 0.20 | $ 1.92 | $ 0.71 |
| Pro forma non-GAAP net earnings per common share — diluted | $ 0.43 | $ 0.19 | $ 1.88 | $ 0.69 |
| GAAP weighted-average shares — basic | 47,944,193 | 40,994,082 | 46,155,846 | 38,104,500 |
| GAAP weighted-average shares — diluted | 48,938,766 | 42,453,782 | 47,208,105 | 39,477,616 |

7

**ACACIA RESEARCH CORPORATION**
**SUMMARY FINANCIAL INFORMATION, (CONTINUED)**
**(In thousands)**
**(Unaudited)**

**CONDENSED CONSOLIDATED BALANCE SHEET INFORMATION**

| | June 30, 2012 | December 31, 2011 |
|---|---|---|

Newegg's Answer, Affirmative Defenses, and Counterclaims, Exhibit A

http://www.sec.gov/Archives/edgar/data/934549/000101968712002454/acacia_8k-ex9901.htm[7/20/2012 12:01:30 PM]

### ASSETS

| | | | | |
|---|---|---|---|---|
| Current assets: | | | | |
| Cash and cash equivalents | $ | 296,866 | $ | 314,733 |
| Short-term investments | | 132,496 | | 6,597 |
| Accounts receivable | | 10,822 | | 2,915 |
| Prepaid expenses and other current assets | | 1,786 | | 803 |
| Total current assets | | 441,970 | | 325,048 |
| Property and equipment, net of accumulated depreciation and amortization | | 342 | | 220 |
| Patents, net of accumulated amortization | | 214,204 | | 25,188 |
| Goodwill | | 36,217 | | — |
| Investments - noncurrent | | 1,506 | | 1,956 |
| Other assets | | 462 | | 465 |
| | $ | 694,701 | $ | 352,877 |

### LIABILITIES AND STOCKHOLDERS' EQUITY

| | | | | |
|---|---|---|---|---|
| Current liabilities: | | | | |
| Accounts payable and accrued expenses/costs | $ | 18,648 | $ | 6,625 |
| Royalties and contingent legal fees payable | | 19,103 | | 23,508 |
| Total current liabilities | | 37,751 | | 30,133 |
| Deferred income taxes | | 32,592 | | — |
| Other liabilities | | 654 | | 632 |
| Total liabilities | | 70,997 | | 30,765 |
| Total stockholders' equity | | 623,704 | | 322,112 |
| | $ | 694,701 | $ | 352,877 |

8

### ACACIA RESEARCH CORPORATION
### SUMMARY FINANCIAL INFORMATION, (CONTINUED)
#### (In thousands)
#### (Unaudited)

**CONSOLIDATED STATEMENTS OF CASH FLOWS**

| | Three Months Ended June 30, | | | | Six Months Ended June 30, | | | |
|---|---|---|---|---|---|---|---|---|
| | 2012 | | 2011 | | 2012 | | 2011 | |
| Cash flows from operating activities: | | | | | | | | |
| Net income including noncontrolling interests in operating subsidiary | $ | 6,381 | $ | 1,839 | $ | 56,034 | $ | 15,395 |
| Adjustments to reconcile net income including noncontrolling interests in operating subsidiary to net cash provided by (used in) operating activities : | | | | | | | | |
| Depreciation and amortization | | 5,427 | | 2,624 | | 10,585 | | 6,418 |
| Non-cash stock compensation | | 6,000 | | 3,422 | | 11,090 | | 6,323 |
| Change in valuation allowance | | — | | — | | (10,237) | | — |
| Other | | 49 | | — | | 49 | | (9) |
| Changes in assets and liabilities: | | | | | | | | |
| Accounts receivable | | (9,542) | | (19,168) | | (7,907) | | (12,379) |

Newegg's Answer, Affirmative Defenses, and Counterclaims, Exhibit A

23

| | | | | |
|---|---|---|---|---|
| Prepaid expenses and other assets | 648 | 274 | (271) | (63) |
| Accounts payable and accrued expenses | 253 | (1,279) | 2,945 | (497) |
| Royalties and contingent legal fees payable | 5,008 | 955 | (4,405) | 9,931 |
| Deferred tax liability | 229 | — | 5,522 | — |
| Net cash provided by (used in) operating activities | 14,453 | (11,333) | 63,405 | 25,119 |
| Cash flows from investing activities: | | | | |
| Purchase of property and equipment | (164) | (29) | (188) | (88) |
| Purchase of available-for-sale investments | (95,190) | — | (239,952) | — |
| Sales and maturities of available-for-sale investments | 97,462 | — | 117,462 | 35 |
| Purchase of ADAPTIX, Inc., net of cash acquired | — | — | (150,000) | — |
| Patent acquisition costs | (38,335) | (1,125) | (40,435) | (1,805) |
| Net cash used in investing activities | (36,227) | (1,154) | (313,113) | (1,858) |
| Cash flows from financing activities: | | | | |
| Proceeds from sale of common stock, net of issuance costs | (101) | (52) | 218,983 | 175,232 |
| Distributions to noncontrolling interests in operating subsidiary | — | (2,017) | — | (2,897) |
| Contributions from noncontrolling interests in operating subsidiary | — | — | 1,920 | 877 |
| Excess tax benefits from stock-based compensation | 3,239 | — | 10,850 | 23 |
| Proceeds from the exercise of stock options | 4 | 360 | 88 | 404 |
| Net cash provided by (used in) financing activities | 3,142 | (1,709) | 231,841 | 173,639 |
| (Decrease) increase in cash and cash equivalents | (18,632) | (14,196) | (17,867) | 196,900 |
| Cash and cash equivalents, beginning | 315,498 | 313,611 | 314,733 | 102,515 |
| Cash and cash equivalents, ending | $   296,866 | $   299,415 | $   296,866 | $   299,415 |

9

## Business Highlights and Recent Developments[2]

Business highlights of the second quarter of 2012 and recent developments include the following:

Revenues for the three months ended June 30, 2012 included fees from the following technology licensing and enforcement programs:

| | |
|---|---|
| • Camera Support technology | • Messaging technology |
| • Data Compression technology | • Mobile Computer Synchronization technology |
| • DDR SDRAM technology | • Online Auction Guarantee technology |
| • Disk Array Systems & Storage Area Network technology | • Optical Recording technology |
| • DMT® technology | • Optical Switching technology |
| • Document Generation technology | • Pop-up Internet Advertising technology |
| • Dynamic Random Access Memory technology* | • Software Activation technology* |

Newegg's Answer, Affirmative Defenses, and Counterclaims, Exhibit A

24

- Facilities Operation Management System technology
- Hearing Aid technology*
- Information Storage, Searching and Retrieval technology*
- Integrated Access technology*
- Lighting Ballast technology
- Location Based Services technology
- MEMS technology

- Targeted Content Delivery technology
- Telematics technology
- Video Delivery and Processing technology*
- Videoconferencing technology*
- Visual Data Evaluation technology
- Website Crawling technology

---

(*) Initial license fees were recorded for these licensing programs in the second quarter of 2012.

— Acacia Research Corporation and certain of its subsidiaries entered into agreements with Cisco Systems, Inc. resolving pending patent matters, including those for the following subsidiaries: Lambda Optical Solutions LLC, Teleconference Systems LLC, Video Streaming Solutions LLC, and Unified Messaging Solutions LLC.

— Adaptive Sonics LLC entered into settlement and patent license agreements with manufacturers of hearing aids. The settlement agreements resolved litigation that was pending in the United States District Court for the Eastern District of Texas.

— AdjustaCam LLC entered into settlement and license agreements with Auditek Corporation and Digital Innovations, LLC. The agreements resolved litigation that was pending in the United States District Court for the Eastern District of Texas.

— Automated Facilities Management Corporation entered into a license and settlement agreement with IFS North America, Inc. The agreement resolved litigation that was pending in the United States District Court for the Northern District of Illinois.

— B.I. Systems LLC entered into a license agreement with International Business Machines Corporation regarding patents relating to computer-based visual data evaluation. The license agreement resolved litigation that was pending in the Middle District of Florida.

— Compression Technology Solutions LLC entered into a settlement agreement with Hewlett-Packard Company. The agreement resolved patent litigation, Civil Action No. 4:11-cv-01579, which was filed in the United States District Court for the Eastern District of Missouri and transferred to the Northern District of California, Civil Action No. 4:12-cv-1746-DMR.

— Computer Software Protection LLC entered into a license and settlement agreement with MathWorks, Inc. The agreement resolved litigation that was pending in the United States District Court for the District of Delaware.

— Content Delivery Solutions LLC entered into a settlement and license agreement with Verizon Patent and Licensing Inc. The settlement and license agreement resolved patent litigation, Civil Action No. 1:11-cv-00216-LY that was pending in the United States District Court, Western District of Texas.

---

10

---

— Document Generation Corporation entered into an agreement with eClinical Works, LLC, that resolved the matter pending in the United States District Court for the Southern District of Illinois.

— Document Management Systems LLC entered into a settlement and license agreement with Thomson Reuters. The settlement and license agreement resolved patent litigation, Civil Action No. 1:11-cv-332-SS, that was pending in the United States District Court, Western District of Texas.

— DRAM Memory Technologies LLC entered into a settlement agreement with Etron Technology, Inc. regarding patents related to double data rate SDRAM devices. The settlement agreement resolved litigation that was pending in the Central District of California.

— DRAM Memory Technologies LLC and DRAM Technologies LLC entered into a settlement agreement with Elite Semiconductor Memory Technology, Inc. regarding patents related to double data rate SDRAM devices. The settlement agreement resolved litigation that was pending in the Central District of California and the Eastern District of Texas.

— Lambda Optical Solutions LLC entered into a Settlement and Patent License Agreement with Fujitsu Limited and Fujitsu Network

Newegg's Answer, Affirmative Defenses, and Counterclaims, Exhibit A

25

Communications, Inc. This agreement resolved patent litigation, Civil Action No. CA 10-487, which was pending in the United States District Court for the District of Delaware.

—   Lighting Ballast Control LLC entered into license and settlement agreements with the following companies covering patents relating to electronic lighting ballasts: (1) Antron Compact Electronics, LP and (2) Hatch Transformers, Inc. The agreements resolved litigation that was pending in the United States District Court for the Northern District of Texas.

—   MEMTech LLC entered into a license and settlement agreement with Freescale Semiconductor, Inc. covering patents relating to certain MEMS devices.

—   Optical Memory Storage LLC entered into a settlement and license agreement with Ritek Corporation covering a portfolio of patents that apply to optical memory storage solutions. The settlement agreement resolved patent litigation Civil Action No. 2:11-cv-12566-PDB-MJH that was pending in the United States District Court for the Eastern District of Michigan.

—   Optical Memory Storage LLC entered into a settlement agreement with FUJIFILM Holdings Corporation covering a portfolio of patents that apply to optical memory storage solutions.

—   Optical Memory Storage LLC entered into a settlement and license agreement with Panasonic Corporation covering a portfolio of patents that apply to optical memory storage solutions.

—   Site Update Solutions LLC entered into a license and settlement agreement with HSN, Inc. The agreement resolved litigation that was pending in the United States District Court for the Northern District of California.

—   Summit Data Systems LLC entered into a settlement agreement with Infortrend Corporation.

—   Telematics Corporation entered into a patent license agreement with PROCON, Inc. The agreement resolved patent litigation that was pending in the United States District Court for the Northern District of Georgia.

—   Telematics Corporation entered into a settlement and license agreement with Networkfleet, Inc. The agreement resolved patent litigation that was pending in the United States District Court for the Northern District of Georgia.

11

—   Unified Messaging Solutions LLC entered into a Patent License and Settlement Agreement with Regions Financial Corporation and Regions Bank. The agreement resolved all disputes between the parties that was pending in the United States District court for the Eastern District of Texas (Tyler Division), Case No. 6:11cv120.

—   Unified Messaging Solutions LLC entered into a settlement and license agreement with Ameren Corporation, covering a portfolio of patents related to web based email and voice mail messages. The agreement resolved litigation that was pending in the United States District Court for the Eastern District of Missouri.

—   Unified Messaging Solutions LLC and American Express Company entered into a patent license and settlement agreement which resolved all disputes between the parties currently pending in the United States District Court for the Southern District of New York (Manhattan Division), Case No. 1:12-cv-03616-JSR.

—   Acacia Research Group LLC and its affiliates continued their patent and patent rights acquisition activities, acquiring a total of 27 new patent portfolios in the second quarter of 2012, including the following:

   —   In April 2012, entered into a patent licensing alliance with TeleCommunication Systems, Inc. (TCS) to become the exclusive licensor of TCS' inter-carrier messaging (ICM) patent portfolio.
   —   In May 2012, acquired patents, originally issued to Polaroid, covering digital imaging and related technologies.
   —   In May 2012, acquired rights to 6 prominent patent portfolios comprising 68 patents covering a wide range of software technologies relating to business intelligence and data analysis, office productivity, virtualization, graphical user interfaces, search, and software development.
   —   In June 2012, acquired 7 medtech patent portfolios comprised of over 150 patents and pending applications relating to medical

Newegg's Answer, Affirmative Defenses, and Counterclaims, Exhibit A

http://www.sec.gov/Archives/edgar/data/934549/000101968712002454/acacia_8k-ex9901.htm[7/20/2012 12:01:30 PM]

devices, biologics and diagnostic techniques.
—  In June 2012, acquired patents for x-ray powder diffraction technology.
—  In June 2012, acquired 5 patent portfolios with 156 U.S. and international patents from a major semiconductor technology company.
—  In June 2012, acquired patents relating to computer aided design tools.
—  In June 2012, acquired 4 patent portfolios with 48 U.S. and international patents from a major technology company.

---

(1) As used herein, "Acacia Research Corporation," "we," "us," and "our" refer to Acacia Research Corporation and/or its wholly and majority-owned operating subsidiaries. All intellectual property acquisition, development, licensing and enforcement activities are conducted solely by certain of Acacia Research Corporation's wholly and majority-owned operating subsidiaries.

(2) Acacia Research Group LLC, ADAPTIX Inc., AdjustaCam LLC, Anti Pinch Solutions LLC, Advanced Data Access LLC, Advanced Encoding Solutions LLC, B.I. Systems LLC, Chalumeau Power Systems LLC, Compression Technology Solutions LLC, DRAM Memory Technologies LLC , EVM Systems LLC , Internal Combustion Solutions LLC , Internet Communications Solutions LLC, Lambda Optical Solutions LLC, Lighting Ballast Control LLC, Medical Monitoring and Paging LLC, Optical Memory Storage LLC , Program Rewards Solutions LLC, Semiconductor Technologies LLC, Smooth Impact LLC, Summit Data Systems LLC and Unified Messaging Solutions LLC are all wholly owned operating subsidiaries of Acacia Research Corporation.

12

---

Newegg's Answer, Affirmative Defenses, and Counterclaims, Exhibit A

http://www.sec.gov/Archives/edgar/data/934549/000101968712002454/acacia_8k-ex9901.htm[7/20/2012 12:01:30 PM]