1  Annette Kazmerski
   annette.a.kazmerski@newegg.com
2  SBN 211364
   Newegg Inc.
3  16839 East Gale Avenue
   City of Industry, California 91745
4  Telephone (626) 271-9700
   Facsimile (626) 271-9480

5  Kent. E. Baldauf, Jr.
   kbaldaufjr@webblaw.com
6  Cecilia R. Dickson
   cdickson@webblaw.com
7  The Webb Law Firm
   One Gateway Center
8  420 Ft. Duquesne Blvd.
   Suite 1200
9  Pittsburgh, PA 15222
   Telephone (412) 471-8815
10 Facsimile (412) 471-4094

11 Attorney for Defendants
   **NEWEGG INC. and NEWEGG.COM INC.**
12 and Counter-Plaintiff **NEWEGG INC.**

13              UNITED STATES DISTRICT COURT
14             CENTRAL DISTRICT OF CALIFORNIA

15 Digitech Image Technologies, LLC,      ) Case No.: SACV12-01688 ODW
                                          ) (MRWx)
16              Plaintiff,                 )
                                          ) DEFENDANT AND COUNTER-
17       vs.                               ) PLAINTIFF NEWEGG INC. AND
                                          ) DEFENDANT NEWEGG.COM INC.'S
18 Newegg Inc. and Newegg.com Inc.,       ) MEMORANDUM IN SUPPORT OF
                                          ) ITS MOTION TO STAY THIS
19              Defendants,               ) PROCEEDING IN ITS ENTIRETY
                                          )
20 Newegg Inc.,                           ) Honorable Otis D. Wright, II
                                          )
21              Counter-Plaintiff,        ) Hearing Date:  January 14, 2013
                                          ) Hearing Time:  1:30 p.m.
22       vs.                               ) Location:  Courtroom 11, Spring Street
                                          )
23 Digitech Image Technologies, LLC,      )
                                          )
24 and Acacia Research Corporation,       )
                Counter-Defendants.       )
25                                        )
26 ─────────────────────────────

27

28

# TABLE OF CONTENTS

Page

I.      SUMMARY OF ARGUMENT .................................................................1

II.     STATEMENT OF FACTS ...................................................................1

III.    NEWEGG IS PERIPHERAL TO THE DCM LITIGATIONS ......................3

        A.      Staying The Case Against Newegg Will Simplify The Issues And
                Promote Judicial Economy...................................................4

        B.      Courts Routinely Stay Claims Against Retailer Defendants.................5

        C.      Staying The Case Against Newegg Will Not Prejudice Digitech..........9

        D.      Newegg Will Suffer Substantial Prejudice Without a Stay.................10

        E.      The Court Can Order A Stay Under Its Inherent Power ....................11

IV.     CONCLUSION.....................................................................11

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ambrose v. Steelcase, Inc.*, 2002 WL 1447871 (N.D. Ill., July 3, 2002) ................10

*Aro Mfg. Co. v. Convertible Top Replacement, Co.*, 377 U.S. 476 (1964) ..............10

*Aspex Eyeware, Inc. v. Revolution Eyeware, Inc*., No. CV 07-05042, slip op. (C.D.
    Cal. March 7, 2008) ............................................................................................11

*Brown Mfg. Corp. v. Alpha Lawn & Garden Equip. Inc.*, 219 F. Supp. 2d 705 (E.D.
    Va. 2002) ...............................................................................................................9

*Calmedica LLC v. Novoste Corp.*, 2004 WL 413296 (N.D. Ill. Jan. 30, 2004) .....3, 4

*CMAX, Inc. v. Hall*, 300 F.2d 265 (9th Cir. 1962) ...................................................11

*Commissariat A L'Energie Atomique v. Dell Computer Corp. et al*., 2004 WL
    1554382, (D. Del., May 13, 2004) ...................................................................3, 6

*Corry v. CFM Majestic Inc.*, 16 F. Supp. 2d 660 (E.D. Va. 1998) ...........................8

*Encyclopaedia Britannica, Inc. v. Magellan Navigation, Inc.*, 512 F. Supp. 2d 1169
    (W.D. Wis. 2007)................................................................................................10

*Eon-Net LP v. Flagstar Bancorp*, 635 F.3d 1314 (Fed. Cir. 2011).........................10

*Glenayre Elecs., Inc. v. Jackson*, 443 F.3d 851 (Fed. Cir. 2006).............................4

*In re Papst Licensing*, 2011 WL 350427 (D.D.C. Feb. 1, 2011) ..............................3

*Intel Corp. v. ULSI Sys. Tech., Inc.*, 95 F.2d 1566 (Fed. Cir. 1993) ........................4

*Katz v. Lear Siegler*, 909 F.2d 1495 (Fed. Cir. 1990) ..............................................3

*Kessler v. Eldred*, 206 U.S. 285 (1907).....................................................................4

*Landis v. North Am. Co.*, 299 U.S. 248 (1936) .......................................................11

*LG Elec., Inc. v. Asustek Computers*, 126 F. Supp. 2d 414 (E.D. Va. 2000)............5

*MGA, Inc. v. Gen. Motors Corp.*, 827 F.2d 729 (Fed. Cir. 1987) .............................4

*Micro Enhanced Tech., Inc. v. Videx, Inc.*, No. 1:11-cv-05506, slip op. (N.D. Ill.
    Aug. 16, 2012) ................................................................................................6, 7

ii

1

*Oplus Tech. Ltd. v. Sears Holding Corp.*, 2012 U.S. Dist. LEXIS 83597 (N.D. Ill.

2
   Jun. 15, 2012) ........................................................................3, 4, 7, 8

3
*Refac Int'l Ltd. v. IBM*, 790 F.2d 79 (Fed. Cir. 1986)...................................5

4
*Refac Int'l Ltd. v. IBM*, 798 F.2d 459 (Fed. Cir. 1986)...............................5

5
*Ricoh Co., Ltd. v. Aeroflex Inc.*, 279 F. Supp. 2d 554 (D. Del. 2003) .......................5

6
*Rivers v. Walt Disney Co.*, 980 F. Supp. 1358 (C.D. Cal. 1997) ...........................11

7
*Shifferaw v. Emson USA*, 2010 WL 1064380 (E.D. Tex. Mar. 18, 2010) ................4

8
*Spread Spectrum Screening, LLC v. Eastman Kodak Co.*, 2010 U.S. Dist. LEXIS

9
   90549 (N.D. Ill. Sept. 1, 2010) ........................................................8

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.    SUMMARY OF ARGUMENT

Defendants Newegg Inc. and Newegg.com Inc. (collectively, "Newegg") request that the Court stay this action in its entirety because Newegg is merely a retailer of the accused products,[1] and as such the claims against it are secondary to the principal claims Digitech has filed against the Digital Camera Manufacturers ("DCMs.")[2]

Newegg is a peripheral defendant because it merely resells the accused cameras. Newegg is not familiar with the detailed technical workings of the accused cameras nor does it have control over, possession of or access to the technical documents and information needed to defend against patent infringement allegations. The DCMs, which design, develop and/or manufacture the accused digital cameras, are in the best position to defend their own products.

Staying the case against Newegg will permit the DCMs, Digitech, and this Court to focus on the merits of the cases, without prejudice to Digitech. On the other hand, without a stay, Newegg will suffer substantial prejudice and will be forced unfairly to devote resources to defend against infringement claims which, at this time, it is not reasonably positioned to defend.

## II.   STATEMENT OF FACTS

On July 16, 2012, Digitech asserted the '415 patent against numerous defendants in a single lawsuit (Digitech I).[3] Digitech's Complaint alleged

---

[1]   The retailer defendants are B&H Foto & Electronics Corporation, Best Buy Co., Inc., Best Buy Stores, LP, Bestbuy.com, LLC, Buy.com, CDW LLC, Micro Electronics, Inc., Newegg Inc., Newegg.com Inc., Overstock.com, Inc., and Target Corporation. The retailer case numbers, all beginning with 8-12-cv, are:  1668, 1669, 1671, 1683, 1686-1688, and 1695.

[2]   The DCMs (listing separate but related entities together for convenience) are Canon, Casio, Fujifilm, General Imaging, Hasselblad, Leica, Mamiya, Nikon, Olympus, Panasonic, Pentax/Ricoh, Sakar, Sigma and Sony. The DCM case numbers, all beginning with 8-12-cv, are:  1667, 1670, 1673, 1675-1681, 1685, 1689, 1694, 1696, and 1697.

[3]   *Digitech Image Technologies, LLC v. Agfaphoto Holding GMBH, et al.*, 8:12-cv-01153-ODW-MRW.

1

infringement by two separate and distinct groups of defendants: (1) digital camera manufacturers, and (2) consumer electronics retailers, such as Newegg.  (Digitech I, Dkt. 1.)  On October 1, 2012, this Court dismissed all but AgfaPhoto, the first named defendant in Digitech I, due to misjoinder.  (Digitech I, Dkt. 190.)  On October 1 and 2, 2012, Digitech filed new individual complaints against all of the defendants dismissed from Digitech I.  The newly filed Digitech cases are pending before this Court.  Digitech has not served infringement contentions and discovery has not begun.

The DCMs are responsible for the design, development and manufacture of the accused cameras.  Digital cameras made by different DCMs have different operational attributes and technical specifications.  Documents and information relevant to the operational attributes and technical specifications of the accused cameras are proprietary to the individual DCMs.  The fact witnesses with knowledge about the design, development and manufacture of the accused cameras will be current and former DCM employees.

Retailers like Newegg are mere customers of the DCMs—they purchase the accused cameras from the DCMs and/or distributors and resell them as is.  (*See* Gerard Medenilla Decl. at ¶ 4.)  Newegg does not alter the internal operations, functional attributes, or technical specifications of the cameras.  (*Id*. at ¶ 5.) Newegg has no input or control over the design, development or manufacture of the accused cameras.  (*Id*. at ¶ 6.)  Newegg does not have substantive knowledge regarding the internal operations of the accused cameras.  (*Id*. at ¶ 7.)  Newegg does not have possession, control or access to the proprietary documents that describe the operational attributes and technical specifications of the accused cameras. (*Id*. at ¶ 8.)

The claims of the '415 patent require specific technical elements that the accused cameras may or may not have.  Whether the accused cameras have the required technical elements will be key to the litigation.  A retailer like Newegg

2

simply does not have knowledge or information concerning the functional attributes

and technical specifications of the accused cameras to contribute to the litigation.

## III.   NEWEGG IS PERIPHERAL TO THE DCM LITIGATIONS

Litigation against, or brought by, the manufacturer of infringing goods takes

precedence over a suit against customers of the manufacturer.[4]   Courts prefer that

"infringement determinations [ ] be made in suits involving the true defendant, the

party that controls the product's design, rather than suits involving secondary

parties such as customers of the manufacturer." [5]

Newegg is merely a customer of the DCMs and the infringement allegations

against Newegg are premised on it reselling certain of the DCMs' products.  This

case will focus on the technical operations of the DCMs' cameras and whether

those products practice the claims of the '415 patent.  Because Newegg does not

have control, access or possession to documents and information relevant to the

operational attributes and technical specifications of the accused cameras, Newegg

lacks information relevant and material to the merits of this lawsuit and is similarly

situated to the peripheral customer defendants in cases where plaintiffs sue

manufacturers and their customers.  *See e.g.*, *Oplus Tech. Ltd. v. Sears Holding*

*Corp.*, 2012 U.S. Dist. LEXIS 83597 at *7 (N.D. Ill. Jun. 15, 2012) ("Defendants

are 'peripheral' when they lack relevant and material information…"); *Calmedica*

*LLC v. Novoste Corp.*, 2004 WL 413296 at *2 (N.D. Ill. Jan. 30, 2004) (same).

---

[4]   *Katz v. Lear Siegler*, 909 F.2d 1495, 1464 (Fed. Cir. 1990); *Commissariat A L'Energie Atomique v. Dell Computer Corp. et al.*, 2004 WL 1554382, at *2-3 (D. Del., May 13, 2004) (staying the cases against OEM/distributors and retailers pending resolution of the cases against the manufacturers because "it is common practice to stay all pending [patent] litigation except the [ ] suit between the patent owner and a manufacturer…").

[5]   *See e.g., In re Papst Licensing*, 2011 WL 350427, at *10 (D.D.C. Feb. 1, 2011) (staying litigation against a retailer until after the completion of the manufacturer lawsuits reasoning that infringement determinations should be made in lawsuits involving the true defendant, the party that controls the product's design, rather than lawsuits involving secondary parties such as customers of the manufacturer).

3

As in the cases of the defendants in *Oplus* and *Calmedica*, Newegg is merely a peripheral defendant.  Accordingly, the claims against Newegg should be stayed for the reasons set forth in those cases.

**A.    Staying The Case Against Newegg Will Simplify The Issues And Promote Judicial Economy.**

Digitech's allegations against Newegg relate only to cameras supplied by the DCMs.  Accordingly, resolution of the claims against DCMs will dispose of and eliminate any need to decide Digitech's claims against Newegg.  *See e.g.*, *Intel Corp. v. ULSI Sys. Tech., Inc.*, 95 F.2d 1566, 1568 (Fed. Cir. 1993) ("[E]ither [the accused infringer] will prevail and the use of the [accused product] will be determined to be non-infringing, or [the patentee] will prevail, and [the accused infringer] will be forced to pay damages or license the patent.  In the latter situation, [the accused infringer's] customers would then be immunized from liability.").

That is, if the DCMs succeed on either invalidity or non-infringement defenses, Digitech would be precluded from pursuing the same allegations against Newegg.  *MGA, Inc. v. Gen. Motors Corp.*, 827 F.2d 729, 734 (Fed. Cir. 1987) ("The Kessler doctrine bars a patent infringement action against a customer of a seller who has previously prevailed against the patentee because of invalidity or non-infringement of the patent;" *see also Kessler v. Eldred*, 206 U.S. 285 (1907).).

Likewise, if Digitech prevails in proving infringement against and recovering damages from any of the DCMs, Digitech will be barred from obtaining further relief from Newegg with regard to the DCMs' products.  *See e.g., Glenayre Elecs., Inc. v. Jackson*, 443 F.3d 851, 864 (Fed. Cir. 2006) ("[A] party is precluded from suing to collect damages for direct infringement by a buyer and user of a product when actual damages covering that very use have already been collected from the maker and seller of that product.").[6]

---

[6]   *Shifferaw v. Emson USA*, 2010 WL 1064380, at *3 (E.D. Tex. Mar. 18, 2010) (if the manufacturer "is found liable and [the patentee] collects damages from [the manufacturer],

4

**B.     Courts Routinely Stay Claims Against Retailer Defendants.**

A number of courts have granted the relief requested by Newegg herein and stayed claims against peripheral customer and retailer defendants (entities in positions similar to the position Newegg is in here) pending resolution of a case against manufacturers (similarly situated to the DCMs here):

In *Refac*,[7] a district court stayed the case against 31 customer defendants.[8] On appeal, the Federal Circuit refused to disturb the decision because "[t]he order staying the prosecution of claims against [customer] defendants is a matter of case management within the discretion of the district court…"[9] The customer defendants in *Refac*, like Newegg in this case, are not necessary to advance the matter.  As the Federal Circuit articulated "[p]roof of direct infringement does not require the participation [] of, or prosecution of claims against, the [customer] defendants who, though their participation is stayed, remain parties to the case."[10]

Digitech can, and must, obtain all relevant documents and information relating to the design, development, and manufacture of the accused cameras from the DCMs.  Newegg, like the customer defendants in *Refac*, is not in a position to advance Digitech's infringement claims.  As in *Refac*, this Court should stay the case against Newegg to prevent unnecessary discovery and preserve judicial

---

then the plaintiff cannot then in turn collect damages from the Retailer Defendants, because [plaintiff] cannot receive a double recovery for the same sales."); *LG Elec., Inc. v. Asustek Computers*, 126 F. Supp. 2d 414, 422 (E.D. Va. 2000) ("If the court does find [the manufacturer] liable and allows [the patent owner] to collect royalties… [the patent owner] cannot then in turn collect royalties from the entity to whom the infringer sells the product"); *Ricoh Co., Ltd. v. Aeroflex Inc.*, 279 F. Supp. 2d 554, 558 (D. Del. 2003) (if the defendant licensed the patent in suit, its customers would be immunized from liability).

[7]   *Refac Int'l Ltd. v. IBM*, 790 F.2d 79, 80 (Fed. Cir. 1986).

[8]   *Id.* at 80.

[9]   *Refac Int'l Ltd. v. IBM*, 798 F.2d 459, 460 (Fed. Cir. 1986).

[10]   *Id.*

economy.

In *Commissariat A L'Energie Atomique*,[11] plaintiff sued over 60 manufacturers, distributors and retailers in several cases. The Court stayed litigation against the OEM/distributors and retailers, holding that a stay was appropriate because: 1) plaintiff will not suffer real prejudice or tactical disadvantage with a stay; and 2) the stay could streamline the case.

The Court noted that common practice is to stay all litigation except the suit between the patent owner and the manufacturers. Because the manufacturers are intimately involved in the design, operation, and use of the accused products, they are in the best position to contest the validity and infringement of the asserted patent.[12] The court reasoned that resolving invalidity and infringement issues prior to proceeding against the OEM/distributors and retailers "would surely simplify th[e] case."[13] For example, if the asserted patents were found invalid or not infringed, "there would be no need to proceed against the OEM/distributors or retailers, thus conserving judicial resources and expense to the parties."[14]

Like the manufacturers in *Commissariat A L'Energie Atomique*, the DCMs are intimately involved in the design, operation, and use of the accused products. They are in the best position to contest the validity and infringement of the asserted patent. As in *Commissariat A L'Energie Atomique*, resolving invalidity and infringement issues as to the DCMs prior to proceeding against retailers like Newegg would simplify the litigations.

In *Micro Enhanced Tech. v. Videx, Inc.*, the plaintiff accused Videx and its customers of patent infringement. Videx's customers were accused of "install[ing]

---

[11]   *Commissariat A L'Energie Atomique*, 2004 WL 1554382 (D. Del. May 13, 2004).

[12]   *Id.* at *3.

[13]   *Id.*

[14]   *Id.*

6

1   and us[ing] the [accused Videx] systems."[15]  The court found Videx's customers to

2   be peripheral defendants.[16]  The court stayed the claims against Videx's customers

3   because "[p]laintiff's suit is brought primarily against Videx, which has a greater

4   interest in defending against charges of patent infringement, and severance and stay

5   [of Videx's customers] will promote judicial economy by reducing discovery

6   disputes, costs, and motions."[17]

7          In *Oplus Tech.*, Oplus accused television manufacturer Vizio and retailer

8   Sears for patent infringement.  Oplus accused Sears of "importing, selling or

9   offering to sell infringing Vizio products."[18]  The court found that Sears was a

10  peripheral defendant that had no involvement in the design, development,

11  manufacture, or any other technical aspect of the accused products,[19] and was

12  unlikely to have information bearing on Oplus's infringement claims or Vizio's

13  defenses.[20]  The court stayed the case against Sears.  In doing so, the court held

14                  granting a motion to stay… is appropriate because

15                  'litigation against the manufacturer of infringing goods

16                  takes precedence over a suit by the patent owner against

17                  customers of the manufacturer."[21]  The court also found

18                  "[a] stay in this instance benefits judicial economy and

19                  serves 'the just, speedy and inexpensive disposition of this

20                  litigation.'…Vizio is the real party in interest who must

21  _____

22  [15]  *Micro Enhanced Tech., Inc. v. Videx, Inc.*, No. 1:11-cv-05506, slip op. at 2 (N.D. Ill. Aug. 16, 2012).

23  [16]  *Id.*

24  [17]  *Id.*

25  [18]  *Oplus Tech.*, 2012 U.S. Dist. LEXIS 83597 at *3-4 (N.D. Ill. June 15, 2012).

26  [19]  *Id.* at *4.

27  [20]  *Id.* at *8.

28  [21]  *Id.* at *10-11.

7

defend this infringement suit.  All of the substantive issues regarding patent infringement as they relate to the claims against Sears will be resolved in the action against Vizio – indeed, the resolution of the Vizio action could potentially eliminate the claims against Sears – and this would significantly simplify the issues in the Sears case and substantially reduce the burden of litigation on the parties, as well as the Court."[22]

In *Spread Spectrum Screening LLC v. Eastman Kodak Co.*,[23] the plaintiff accused Kodak and its customers of patent infringement.  Kodak moved to stay the claims against the customers.  The court found that the customers were peripheral defendants who will "add nothing to plaintiff's infringement action against Kodak."[24]  The court stayed the customers because they "have nothing substantive to offer during plaintiff's action against Kodak and likely do not even understand how the product software actually works and will not be helpful to determine whether Kodak's [product] infringes the [patent]… they are merely peripheral to the litigation between plaintiff and Kodak."[25]

In *Corry v. CFM Majestic*,[26] the plaintiff accused a fireplace manufacturer and its largest distributor of patent infringement.  The Court stayed the case against the distributor because it "(i) was only secondarily involved, (ii) did not manufacture the alleged infringing device, and (iii) would be liable only if the main

---

[22] *Id.* at *11.

[23] *Spread Spectrum Screening, LLC v. Eastman Kodak Co.*, 2010 U.S. Dist. LEXIS 90549 (N.D. Ill. Sept. 1, 2010).

[24] *Id.* at *8.

[25] *Id.* at *9.

[26] *Corry v. CFM Majestic Inc.*, 16 F. Supp. 2d 660 (E.D. Va. 1998).

8

1  defendant was found to be infringing the patent."[27]  Similarly, Newegg is only

2  secondarily involved in this case, does not manufacture the accused cameras, and

3  could only conceivably be liable only if the DCMs were found to be infringing the

4  '415 patent.

5      In *Brown Manufacturing v. Celpha Lawn & Garden*,[28] the plaintiff accused

6  the manufacturer, the marketer, a distributor, and two retail sellers of a trenching

7  machine of patent infringement.  The court stayed the case against the distributor

8  and the retail sellers because "the claims associated with those [defendants] are

9  peripheral to the claims that lie at the heart of this case -- that the design and

10  manufacture of the [trenching machine] infringed on [p]laintiff's patents."[29]

11      **C.    Staying The Case Against Newegg Will Not Prejudice Digitech.**

12      Digitech will not be prejudiced by a stay of this case.  Digitech has not

13  invested any effort into the case against Newegg that will be wasted with a stay.

14  Discovery has not yet begun.  Digitech has not served any infringement

15  contentions.

16      Staying the case against Newegg will not impact Digitech's ability to obtain

17  relevant discovery.  Digitech's infringement claims, and many of the defendants'

18  non-infringement defenses, will depend on the design, development, and

19  manufacture of the accused cameras.  As noted, the documents and information

20  relevant to the design, development and manufacture of the accused cameras are

21  proprietary to individual DCMs.  Witnesses with knowledge and information about

22  the design, development and manufacture of the accused cameras will be current

23  and former employees of the DCMs.  Digitech will have full access to relevant

24  discovery on the accused products from the DCMs.  Digitech will not be able to

---

[27]   *Id*. at 665-666.

[28]   *Brown Mfg. Corp. v. Alpha Lawn & Garden Equip. Inc.*, 219 F. Supp. 2d 705, 706-07 (E.D. Va. 2002).

[29]   *Id*. at 709.

1   obtain information from Newegg about the accused cameras beyond what it can

2   obtain from the DCMs.

3        A stay would also not impact Digitech's ability to recover damages, if any.

4   As noted, if Digitech prevails in its claims against DCMs, it will be able to fully

5   recover from the DCMs.  It is well established that recovery on a judgment

6   constitutes full compensation to the patent owner for related acts of infringement

7   and bars further relief as against other entities.  *Aro Mfg. Co. v. Convertible Top*

8   *Replacement, Co.*, 377 U.S. 476, 499 (1964).  Simply put, a patentee is entitled to

9   full compensation for related acts of infringement, but the patentee is not entitled to

10  multiple recoveries for the same injury.  As such, Digitech will not be able to

11  recover any additional damages from Newegg.

12      **D.**    **Newegg Will Suffer Substantial Prejudice Without a Stay.**

13       Newegg will be greatly prejudiced if no stay is entered.  Newegg's lack of

14  involvement in the development and manufacturing of the accused devices restricts

15  its ability to defend against the infringement claims at the core of this case.  *See*

16  *e.g.*, *Encyclopaedia Britannica, Inc. v. Magellan Navigation, Inc.*, 512 F. Supp. 2d

17  1169, 1174 (W.D. Wis. 2007); *Ambrose v. Steelcase, Inc.*, 2002 WL 1447871, at

18  *6-7 (N.D. Ill., July 3, 2002) ("[The customer defendant] is not in a position to

19  defend the infringement claims…").  Newegg will also suffer significant

20  disruptions defending against infringement allegations on the DCMs' products.

21  Newegg will incur substantial costs associated with discovery, motion practice,

22  claim construction proceedings, and prior art searching, even though resolution of

23  the claims against the DCMs will resolve some of these major case issues, or at

24  least aspects of these issues.  Imposing unnecessary defense costs artificially drives

25  up settlement demands and is fundamentally unfair.  *See e.g. Eon-Net LP v.*

26  *Flagstar Bancorp*, 635 F.3d 1314, 1327 (Fed. Cir. 2011) (criticizing patentee's acts

27  that "exploit[] the high cost to defend complex litigation to extract a nuisance value

28  settlement.")

### E.    The Court Can Order A Stay Under Its Inherent Power.

A district court has inherent power to control the disposition of the cases on its docket in a manner which will promote economy of time and effort for itself, for counsel, and for litigants. *Landis v. North Am. Co.*, 299 U.S. 248, 254-55 (1936); *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962) (same); *Rivers v. Walt Disney Co.*, 980 F. Supp. 1358, 1360 (C.D. Cal. 1997) ("District courts have inherent power to stay their proceedings, which is incidental to the power to promote the efficient disposition of cases on their docket."). In exercising such discretion, the court "must weight competing interests and maintain an even balance." *Landis*, 299 U.S. at 254-55.[30] All of these factors weigh in favor of staying Newegg. A stay benefits this Court, the plaintiff is not prejudiced by a stay, and Newegg will be prejudiced if a stay is not granted.

## IV.   CONCLUSION

For the foregoing reasons, the claims against Newegg should be stayed pending resolution of the litigation against the DCMs.

Dated this  14th day of December, 2012

/s/ Cecilia R. Dickson
Annette Kazmerski
annette.a.kazmerski@newegg.com
SBN 211364
Newegg Inc.
16839 East Gale Avenue
City of Industry, California 91745
Telephone (626) 271-9700
Facsimile (626) 271-9480

Kent E. Baldauf, Jr.

---

[30]   *See Aspex Eyeware, Inc. v. Revolution Eyeware, Inc*., No. CV 07-05042, slip op. at 7 (C.D. Cal. March 7, 2008) (The Court considers a variety of factors in assessing whether a stay is appropriate: (1) the benefits to the court of a stay; (2) the prejudice to plaintiff if a stay is granted; and (3) the prejudice to defendant if a stay is not granted); *CMAX*, 300 F.2d at 268.

11

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

kbaldaufjr@webblaw.com
Cecilia R. Dickson
cdisckson@webblaw.com
The Webb Law Firm
One Gateway Center
420 Ft. Duquesne Blvd.
Suite 1200
Pittsburgh, PA 15222

Attorneys for Defendants
Newegg Inc. and Newegg.com Inc.
and Counter-Plaintiff Newegg Inc.

12

1

## **CERTIFICATE OF SERVICE**

2     I hereby certify that a true and correct copy of DEFENDANT AND

3 COUNTER-PLAINTIFF NEWEGG INC. AND DEFENDANT NEWEGG.COM

4 INC.'S MEMORANDUM IN SUPPORT OF ITS MOTION TO STAY THIS

5 PROCEEDING IN ITS ENTIRETY has been served via the Court's CM/ECF

6 system to all counsel of record on this 14th day of December, 2012.

7     A true and correct copy of DEFENDANT AND COUNTER-PLAINTIFF

8 NEWEGG INC. AND DEFENDANT NEWEGG.COM INC.'S MEMORANDUM

9 IN SUPPORT OF ITS MOTION TO STAY THIS PROCEEDING IN ITS

10 ENTIRETY has been served on the following via first-class mail on this 14th day

11 of December, 2012:

12

13              Acacia Research Corporation
                500 Newport Center Drive
14              7th Floor
                Newport Beach, CA 92660

15

16                        /s/ Cecilia R. Dickson
                          Attorney for Defendants Newegg Inc.
17                        and Newegg.com Inc. and Counter-
                          Plaintiff Newegg Inc.

18

19

20

21

22

23

24

25

26

27

28

13