John J. Edmonds (State Bar No. 274200)
jedmonds@cepiplaw.com
COLLINS EDMONDS POGORZELSKI
SCHLATHER & TOWER, PLLC
1851 East First Street, Suite 900
Santa Ana, California 92705
Telephone: (951) 708-1237
Facsimile: (951) 824-7901

Attorney for Plaintiff,
**DIGITECH IMAGE TECHNOLOGIES, LLC**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DIGITECH IMAGE TECHNOLOGIES, LLC,<br><br>            Plaintiff,<br><br>      v.<br><br>NEWEGG INC. AND NEWEGG.COM INC.<br><br>            Defendants. | NO. SACV12-01688-ODW(MRWx)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S OPPOSITION TO NEWEGG'S MOTION TO STAY THIS PROCEEDING IN ITS ENTIRETY**<br><br>Date: January 14, 2013<br>Time: 1:30 p.m.<br>Courtroom 11<br><br>Judge: Hon. Otis D. Wright, II |

# TABLE OF CONTENTS

I.    INTRODUCTION.                                              ………     1

II.  ARGUMENT AND AUTHORITIES.                                  ………     5

     a.  Newegg has not shown it is "peripheral" to the "DCM
         Litigations."                                          ………     5

     b.  The Customer Suit Exception is Inapplicable            ………     7

     c.  Courts Do Not – and Should Not -- "Routinely" Stay
         Claims Against Retailer Defendants                     ………    10

     d.  Newegg Has Failed To Meet Its Burden For a Motion to
         Stay                                                   ………    13

     e.  The Requested Stay Should Be Denied Based on
         Efficiency and Judicial Economy.                       ………    15

     f.  The Requested Stay Would Unfairly Prejudice Digitech.  ………    20

III. CONCLUSION                                                 ………    21

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

TABLE OF AUTHORITIES

*Microsoft Corp. v. AT & T Corp.*, 550 U.S. 437, 441 (2007) .......... 1

*Transocean Offshore Deepwater Drilling, Inc. v. Maersk Contractors USA, Inc.*, 617 F.3d 1296, 1309 (Fed.Cir.2010) .......... 2

*Tegic Communications Corp. v. Bd. of Regents of Univ. of Texas Sys.*, 458 F.3d 1335, 1343 (Fed. Cir. 2006) .......... 8

*Spread Spectrum Screening LLC v. Eastman Kodak Co.*, 657 F.3d 1349, 1357 (Fed. Cir. 2011) .......... 8

*Heinz Kettler GMBH & Co. v. Indian Industries, Inc.*, 575 F. Supp. 2d 728, 730-31 (E.D. Va. 2008) .......... 9

*Privasys, Inc. v. Visa Intl., Inc.*, 2007 WL 3461761, *3 (N.D. Cal. Nov. 14, 2007) .......... 9

*Lifelink Pharmaceuticals*, 2007 WL 2459879, *2-3, (N.D. Ohio August 24, 2007) .......... 9

*Alloc, Inc., v. Unilin Decor N.V.*, 2005 WL 3448060, *3 (E.D. Wis. Dec. 15, 2005) .......... 9, 19,20

*Naxon Telesign Corp. v. GTE Info. Sys.*, 89 F.R.D. 333, 339 (N.D.Ill.1980) .......... 9

*Oplus Technologies, Ltd. v. Sears Holdings Corp.*, No. 11 Civ. 9029, 2012 WL 2400478, at *3–*4 (N.D.Ill. June 21, 2012) .......... 10

*Screening LLC v. Eastman Kodak Co.*, 2010 WL 3516106, at *2 (N.D.Ill. Sept. 1, 2010) .......... 10

*Corry v. CFM Majestic Inc.*, 16 F. Supp. 2d 660, 661 (E.D. Va. 1998) .......... 10

*Brown Mfg. Corp. v. Alpha Lawn & Garden Equip., Inc.*, 219 F. Supp. 2d 705, 710 (E.D. Va. 2002) .......... 11

*Refac Int'l Ltd. v. IBM,* 790 F.2d 79 (Fed. Cir. 1986) .......... 11

*Mitsubishi Elec. Corp. v. IMS Tech., Inc.,* No. 96 CV 0499, 1996 U.S. Dist. LEXIS 12239 (N.D. Ill. Aug. 21, 1996) .......... 11

*Rates Tech. Inc. v. New York Tel. Co.,* No. 94 CV 9297, 1995 U.S. Dist. LEXIS 10254 (S.D.N.Y. July 23, 1995) .......... 11

*Micro Enhanced Tech., Inc. v. Videx, Inc.,* No. 1:11-cv-05506, slip op. at 2 (N.D. Ill. August 16, 2012) .......... 12

*Commissariat A L'Energie Atomique,* 2004 WL 1554382 (D. Del. May 13, 2004) .......... 12

*Rivers v. Walt Disney Co.,* 980 F. Supp. 1358, 1360 (C.D. Cal. 1997) .......... 13

*Edizone, LLC v. Schering-Plough Healthcare Products, Inc.,* 2:10-CV-855-TS, 2011 WL 1559944 (D. Utah Apr. 25, 2011) .......... 13

*Walsh Securities, Inc. v. Cristo Property Management, Ltd.,* 7 F. Supp. 2d 523, 526 (D.N.J. 1998) .......... 14

*Spellbound Dev. Group, Inc. v. Pac. Handy Cutter, Inc.,* 2011 WL 1810961, *2 (C.D. Cal. May 12, 2011) .......... 14

*Teleconference Systems v. Proctor & Gamble Pharmaceuticals, Inc,* 676 F. Supp. 2d 321, 329 (D. Del. 2009) .......... 15

*American Academy of Science v. Novell, Inc.,* 1992 WL 313101 (N.D. Cal. 1992) .......... 16

*Intel Corp. v. ULSI Sys. Tech., Inc.,* 95[5][sic] F.2d 1566, 1568 (Fed. Cir. 1993) .......... 17

*Tech. Licensing Corp. v. Thomson, Inc.,* 738 F. Supp. 2d 1096, 1101 (E.D. Cal. 2010) .......... 17, 18
.......... 18

*Glenayre Elecs., Inc. v. Jackson*, 443 F.3d 851, 864 (Fed. Cir.

1 | 2006)

2
3 | *MShift, Inc. v. Intuit Fin. Services*, 2010 WL 2486461 (N.D. Cal. June 16, 2010) .......... 19

4
5 | *Masimo Corp. v. Philips Electronics North America Corp.*, 742 F.Supp.2d 492, 500-501 (D. Del. 2010) .......... 22

6
7 | *Mike's Train House, Inc. v. Broadway Ltd. Imports, LLC*, 2011 WL 1045630, *3 (D. Md. 2011) .......... 22

8
9 | *Kimberly-Clark Worldwide, Inc. v. First Quality Baby Products, LLC*, 2010 WL 3521567, * 2 (E.D. Wis. 2010) .......... 22

Plaintiff, Digitech Image Technologies, LLC ("Digitech") respectfully submits this Memorandum of Points and Authorities in support of its Opposition to Defendants Newegg Inc. and Newegg.com Inc. (collectively "Newegg") Motion to Stay this proceeding in its entirety.

## I.      INTRODUCTION

The Plaintiff Digitech is the assignee of United States Patent No. 6,128,415 ("the '415 patent"), entitled "Device Profiles for Use In a Digital Image Processing System."  The various claims of the '415 patent cover, *inter alia*, a device profile for describing properties of a device in a digital image reproduction system to capture, transform or render an image.  The Defendant, Newegg, is a retailer.  In its complaint against Newegg (Dkt. No. 1), Digitech contends that Newegg infringes the '415 patent by actions comprising importing, selling and/or offering to sell various digital cameras sold in the United States under the Canon, Nikon, Sony, Panasonic, Olympus, Pentax, Fujifilm, Agfaphoto, and Vivitar brands.[1]  Digitech's claims against

---

[1] Digitech originally filed a single suit against Newegg and various other retailers, and also against multiple U.S. and foreign companies believed to be involved in the manufacturer, importation and/or original sale of, *inter alia*, Canon, Nikon, Sony, Panasonic, Olympus, Pentax, Fujifilm, Agfaphoto, and Vivitar branded cameras. *See Digitech Image Technologies LLC v. Agfaphoto Holding GMBH et al*., No. 8:12-cv-01153-ODW-MRW.  However, that suit was dismissed for misjoinder, and Digitech promptly re-filed individual suites, including this suit and others U.S. and foreign companies believed to be involved in the manufacturer, importation and/or sale of, *inter alia*, Canon, Nikon, Sony, Panasonic, Olympus, Pentax, Fujifilm, Agfaphoto, and Vivitar and/or distributors of those products branded cameras.

each retailer and each entity (or related family of entities) stated by Newegg to be a "manufacturer" or "DCM" are pending before this Court in multiple separate suits.

On information and belief, most if not all of the accused digital cameras sold by Newegg in the United States are actually manufactured overseas. The extent of the involvement of the "DCMs" in activities that fall under the Patent Act is yet to be determined. However, Newegg does not dispute that it sells the accused digital cameras.

Newegg's Motion fails to appreciate the territoriality of the U.S. Patent Laws. The Patent Act provides that "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention … infringes the patent." 35 U.S.C. § 271(a). "It is the general rule under United States patent law that no infringement occurs when a patented product is made and sold in another country." *Microsoft Corp. v. AT & T Corp.*, 550 U.S. 437, 441 (2007). The location of a contemplated sale controls whether there is an offer to sell within the United States. *Transocean Offshore Deepwater Drilling, Inc. v. Maersk Contractors USA, Inc.*, 617 F.3d 1296, 1309 (Fed. Cir. 2010).

Newegg's arguments in support of its Motion to Stay fail for several reasons. As an initial matter, Newegg has put forth no evidence that the activities of the DCMs fall within the reach of the U.S. Patent Act such that Digitech's recovery against them would "exhaust" its claims against Newegg.  Without limitation, Newegg has put

forth no evidence to support that its four allegations that: (1) "resolution of the claims against the DCMs will dispose of and eliminate any need to decide Digitech's claims against Newegg," (Newegg Memo of P&A, p. 4); (2)  "if Digitech prevails in proving infringement against and recovering damages from any of the DCMs, Digitech will be barred from obtaining further relief from Newegg with regard to that DCM's products." (*id.)*; (3) the manufacturers are . . . in the best position to contest . . . infringement of the asserted patent." (*id.* at p. 6); or (4) "a stay would also not impact Digitech's ability to recover damages." (*Id.* at p. 10. (collectively, "Allegations (1) – (4)")).  For example, Newegg has put forth no evidence showing where its purchases of digital cameras from the DCMs occurred (*i.e.*, in the U.S. or overseas), and Newegg has put forth no evidence of who imports some or all of the disputed digital cameras.

At this early stage of the case, before any discovery has occurred, it would be unfairly prejudicial to Digitech to stay its claims against Newegg, whose retail sales activities are known to fall within the reach of the U.S. patent laws, in favor of Digitech's claims against the "DCMs", who have not admitted that their activities fall under the territorial reach of the U.S. patent laws.  Further, it is yet to be determined whether the "DCMs" admit to being aware of the full extent that their digital cameras are imported into the United States or the full extent that they are sold in the United States.  Without the benefit of discovery, we do not know whether Newegg may be

the best source of information as to critical evidence of infringement (*e.g.*, who sold certain digital cameras in the United States and/or who imported them into the U.S.) and damages (*e.g.*, pricing and profitability relative to certain digital cameras).

Further, the declaration appended to Newegg's Motion is vague. It states that "Newegg purchases cameras directly from Canon, Nikon, Sony, Panasonic, Olympus, Pentax, Fujifilm, Agfaphoto, and Vivitar and/or distributors of those products" without naming the corporate names of the entities from which Newegg makes such purchases. Without such information, Digitech cannot even determine whether the Canon, Nikon, Sony, Panasonic, Olympus, Pentax, Fujifilm, Agfaphoto, and Vivitar affiliated entities that sell to Newegg have even been named in what Newegg refers to as the "DCM Lawsuits."

In addition, there has been no agreement by Newegg to be bound by any rulings findings or judgments regarding claim construction, infringement or validity from the cases involving the "DCMs." Newegg is of course willing to take advantage of any findings of invalidity or non-infringement involving products that it sells. However, Newegg has indicated no willingness to abide by determinations that digital cameras sold by Newegg infringe valid patent claims in the event that the DCMs escape liability for some of all infringement due to some or all of their activities falling outside the territorial scope of the U.S. patent laws. Rather, Newegg wants to "hedge its bet" by retaining the right to take a second bite at the apple on the issues of claim

construction, validity and infringement.  Therefore, Newegg has not shown that its proposal promotes efficiency or conservation of judicial resources.  In particular, Newegg has not shown that its proposal would result in anything except protracted, piecemeal litigation.

Newegg relies on the "customer suit exception" to justify its request to stay this case. However, Newegg has failed to show that it is merely a "peripheral defendant" or a "mere customer." Newegg infringes Digitech's patent separate and apart from any of the manufacturers including at least because, at a minimum Newegg sells the Accused Products in the United States and it induces infringement by its customers who use the Accused Products in the United States. Newegg has put forth no evidence that the activities of the DCMs fall within the reach of the U.S. Patent Act such that Digitech's recovery against them would "exhaust" its claims against Newegg. Further, as noted above, Newegg has put forth no evidence to support its Allegations (1) – (4).

## II.    ARGUMENTS AND AUTHORITIES

### a. Newegg has not shown it is "peripheral" to the "DCM Litigations."

Newegg has put forth no evidence that the DCMs are the "true defendants" or that Newegg is merely a "peripheral" defendant.  As noted above, Newegg has put forth no evidence that the activities of the DCMs fall within the reach of the U.S.

Patent Act such that Digitech's recovery against them would "exhaust" its claims against Newegg.  Without limitation, Newegg has put forth no evidence to support that its four allegations that: (1) "resolution of the claims against the DCMs will dispose of and eliminate any need to decide Digitech's claims against Newegg," (Newegg Memo of P&A, p. 4); (2)  "if Digitech prevails in proving infringement against and recovering damages from any of the DCMs, Digitech will be barred from obtaining further relief from Newegg with regard to that DCM's products." (*id.*); (3) the manufacturers are . . . in the best position to contest . . . infringement of the asserted patent." (*id.* at p. 6); or (4) "a stay would also not impact Digitech's ability to recover damages." (*Id.* at p. 10.).  For example, Newegg has put forth no evidence where its purchases of digital cameras from DCMs occurred (*i.e.* in the U.S. or overseas), and Newegg has put forth no evidence of who imports some or all of the disputed digital cameras.  Newegg presumably could have obtained evidence to support its Motion from the "DCMs," but it did not do so.  Essentially the only evidence put forth by Newegg is that it does not manufacture or apparently have much technical knowledge about the disputed digital cameras, and that it directly purchases them from the DCMs.  However, Newegg provides no factual details about importation, how or where such purchases occur or about which specific entity (*i.e.*, the DCM or an affiliate of a DCM) Newegg makes it purchases of the disputed digital cameras; and Newegg provides no facts to support the Allegations (1) – (4).

Further, the declaration appended to Newegg's Motion is vague.  It states that "Newegg purchases cameras directly from Canon, Nikon, Sony, Panasonic, Olympus, Pentax, Fujifilm, Agfaphoto, and Vivitar and/or distributors of those products" without naming the corporate names of the entities from which Newegg makes such purchases.  Without such information, Digitech cannot even determine whether the Canon, Nikon, Sony, Panasonic, Olympus, Pentax, Fujifilm, Agfaphoto, and Vivitar affiliated entities that sell to Newegg have even been named in what Newegg refers to as the "DCM Lawsuits."

Further, Newegg is not a "mere customer" because it sells and offers for sale the accused digital cameras in the United States, and it also has independent liability under 35 U.S.C. § 271(b) for inducing Newegg's customers to infringe the patent-in-suit by using infringing digital cameras in the United States. Inducement creates liability separate and distinct from the "DCMs" potential infringement liability. Newegg presumably has superior knowledge than "DCMs" regarding Newegg's customers and their purchase and use of infringing digital cameras.

Including because its allegations lack factual support and for the foregoing reasons, Newegg's reliance on its self-described designation as being "a mere customer" or "peripheral" is unsupported.

**b.  The Customer Suit Exception is Inapplicable**

The customer suit exception does not apply here.  As set forth above, Newegg has not even established that is a customer.   There is no facts that show who manufactures the Accused Products, where such products are manufactured, how the products are sold (including to and by Newegg), where they are sold, and who imports them in to the United States.  In the absence of such evidence, it is improper for Newegg to make the leap that the customer suit exception is applicable to this case.

Even assuming that Newegg is a direct customer of the manufacturers – which it has not established – the customer suit exception should not be applied here.  "The customer suit exception is an exception to the general rule that favors the forum of the first-filed action." *Tegic Communications Corp. v. Bd. of Regents of Univ. of Texas Sys.*, 458 F.3d 1335, 1343 (Fed. Cir. 2006). The customer suit exception is invoked when a patentee files an infringement action against a customer and the manufacturer subsequently files a declaratory judgment action against the patentee.   *Spread Spectrum Screening LLC v. Eastman Kodak Co.*, 657 F.3d 1349, 1357 (Fed. Cir. 2011) ("[g]enerally speaking, courts apply the customer suit exception to stay earlier-filed litigation against a customer while a later-filed case involving the manufacturer proceeds in another forum").

The facts here make it clear that the customer suit exception is inapplicable and does not justify staying this case. The infringing resellers and manufacturers are all parties in concurrent litigation, filed simultaneously in the same forum.  Indeed, all of

these related cases have been consolidated in this Court and will likely move forward on at least similar schedules.  Where the customers and manufacturers are all parties in concurrent litigation the "customer suit exception" does not apply. *See Heinz Kettler GMBH & Co. v. Indian Industries, Inc.,* 575 F. Supp. 2d 728, 730-31 (E.D. Va. 2008) ("the customer suit exception is inapplicable in this case. Because plaintiffs have simultaneously sued both the manufacturer (Escalade) and the customer (Sears) of the allegedly infringing table-tennis tables..."). *See also Privasys, Inc. v. Visa Intl., Inc.,* 2007 WL 3461761, *3 (N.D. Cal. Nov. 14, 2007); *Lifelink Pharmaceuticals,* 2007 WL 2459879, *2-3, (N.D. Ohio August 24, 2007) *Alloc, Inc., v. Unilin Decor N.V.,* 2005 WL 3448060, *3 (E.D. Wis. Dec. 15, 2005) (where manufacturer and customer "are defending claims of infringement in the same consolidated suit in the same jurisdiction ... the exception to the typical priority rule is inapposite"); *Naxon Telesign Corp. v. GTE Info. Sys.,* 89 F.R.D. 333, 339 (N.D.Ill.1980) ("In this action, where the suit against the manufacturer and customer would take place simultaneously ... the problem addressed in *Codex* and *Gluckin & Co.* [each involved the filing of two lawsuits in different jurisdictions, one against the manufacturer of the alleged infringing item and one against its customers] is not presented.").

In short, the customer suit exception is inapplicable in this case because both customers and manufacturers are part of concurrent litigations that involve the same patent-in-suit pending before the same Court. This Court should follow the precedent

of *Heinz Kettler, Lifelink Pharmaceuticals, Alloc,* and *Naxon Telesign,* and deny the Motion to Stay.

### c. Courts Do Not – and Should Not -- "Routinely" Stay Claims Against Retailer Defendants

Even assuming that Newegg is merely a "customer" as it claims, a stay is still inappropriate here.  Newegg cites seven cases in support of its erroneous assertion that courts have routinely "stayed claims against peripheral customer and retailer defendants (entities in positions similar to the position Newegg is in here) pending resolution of a case against manufacturers." (Newegg Memo of P&A, pp. 5-9).  Four of the seven cited cases are inapplicable because the severed or stayed customer defendants were added to the lawsuit in an attempt to establish venue or prevent transfer.  *See Oplus Tech.*, 2012 U.S. Dist. LEXIS 83597, at *3-4 (N.D. Ill. June 15, 2012) ("When a plaintiff chooses only one reseller of the accused product out of many, the inference here is irresistible that the principal reason [the customer defendant]  has been sued is to establish venue in the Northern District of Illinois.") (internal citations omitted); *Spread Spectrum Screening LLC v. Eastman Kodak Co.*, 2010 WL 3516106, at *2 (holding that "such joinder of 'peripheral' defendants to prevent the transfer of an action to a more appropriate venue is improper."); *Corry v. CFM Majestic Inc.*, 16 F. Supp. 2d 660, 661 (E.D. Va. 1998) (stating "this suit could not have been brought in this district, as it is not a permissible venue; none of the CFM entities reside in the Eastern District of Virginia, and none of the events giving

rise to the claim occurred here. To remedy this, plaintiff added a claim for patent infringement against one of the CFM entities' distributors..."); and *Brown Mfg. Corp. v. Alpha Lawn & Garden Equip., Inc.*, 219 F. Supp. 2d 705, 710 (E.D. Va. 2002) ("The inclusion of retailers as an element of forum shopping further diminishes the weight to which the Plaintiff's forum selection is entitled.").   Newegg is not seeking transfer and Digitech did not sue Newegg simply to prevent the transfer of this case to another jurisdiction. These four cited cases are inapplicable to the current facts and carry no weight to the issue at hand.

The other three cases cited by Newegg are also unpersuasive.   Newegg cites *Refac* for the proposition that "as in *Refac*, this Court should stay the case against Newegg to prevent unnecessary discovery and promote judicial economy." (Newegg Memo of P&A, p. 6). In *Refac*, the 31 customer defendants agreed to be bound by the district court's decision and remained parties in the action. *Refac Int'l Ltd. v. IBM*, 790 F.2d 79 (Fed. Cir. 1986). No unified agreement exists in the concurrent litigations. Further, "subsequent decisions have held that the stay fashioned in *Refac* was a product of the rare circumstances presented and have limited its application." *Alloc*, 2005 WL 3448060, *4;  *See also Mitsubishi Elec. Corp. v. IMS Tech., Inc.*, No. 96 CV 0499, 1996 U.S. Dist. LEXIS 12239 (N.D. Ill. Aug. 21, 1996); *Rates Tech. Inc. v. New York Tel. Co*., No. 94 CV 9297, 1995 U.S. Dist. LEXIS 10254 (S.D.N.Y. July 23, 1995). The circumstances presented in *Refac* are distinguishable here because no

agreement exists between the resellers to be bound by the outcomes of the manufacturers.

The *Micro* case involved a patent infringement suit against Defendant Videx, Inc. involving six patents. *See Micro Enhanced Tech., Inc. v. Videx, Inc., No. 1:11-cv-05506, slip op. at 2 (N.D. Ill. August 16, 2012).* In *Micro*, "the suit was brought primarily against [the manufacturer]" and the two customers were added later in the litigation. *Id.* at 1. Here, this suit was originally brought concurrently against the manufacturers and the resellers, which both have liability under Section 271. The resellers in the concurrent litigations are not an afterthought, as they are liable as inducers, separate from the manufacturers.

Finally, Newegg cites *Commissariat A L'Energie Atomique* as "holding that a stay was appropriate because: 1) plaintiff would not suffer real prejudice or tactical disadvantage with a stay; and 2) the stay could streamline the case." *Commissariat A L'Energie Atomique*, 2004 WL 1554382 (D. Del. May 13, 2004). However, in *Commissariat*, not all of the cases against the 60 defendants were filed at the same time. 2004 WL 1554382 at *1. Further, as noted above, Newegg has failed to bring forth evidence that a stay would streamline any cases, and Digitech has shown that it would be prejudiced by a stay (or, at a minimum, Newegg has failed to bring forth evidence that a stay would not be prejudicial).

Newegg's cited authorities do not demonstrate a pattern of staying litigation against customer defendants, but show that "district courts have inherent power to stay their proceedings, which is incidental to the power to promote the efficient disposition of cases on their docket." *Rivers v. Walt Disney Co.*, 980 F. Supp. 1358, 1360 (C.D. Cal. 1997).  Newegg has not shown an evidentiary basis for the extreme relief requested, and Newegg's requested relief will result in duplicative, piecemeal litigation that is inconvenient to the parties and witnesses.  Such a result is an inefficient use of judicial resources and Newegg's motion should be denied.

### d.  Newegg Has Failed To Meet Its Burden For a Motion to Stay

To prevail on its motion to stay, Newegg "must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else. Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both." *Edizone, LLC v. Schering-Plough Healthcare Products, Inc.*, 2:10-CV-855-TS, 2011 WL 1559944 (D. Utah Apr. 25, 2011) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). The general rule is that a stay of a civil proceeding is an "extraordinary remedy". *Walsh Securities, Inc. v. Cristo Property Management, Ltd.*, 7 F. Supp. 2d 523, 526 (D.N.J. 1998). When ruling on a motion to stay, courts weigh "the possible damage which may result from the granting of a stay, the hardship or inequity which a party may

- 13 -

suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *Spellbound Dev. Group, Inc. v. Pac. Handy Cutter, Inc.*, 2011 WL 1810961, *2 (C.D. Cal. May 12, 2011); (quoting *CMAX, Inc. v. Hall,* 300 F.2d 265, 268 (9th Cir. 1962)).

Newegg has failed to show extraordinary circumstances here. Newegg asserts that it "will be severely prejudiced if no stay is entered." (Newegg Memo of P&A, p. 10). Newegg's claims of severe prejudice amount to an unsubstantiated claim of "unnecessary" litigation costs. There is nothing unnecessary about litigation concerning the same accused products where both Newegg and the "DCMs" are separately liable as infringers and where Newegg has failed to show that the activities of the DCMs fall within the territorial reach of the U.S. patent laws. A unitary litigation approach is a highly efficient way to address all issues in a judicially efficient manner for all parties. It would be unnecessary and wasteful, however, if Digitech could not resolve all issues with the accused products in the non-stayed portion of the concurrent litigations. Such non-resolution could stem from: (1) manufacturers contending that their making or selling of accused products occurs outside of the geographical reach of U.S. patent laws; (2) manufacturers not being in the distribution chain for all the accused products sold by the resellers; and/or (3) a manufacturer being unable to satisfy a judgment. Further, as discussed above,

- 14 -

Newegg is not a mere reseller and has potential liability under 35 U.S.C. § 271(b) for inducement of infringement of the patent-in-suit.

Notably, the resellers have not agreed to be bound by a judgment in this case, even though Newegg and three other defendants have requested a stay in the proceedings. As noted in *Teleconference Systems*, in such situations a stay "may lead to a duplicate trial." 676 F. Supp. 2d 321, 329 (D. Del. 2009). Infringement issues would be complicated if Newegg's motion to stay should be granted. A unitary approach to infringement and damages discovery would simplify the issues for all of the parties, including Newegg.

### e. The Requested Stay Should Be Denied Based on Efficiency and Judicial Economy.

Newegg has failed to come forth with any evidence that a stay would serve the interests of efficiency or judicial economy. Primarily, Newegg has failed to substantiated Allegations (1) – (4) as noted above. Thus, Newegg has failed to show that any infringement issues would necessarily be "exhausted" as to Newegg as a result of the "DCM Litigations."  In addition, Newegg has not agreed to be bound by any of the findings and/or decisions in the cases against the manufacturers. Therefore, rather than simplifying and streamlining the issues, as Newegg alleges, a stay of this case is likely to result in duplicative litigation including because Newegg will take a second bite at the apple in the event that the DCMs contend their activities are outside the scope of the U.S. patent laws, that the DCMs claim ignorance as to the extent of

infringing sales made in the U.S. via Newegg, and to the extent the DCMs invalidity and non-infringement arguments are unsuccessful.

The *AAS* case is instructive here.[2]  In *AAS*, AAS sued Bank of America, a customer of Novell, for direct infringement as well as Novell for inducement. Novell responded by filing a declaratory judgment action against AAS in its home venue, and moved to stay all claims against Bank of America pending resolution of the *AAS* case based on the "customer suit exception," stating that that AAS was the real party in interest, and resolution of the *AAS* case would necessarily resolve the Bank of America case.

The *AAS* court denied Novell's motion. Citing *Katz,* the court held that the customer suit exception only applies when the decision on the merits in the suit between the manufacturer and patent holder will necessarily resolve the major issues in the suit between the patent holder and the manufacturer's customers. In denying the motion to stay, the court held that the suit against AAS would not resolve all such issues as to Bank of America:

> It may well be that the case against BOA will cease to exist should Novell prevail on its claims of patent invalidity or unenforceability. ***However, should the '989 patent be found valid and enforceable, even if Novell prevails on the issue of its noninfringement, there are other major infringement issues that will need to be resolved in the action against BOA.***

---

[2] *American Academy of Science v. Novell, Inc.,* 1992 WL 313101 (N.D. Cal. 1992).

*AAS,* 1992 WL 313101 at *3 (emphasis added). Here, similar to the *AAS* case, Newegg has failed to show that the "DCMs" activities upstream of Newegg fall within the reach of the U.S. patent laws such that their resolution would result in "exhaustion" as to Newegg, and is separately liable as an inducer of its customers under Section 271(b), regardless of whether the manufacturers are found liable for direct infringement.

Newegg's cited cases are unpersuasive. Newegg cites *Intel* for the proposition that resolution of the claims of the manufacturers will automatically dispose of the claims against the customers. *See Intel Corp. v. ULSI Sys. Tech., Inc.*, 95[5][sic] F.2d 1566, 1568 (Fed. Cir. 1993). In other words, Newegg cites *Intel* as general support for the doctrine of "exhaustion."  However, in the *Intel* case, there was no issue of whether the activities of foreign manufacturers might be beyond the reach of the U.S. patent laws.  If that was the case, then the doctrine of exhaustion would not apply.

Newegg also cites to *MGA* in a meritless attempt to apply the *Kessler* doctrine. The *Kessler* doctrine is a theory used when a manufacturer has already prevailed in a patent infringement suit to protect the manufacturer's customers. *Tech. Licensing Corp. v. Thomson, Inc.*, 738 F. Supp. 2d 1096, 1101 (E.D. Cal. 2010). "The *Kessler* doctrine appears to be nothing more than a patent-specific application of *res judicata* between manufacturers of allegedly infringing products and their customers in patent infringement suits against the customer." *Id*. This narrowly-held doctrine is

inapplicable here because the manufacturers have not prevailed in a previous suit related to the same patent. Additionally, the *Kessler* doctrine is a right held by manufacturers, not customers.  The Supreme Court, Federal Circuit, and Ninth Circuit, however, have declined to address the issue of whether the customer has the right to invoke the *Kessler* doctrine as a defense to patent infringement suits." *See Kessler,* 206 U.S. 288, 289. *Kessler* identified the right protected as belonging to the manufacturer—that is, the right to receive an injunction preventing its customers from being sued where it had previously prevailed. *Id. Tech. Licensing Corp. v. Thomson, Inc.*, 738 F. Supp. 2d 1096, 1101 (E.D. Cal. 2010).  Further, the *Kessler* doctrine could not possibly apply if the activities of a foreign company are beyond the reach of the U.S. patent laws.  The *Kessler* doctrine is inapplicable here and Newegg's reliance upon it misplaced.

Finally, Newegg relies on *Glenayre* for the general proposition that Digitech cannot obtain a double recovery. *See Glenayre Elecs., Inc. v. Jackson*, 443 F.3d 851, 864 (Fed. Cir. 2006). However, Newegg has failed to provide any evidence that the activities of any entity – other than Newegg itself – fall within the territorial scope of the U.S. patent laws as to the manufacture, use, sale or importation of any of the accused digital cameras.  Further, as noted above, Newegg has failed to even identify the entities from which it makes direct purchases, much less provide any facts as to how purchases or imports occur.

The *MShift* case is instructive here and highlights the distinction between *Glenaryre* and this case. *See MShift, Inc. v. Intuit Fin. Services*, 2010 WL 2486461 (N.D. Cal. June 16, 2010)   In *MShift*, the plaintiff sought to amend its original complaint to add infringing customers of the defendant, a financial institution.   The defendant objected to the addition of its customers, stating that "their addition to the lawsuit will slow adjudication by complicating the proceedings and will burden the parties by increasing the costs of litigation." *Id.* at *1.   The court properly distinguished *Glenayre* and granted leave to amend the complaint to add the allegedly infringing customers:

> Defendants attempt to show that plaintiff has failed to state a valid and sufficient claim against the IFS Customers by relying on decisions which demonstrate that, in patent claims, a plaintiff may not recover against a party for the same infringing activity when plaintiff has already recovered against another party.

*Id.* at *3.  The present case is distinct from *Glenayre* including because Newegg has failed to establish that any defendant other than itself is liable for Newegg's sales of infringing products and because Digitech has yet to recover against any defendant for its patent infringement claims.

Newegg claims that staying this case will simplify the litigation is factually unsupported and is inapposite to Newegg's cited authority.  The piecemeal litigation proposed by Newegg would not promote efficiency or judicial economy. As stated in *Lifelink Pharmaceuticals*, "granting a stay in such a situation would run counter to the

goal of fostering judicial economy without enhancing the product source defendant's ability to litigate the issue of patent infringement." 2007 WL 2459879, *2-3. Further, as noted in *Teleconference Systems* which dealt with customer inducement claims, "a stay would not simplify the issues. A verdict in California would not be binding on Cisco's customers in this case. Therefore, a stay may lead to a duplicate trial." 676 F. Supp. 2d at 329.

### f.  The Requested Stay Would Unfairly Prejudice Digitech.

The requested stay would unfairly prejudice Digitech with delay, piecemeal litigation and with having to take expensive, inefficient third-party discovery from Newegg. Without limitation, even if Digitech's claims against Newegg were stayed, Digitech would need discovery from Newegg concerning at least the timing and extent of its sales of accused digital cameras in the U.S. and the identity of the parties upstream who are involved in the distribution and importation of such cameras. Further, the "DCMs" have not admitted that their activities fall under the territorial reach of the U.S. patent laws.  Further, it is yet to be determined whether the "DCMs" admit to being aware of the full extent that their digital cameras are imported into the United States or the full extent that they are sold in the United States.  Without the benefit of discovery, Newegg hasn't shown that it isn't the best source of information as to critical evidence of infringement (*e.g.*, who sold certain digital cameras in the

United States and/or who imported them) and damages (*e.g.*, pricing and profitability relative to certain digital cameras).

## III.   CONCLUSION

For the reasons set forth above, Digitech respectfully requests that Newegg's motion to stay, or in the alternative to stay discovery, be denied.

December 25, 2012                           Respectfully submitted,

                                            /s/ John J. Edmonds
                                            John J. Edmonds
                                            COLLINS EDMONDS
                                            POGORZELSKI
                                            SCHLATHER & TOWER, PLLC

                                            Attorney for Plaintiff
                                            DIGITECH IMAGE
                                            TECHNOLOGIES, LLC

# **CERTIFICATE OF SERVICE**

I, John J. Edmonds, declare as follows:

I am over the age of eighteen years and am not a party to this action. I am employed at the law firm of Collins, Edmonds, Pogorzelski, Schlather & Tower, PLLC and I am a member of the bar of this Court. I hereby certify that on December 25, 2012, the following document was transmitted via the Court's Electronic Case Filing (ECF) system:

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S OPPOSITION TO NEWEGG'S MOTION TO STAY THIS PROCEEDING IN ITS ENTIRETY**

I further certify that the attached document was sent on December 25, 2012 via the Court's Electronic Case Filing (ECF) system to all counsel of record in this action.

December 25, 2012                    Respectfully Submitted,


                                     /s/ John J. Edmonds
                                     John J. Edmonds – LEAD COUNSEL
                                     jedmonds@cepiplaw.com

                                     ATTORNEY FOR DIGITECH IMAGE TECHNOLOGIES, LLC.