KARLA J. KRAFT (SB# 205530)
Email: kkraft@hbwllp.com
ASHLEY MERLO (SB# 247997)
Email: amerlo@hbwllp.com
HODEL BRIGGS WINTER LLP
8105 Irvine Center Drive, Suite 1400
Irvine, California 92618
Telephone: (949) 450-8040
Facsimile: (949) 450-8033

Attorneys for Counter-Defendant
ACACIA RESEARCH CORPORATION

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

DIGITECH IMAGE TECHNOLOGIES, LLC,

Plaintiff,

vs.

NEWEGG INC. and NEWEGG.COM INC.,

Defendants,

---

NEWEGG INC.,

Counter-Plaintiff,

vs.

DIGITECH IMAGE TECHNOLOGIES, LLC, and ACACIA RESEARCH CORPORATION,

Counter-Defendants.

CASE NO.: SACV12-01688 ODW (MRWx)

**ACACIA RESEARCH CORPORATION'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORTIES IN SUPPORT THEREOF**

Hearing Information:
Date: February 11, 2013
Time: 1:30 p.m.
Location: Spring Street Courthouse
Courtroom 11
312 North Spring Street
Los Angeles, CA

[Request for Judicial Notice filed concurrently herewith]

Complaint Filed: October 2, 2012
Trial Date: Not Set

137443

**NOTICE OF MOTION AND MOTION TO DISMISS**

PLEASE TAKE NOTICE that on February 11, 2013, at 1:30 p.m. in Courtroom 11 of the above-captioned Court, located at 312 North Spring Street, Los Angeles, California, counter-defendant Acacia Research Corporation ("ARC") will, and hereby does, move pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), for an order dismissing it from this action.

ARC was brought into this action as the result of defendant/counterclaimant Newegg Inc.'s ("Newegg") counterclaim for a declaration of non-infringement and invalidity of the patent-in-suit, a patent of which plaintiff Digitech Image Technologies, LLC ("Digitech") is the present assignee. ARC is not a proper counter-defendant: it is not the owner, assignee or exclusive licensee of the patent-in-suit. As such, no actual case or controversy exists between Newegg and ARC and this court lacks subject matter jurisdiction over Newegg's claim against ARC.

Additionally, Newegg's counterclaim fails to state a claim for declaratory relief against ARC because Newegg has failed to allege any basis upon which ARC could be found the alter ego of Digitech. Even if Newegg had adequately pled the elements of alter ego (which it did not), ARC still would not be a proper counter-defendant. Courts repeatedly have held that a parent company cannot bring suit for patent infringement as the alter ego of its patent-holding subsidiary. Since ARC could not affirmatively bring a patent infringement suit even if it were the alter ego of Digitech, ARC similarly cannot be a counter-defendant.

There is no legal basis for the claims against ARC, and ARC therefore respectfully requests that it be dismissed from the action pursuant to Rule 12(b)(1) or, alternatively, under Rule 12(b)(6).

This Motion is based upon this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the pleadings and records, all matters of which the court may take judicial notice, and such other arguments offered at the hearing.

This Motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on January 4, 2013. Counsel for ARC is informed that Newegg intends to object that the meet and confer was untimely under the local rules (*i.e.*, it should have occurred by January 2, 2013). The meet and confer was delayed as a result of a dispute with Newegg concerning whether ARC was properly served. ARC notified Newegg on December 18, 2012 that it had not been effectively served because it only received the summons and complaint via United States regular mail. Newegg responded on Friday, December 28, 2012, contending service was proper through substituted service (by leaving the complaint with a security officer at the building where ARC is located, and subsequently mailing the complaint). Though ARC contends service was defective (in fact, it never received the complaint left with the security officer, who is not employed by ARC, and the mailed copy was not properly addressed), ARC has elected to move forward rather than dispute service. Counsel for ARC promptly reached out to Newegg's counsel by initiating the meet and confer on January 3, and the meet and confer was accomplished the next day. Moreover, any objection by Newegg is immaterial, as Newegg's counsel confirmed that, even had the meet and confer been conducted by January 2, Newegg's position would not have changed.

DATED: January 7, 2013

HODEL BRIGGS WINTER LLP
KARLA J. KRAFT
ASHLEY MERLO

By: /s/ KARLA J. KRAFT
KARLA J. KRAFT

Attorneys for Counter-Defendant
ACACIA RESEARCH CORPORATION

# TABLE OF CONTENTS

I. INTRODUCTION ........ 1

II. STATEMENT OF FACTS ........ 2

III. ARGUMENT ........ 3

A. The Counterclaim Against ARC Should Be Dismissed Pursuant To Rule 12(b)(1) Because There Is No Subject Matter Jurisdiction ........ 3

1. The Counterclaim Should Be Dismissed Because There Is No Case Or Controversy And Therefore This Court Lacks Subject Matter Jurisdiction ........ 4

2. There Is No Case Or Controversy Because ARC Does Not Own Or Have An Exclusive License In The '415 Patent ........ 4

3. The Parent Company Of A Patent Holder Is Not A Proper Defendant In A Declaratory Judgment Suit ........ 6

B. The Counterclaim Against ARC Should Be Dismissed Pursuant to Rule 12(b)(6) Because It Fails To State A Claim ........ 7

1. The Counterclaim Against ARC Should Be Dismissed Because Newegg Fails To Allege The Elements Of An Alter Ego Claim ........ 8

a. The Counterclaim Should Be Dismissed Because There Is No Unity Between ARC and Digitech ........ 9

b. The Counterclaim Should Be Dismissed Because Newegg Has Not Pled Fraud Or Injustice ........ 11

2. Even If Newegg Had Adequately Pled Alter Ego, The Counterclaim Would Still Fail Because ARC Could Not Bring A Patent Infringement Suit Based Upon A "Reverse Piercing" Theory ........ 12

IV. CONCLUSION ........ 13

# TABLE OF AUTHORITIES

| CASES | PAGE(S) |
|---|---|
| Ashcroft v. Iqbal, 556 U.S. 662 (2009) | 8 |
| Beam Laser Sys., v. Cox Commc'ns, Inc., 117 F. Supp. 2d 515 (E.D. Va. 2000) | 6 |
| Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007) | 8 |
| Boston Scientific Corp. v. Wall Cardiovascular Tech. LLC, 647 F. Supp. 2d 358 (D. Del. 2009) | 9, 11, 12 |
| Carey v. Nat'l Oil Corp., 592 F. 2d 673 (2d Cir. 1979) | 13 |
| Disenos Artisticos, E Industriales, S.A. v. Costco Wholesale Corp., 97 F. 3d 377 (9th Cir. 1996) | 12 |
| Doe v. Unocal Corp., 248 F. 3d 915 (9th Cir. 2001) | 9, 10 |
| Dole Foods Co. v. Patrickson, 538 U.S. 468 (2003) | 6 |
| Eclectic Properties East, LLC v. The Marcus & Millichap Co., 2012 WL 713289 (N.D. Cal. March 5, 2012) | 10, 11 |
| Fieldturf Inc. v. Sw. Recreational Indus., Inc., 357 F. 3d 1266 (Fed. Cir. 2004) | 5 |
| Fina Research S.A. v. Baroid Drilling Fluids, Inc., 98 F. 3d 1357, 1996 WL 521465 (Fed. Cir. Sept. 16, 1996) | 5 |
| Fina Research S.A. v. Baroid Ltd., 141 F. 3d 1479 (Fed. Cir. 1998) | 5 |
| Gadsden v. Home Preservation Co., 2004 WL 485468 (Del. Ch. Feb. 20, 2004) | 9 |
| GMP Tech., LLC v. Zicam, LLC, 2009 WL 5064762 (N.D. Ill. Dec. 9, 2009) | 6 |
| Herman v. YellowPages.com, 780 F. Supp. 2d 1028 (S.D. Cal. 2011) | 9 |
| In re Hydroxycut Marketing and Sales Practices Litigation, 810 F. Supp. 2d 1100 (S.D. Cal. 2011) | 8 |

**CASES (Continued)** **PAGE(S)**

In re Ozark Rest. Equip. Co., Inc., 816 F. 2d 1222 (8th Cir. 1987) .... 13

In re RCS Eng'rd Prods. Co., Inc., 102 F. 3d 223 (6th Cir. 1996) .... 12

Inst. of Veterinary Pathology v. Cal. Health Lab., Inc., 116 Cal. App. 3d 111 (1981) .... 9

Katzir's Floor & Home Design, Inc. v. M-MLS.com, 394 F. 3d 1143 (9th Cir. 2004) .... 10

Mars, Inc. v. Coin Acceptors, Inc., 527 F. 3d 1359 (Fed. Cir. 1008) .... 5

Md. Cas. Co. v. Pacific Coal & Oil Co., 312 U.S. 270 (1941) .... 4

Medimmune, Inc. v. Genentech, Inc., 549 U.S. 118 (2007) .... 4

Merial Ltd. v. Intervet, Inc., 430 F. Supp. 2d 1357 (N.D. Ga. 2006) .... 6

Mid-Century Ins. Co. v. Gardner, 9 Cal. App. 4th 1205 (1992) .... 11, 12

MMI, Inc. v. Baja, Inc., 743 F. Supp. 2d 1101 (D. Ariz. 2010) .... 10

Papasan v. Allain, 478 U.S. 265 (1986) .... 8

Rite-Hite Corp. v. Kelley Co., 56 F. 3d 1538 (Fed. Cir. 1995) .... 5

Spectronics Corp. v. H.B. Fuller Co., 940 F. 2d 631 (Fed. Cir. 1991) .... 4

Spine Solutions, Inc. v. Medtronic Sofamor Danek USA, Inc., 620 F. 3d 1305 (Fed. Cir. 2010) .... 5, 6

Sun Microsystems, Inc. v. Hynix Semiconductor, Inc., 608 F. Supp. 2d 1166 (N.D. Cal. 2009) .... 12

Top Victory Electronics v. Hitachi Ltd., 2010 WL 4722482 (N.D. Cal. Nov. 15, 2000) .... 5, 6, 7

Trans-World Intern., Inc. v. Smith-Hemion Productions, Inc., 972 F. Supp. 1275 (C.D. Cal. 1997) .... 9

| **STATUTES AND RULES** | **PAGE(S)** |
| --- | --- |
| 28 U.S.C. Section 2201(a) | 3 |
| Federal Rule of Civil Procedure Section 12(b)(1) | 2, 3, 13 |
| Federal Rule of Civil Procedure Section 12(b)(6) | 1, 7, 12, 13 |

| **OTHER AUTHORITY** | **PAGE(S)** |
| --- | --- |
| Restatement (Second) of Conflict of Laws § 307 (1971) | 8 |

# I. INTRODUCTION

This dispute began when plaintiff Digitech Image Technologies, LLC ("Digitech"), the owner of United States Patent No. 6,128,415 (the "'415 Patent") filed suit in this Court against Newegg Inc. ("Newegg") and Newegg.com Inc. for patent infringement. Notably, Acacia Research Corporation ("ARC") is not a plaintiff in the original complaint; ARC did not sue Newegg because ARC does not own the '415 Patent.

Newegg responded to Digitech's complaint by filing a counterclaim for declaratory relief not only against Digitech, but also naming ARC as a counter-defendant. ARC is not a proper counter-defendant to the Newegg counterclaim for the simple reason that it does not have any ownership interest in or exclusive license to use the '415 Patent. The law is clear: only the owner of a patent or its exclusive licensee has standing to bring an action for infringement of that patent. For that same reason, only the owner of a patent or its exclusive licensee is an appropriate defendant in an action seeking a declaratory judgment of non-infringement with respect to that patent.

Newegg presumably will attempt to avoid this well-established legal doctrine by contending that ARC is the alter ego of Digitech. However, Newegg fails to allege any facts to support an alter ego claim. Namely, there are no allegations in the counterclaim that Digitech and ARC share a unity of interest, nor that fraud or injustice would result if ARC is not treated as an alter ego of Digitech – indeed, the phrase "alter ego" is never mentioned in the counterclaim. Even if Newegg had adequately pled the elements of alter ego (which it did not), ARC still would not be a proper counter-defendant. Courts repeatedly have held that a parent cannot bring suit for patent infringement because it is the alter ego of its patent-holding subsidiary (*i.e.*, a theory of reverse piercing of the corporate veil). Since ARC could not affirmatively bring a patent infringement suit even if it were the alter ego

of Digitech, ARC similarly cannot be a counter-defendant in Newegg's declaratory judgment action.

There is no legal basis for the claims against ARC. Therefore, ARC respectfully requests that it be dismissed from this action pursuant to Rule 12(b)(1) or, alternatively, under Rule 12(b)(6).[1]

## II. STATEMENT OF FACTS

On October 2, 2012, Digitech filed suit against Newegg and Newegg.com Inc. for infringement of the '415 Patent. (Complaint (Dkt. #1).) ARC was not a party to the initial complaint. (*Id.*) Newegg responded to Digitech's complaint on October 25, 2012, filing an answer, and counterclaiming against not only Digitech, but also ARC. (Counterclaim (Dkt. #16).) Digitech's counterclaim seeks a declaratory judgment of non-infringement and invalidity of the '415 Patent. (*Id.* at ¶¶ 16-18, 21-23.)

Newegg alleges in its counterclaim that a justiciable controversy exists between it and Digitech and ARC regarding infringement and validity of the '415 Patent "because *Digitech has asserted* that it is the owner of the Patent-In Suit and that Newegg infringes it." (Counterclaim, ¶ 6, emphasis added.) Newegg does not allege that ARC owns the '415 Patent; instead, Newegg merely alleges "[o]n information and belief, Acacia has an ownership interest in the Patent-In-Suit and/or has an ownership interest in Digitech directly or indirectly." The counterclaim does not detail any fraud or injustice that would occur should ARC not be found to be the alter ego of Digitech, nor does the counterclaim even mention the existence of an alter ego relationship.

[1] The allegations of the counterclaim are virtually identical to the allegations brought against ARC in a similar matter and a similar context. *See* Complaint for Declaratory Judgment in *Sony Electronics Inc. v. Digitech Image Technologies LLC*, U.S. District Court, District of Delaware, case no. 12-cv-00980-RGA, attached as Exhibit A to Request for Judicial Notice filed concurrently herewith ("RJN"). ARC filed a motion to dismiss that complaint on the same bases as those presented by this Motion, and the *Sony* court granted ARC's motion to dismiss. *See* Amended Order, attached as Exh. B to RJN.

According to the counterclaim, Digitech is a wholly-owned subsidiary of ARC.[2] (Counterclaim, ¶ 5.) The counterclaim alleges that Digitech and ARC have the same physical address and place of business. (*Id.* at ¶ 4.) The counterclaim also alleges that a July 19, 2012 Press Release filed with the Securities and Exchange Commission stated that "[Acacia and its affiliates] acquired patents originally issued to Polaroid."[3] (*Id.* at ¶ 7.) The counterclaim misquotes the cited Press Release, which actually states that "*Acacia Research Group LLC* and its affiliates … acquired patents issued to Polaroid." (Counterclaim, Ex. A at 12, emphasis added.) Acacia Research Group LLC is not the same entity as counter-defendant ARC. Finally, the counterclaim alleges that all of ARC's intellectual property acquisitions, developments, licensing and enforcement activities are conducted solely by certain of ARC's wholly and majority-owned operating subsidiaries. (Counterclaim, ¶ 7.) These are the *only* allegations in the counterclaim that address ARC's relationship to the '415 Patent or this case.

## III. ARGUMENT

### A. The Counterclaim Against ARC Should Be Dismissed Pursuant To Rule 12(b)(1) Because There Is No Subject Matter Jurisdiction.

A claim may be dismissed for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Here, Newegg alleges that subject matter jurisdiction exists under the Declaratory Judgment Act and that there is an actual controversy between it and counter-defendant ARC. (Counterclaim, ¶ 6.) However, as admitted in the counterclaim, only Digitech has asserted that it is the owner of the '415 Patent, and as discussed below, there can be no case or controversy with an entity that does not own the patent-in-suit or hold an exclusive license to use the patent-in-suit.

///

[2] In fact, Digitech is a wholly-owned subsidiary of Acacia Research Group, which is, in turn, a wholly-owned subsidiary of ARC. However, this information goes outside of the pleadings.

[3] The '415 Patent is one of the patents that was acquired from Polaroid.

**1. The Counterclaim Should Be Dismissed Because There Is No Case Or Controversy And Therefore This Court Lacks Subject Matter Jurisdiction.**

Newegg seeks a declaration of non-infringement and invalidity of the '415 Patent. The Declaratory Judgment Act provides:

> In a case of actual controversy within its jurisdiction … any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a).

In determining whether subject matter jurisdiction is proper, "[t]he question … is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Medimmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (quoting *Md. Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941)). The party seeking declaratory judgment has the burden of establishing an actual case or controversy. *See e.g., Spectronics Corp. v. H.B. Fuller Co.*, 940 F.2d 631, 634 (Fed. Cir. 1991) ("The long established rule of law is that a declaratory judgment plaintiff must establish an actual controversy … .").

Newegg has not met its burden of establishing an actual case or controversy because ARC does not own or have an exclusive license to use the Patent-In-Suit, nor is it alleged to, and therefore there can be no case or controversy.

**2. There Is No Case Or Controversy Because ARC Does Not Own Or Have An Exclusive License In The '415 Patent.**

If a party cannot bring suit for patent infringement because they have no legal interest in the patent-in-suit, there is no case or controversy that would support

jurisdiction under the Declaratory Judgment Act. *See e.g., Fina Research S.A. v. Baroid Ltd.*, 141 F.3d 1479, 1481 (Fed. Cir. 1998); *Top Victory Electronics v. Hitachi Ltd.*, 2010 WL 4722482 *2 (N.D. Cal. Nov. 15, 2000) ("In order for a plaintiff to have standing in a declaratory action involving allegations of patent infringement, the defendant must have a legal right in the patent at issue that would allow the defendant to bring suit for infringement"). "Only a patent owner or an exclusive licensee can have constitutional standing to bring an infringement suit … ." *Mars, Inc. v. Coin Acceptors, Inc.*, 527 F.3d 1359, 1367 (Fed. Cir. 2008).

In *Fina Research S.A. v. Baroid Drilling Fluids, Inc.*, ("*FINA I*"), 98 F.3d 1357, 1996 WL 521465 (Fed. Cir. Sept. 16, 1996), the Federal Circuit affirmed the dismissal of a declaratory judgment suit against a defendant who did not have any legal interest in the two patents in suit. *Id.* at *2. The Federal Circuit reasoned that the defendant could not sue on the patents and that therefore "it is clear that there is no 'case of actual controversy'." *Id.* Indeed, it is well settled that in order to have standing in a patent infringement suit, a party must be the owner or exclusive licensee of the patent-in-suit. *See, e.g., Spine Solutions, Inc. v. Medtronic Sofamor Danek USA, Inc.*, 620 F.3d 1305, 1317 (Fed. Cir. 2010); *Fieldturf Inc. v. Sw. Recreational Indus., Inc.*, 357 F.3d 1266, 1268 (Fed. Cir. 2004). *See also Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1551-52 (Fed. Cir. 1995) (a party must generally hold legal title to the patent or obtain all substantial rights in the patent through assignment or license in order to have standing to sue for patent infringement).

ARC has no legal interest in the '415 Patent. Newegg's counterclaim alleges only that Digitech (not ARC) has asserted that it is the owner of the Patent-In-Suit. (Counterclaim, ¶ 6.) Newegg does not allege that ARC owns or has an exclusive license to use the Patent-In-Suit. While the counterclaim alleges on information and belief that ARC has an ownership interest in the '415 Patent and/or has an ownership interest in Digitech directly or indirectly, this allegation

apparently refers to alter ego, which is addressed below. (*Id.* at ¶ 7.) The simple fact is ARC has no ownership interest in the Patent-In-Suit, as per Digitech's complaint where Digitech represents itself as the "present assignee of the entire right, title, and interest in and to the '415 Patent." (Complaint, ¶ 7.) Therefore, as in the cases cited *supra,* ARC's motion to dismiss should be granted.

**3. The Parent Company Of A Patent Holder Is Not A Proper Defendant In A Declaratory Judgment Suit.**

To the extent that Newegg argues that jurisdiction exists over ARC because it has an ownership interest in Digitech "directly or indirectly," that argument too should fail. A parent corporation does not own the assets of its subsidiary simply by virtue of that relationship. *See, e.g., Dole Foods Co. v. Patrickson,* 538 U.S. 468, 474-75 (2003).

For example, in *Spine Solutions*, the Federal Circuit held that it was improper to allow a parent corporation who was not an owner or exclusive licensee of the patent-in-suit to be added as a co-plaintiff. *Spine Solutions, Inc.*, 620 F.3d at 1317-18. As in this case, there was no allegation that the parent corporation was an exclusive licensee of the patent-in-suit and no allegation that the parent even licensed the patent. *Id.*[4]

Similarly, in *Top Victory Electronics v. Hitachi Ltd.*, the court granted defendant's motion to dismiss plaintiff's declaratory relief action for non-infringement on the ground that the defendant, who had assigned its patents to its

[4] Other district courts across the country similarly held that a parent company that does not own the patent-in-suit does not have standing to sue for patent infringement. *See, e.g., Merial Ltd. v. Intervet, Inc.,* 430 F. Supp. 2d 1357, 1361-63 (N.D. Ga. 2006) (granting motion to dismiss parent corporation's infringement suit; finding that "standing under the Patent Act cannot be based on the mere fact that Merial SAS is a wholly-owned subsidiary of Merial."); *Beam Laser Sys., v. Cox Commc'ns, Inc.,* 117 F. Supp. 2d 515, 520-21 (E.D. Va. 2000) (granting motion to dismiss sole shareholder's infringement suit; finding that "[o]wnership of corporate stock does not create equitable title in that corporation's property"); *GMP Tech., LLC v. Zicam, LLC,* 2009 WL 5064762 *2 (N.D. Ill. Dec. 9, 2009) (dismissing declaratory relief against parent company where the parent company did not own or have an exclusive license for the patents).

subsidiaries, was not an owner, assignee or exclusive licensee of the patents-in-suit when the action was filed. 2010 WL 4722482 *2-3. The court also rejected plaintiff's argument that defendant's relationship as the parent of the subsidiary-patent holders was sufficient to meet the requirements for plaintiff's declaratory judgment action. *Id.* at 4 ("Plaintiff only alleges that Hitachi is the equitable title holder because the companies are 'closely intertwined . . .' and because Hitachi 'stands to materially gain, or lose,' as a result of this action. This does not meet Plaintiff's burden to establish standing."). In other words, just as a subsidiary's ownership of a patent does not confer a right to the parent company to sue on said patent, that parent company cannot be sued on patents owned by a subsidiary. *Id.* at 3 ("That a corporate parent's subsidiary owns a patent is not enough to establish that the parent has rights in the subsidiary's patents.").

Newegg's counterclaim does not allege that ARC owns the '415 Patent or that it has an exclusive license in the '415 Patent. Instead, Newegg alleges that ARC has an ownership interest in the '415 Patent because it has an ownership interest in Digitech directly or indirectly. (Counterclaim, ¶ 7.) This is insufficient to confer subject matter jurisdiction.

As shown above, case law is clear that a parent company that does not own the patent-in-suit should be dismissed for lack of subject matter jurisdiction. Accordingly, ARC's Rule 12(b)(l) motion should be granted.

**B. <u>The Counterclaim Against ARC Should Be Dismissed Pursuant To Rule 12(b)(6) Because It Fails To State A Claim.</u>**

Under Federal Rule of Civil Procedure 12(b)(6), a claim may be dismissed for ''failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In ruling on a 12(b)(6) motion to dismiss, a court accepts all factual allegations in the complaint as true. However, the complaint must contain more than ''labels and conclusions," and a court is not required to accept "legal conclusion[s] couched as a factual allegation." *Bell Atl. Corp. v. Twombly,* 550 U.S.

544, 555 (2007) (quoting *Papasan v. Allain,* 478 U.S. 265, 286 (1986)). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

For issues related to corporate identity, courts look to the laws of the state of incorporation to determine whether the separate corporate identity should be disregarded. Restatement (Second) of Conflict of Laws § 307 (1971); *see also In re Hydroxycut Marketing and Sales Practices Litigation*, 810 F. Supp. 2d 1100, 1121 n. 10 (S.D. Cal. 2011) ("under the choice-of-law rules of the majority of forums at issue, the forums look to the alter ego law of the state of incorporation of the alleged alter ego entity").

**1. The Counterclaim Against ARC Should Be Dismissed Because Newegg Fails To Allege The Elements Of An Alter Ego Claim.**

Simply put, Newegg completely fails to allege an alter ego claim. In fact, Newegg does not even mention the term "alter ego," let alone allege facts remotely sufficient to assert the existence of an alter ego relationship. The counterclaim also does not detail any fraud or injustice that would occur should ARC not be found to be the alter ego of Digitech.

There are just four allegations in the counterclaim that even arguably relate to alter ego. First, Newegg alleges that Digitech is a wholly-owned subsidiary of ARC. (Counterclaim, ¶ 5.)[5] Second, the counterclaim alleges that Digitech and ARC have the same physical address and place of business. (Counterclaim, ¶ 4.) Third, Newegg alleges that a July 19, 2012 Press Release filed with the Securities and Exchange Commission stated that Acacia Research Group LLC and its affiliated companies acquired patents originally issued to Polaroid. (Counterclaim, ¶ 7, Ex. A at 12.) [Notably, Acacia Research Group LLC is not the same entity as

[5] In fact, Digitech is a wholly owned subsidiary of Acacia Research Group, not ARC.

counter-defendant ARC.] Lastly, the counterclaim alleges that ARC's intellectual property acquisitions, developments, licensing and enforcement activities are conducted solely by certain ARC subsidiaries. (*Id.* at ¶ 7.)

Digitech is a California limited liability company; therefore, California law governs the alter ego analysis.[6] Under California law, a plaintiff alleging alter ego in an attempt to pierce the corporate veil must prove (1) that there is such unity of interest and ownership that the separate personalities of the entities no longer exists and (2) that failure to disregard their separate entities would result in fraud or injustice. *Doe v. Unocal Corp.,* 248 F.3d 915, 926 (9th Cir. 2001); *Herman v. YellowPages.com, LLC,* 780 F. Supp. 2d 1028, 1035 (S.D. Cal. 2011); *see also Inst. of Veterinary Pathology. v. Cal. Health Lab., Inc.,* 116 Cal. App. 3d 111, 119 (1981). As shown below, Newegg fails to allege facts sufficient to support pleading the existence of an alter ego relationship.

**a. The Counterclaim Should Be Dismissed Because There Is No Unity Between ARC and Digitech.**

To satisfy the unity of interest element, Plaintiffs' allegations must show that the "separate personalities [of the entities] no longer exist...." *Doe v. Unocal Corp.,* 248 F.3d 915, 926 (9th Cir. 2001). The Ninth Circuit has found that, under California law, three factors are critical to finding separate corporate personalities no longer exist: "inadequate capitalization, commingling of assets, [or] disregard of

[6] If for any reason this Court were to find that Delaware law should apply based on the state of incorporation of ARC (Delaware), the result is the same. California and Delaware largely apply the same legal standard to alter ego allegations. *Trans-World Intern., Inc. v. Smith-Hemion Productions, Inc.*, 972 F. Supp. 1275, 1291 (C.D. Cal. 1997). Under Delaware law, a plaintiff alleging alter ego in an attempt to pierce the corporate veil must prove that the separate personalities of the entities do not exist and fraud or a similar injustice as a result. *See e.g. Gadsden v. Home Preservation Co.*, Inc., 2004 WL 485468 *4 (Del. Ch. Feb. 20, 2004) ("A court of equity will disregard the separate legal existence of a corporation where it is shown that the corporate form has been used to perpetuate a fraud or similar injustice."); *Boston Scientific Corp. v. Wall Cardiovascular Tech. LLC,* 647 F. Supp. 2d 358, 366-67 (D. Del. 2009) (alter ego theory applies where plaintiff shows some fraud, injustice or inequity in the use of the corporate form).

corporate formalities." *Katzir's Floor & Home Design, Inc. v. M-MLS.com,* 394 F.3d 1143, 1149 (9th Cir. 2004). Even if accepted as true, Newegg's allegations are insufficient to support an alter ego claim. Newegg does not detail *any* of the factors critical to an alter ego finding.

In *Eclectic Properties East, LLC v. The Marcus & Millichap Co.*, 2012 WL 713289 (N.D. Cal. March 5, 2012), the court found plaintiffs' alter ego allegations insufficient where plaintiffs alleged "a unity of interest and ownership between the corporation and its subsidiary based on the alleged facts that they occupy the same company headquarters, share the same principals, share many of the same employees and agents, and share the same corporate philosophy and operating principles." *Id.* at *5. Plaintiffs also alleged that the parent company owned 100% of the stock of the subsidiary and that the co-founders and co-chairmen of the parent were the registered principals of the subsidiary. *Id.* Additionally, plaintiffs alleged that marketing materials referred to the companies interchangeably and that, as a result, plaintiffs had no way of knowing with which entity they were dealing. *Id.* Still, the court found the plaintiffs did not sufficiently plead alter ego liability because they did not allege facts that could support a finding of inadequate capitalization, commingling of assets, or disregard of corporate formalities. *Id.* Nor did these allegations support "that an inequitable result would follow from respecting corporate separateness." *Id.*; *see also MMI, Inc. v. Baja, Inc.*, 743 F. Supp. 2d 1101, 1111 (D. Ariz. 2010) (finding that sharing the same address is insufficient to establish an alter ego relationship).

Likewise, Newegg's allegations, even if true, are completely inadequate to allege unity between ARC and Digitech. Newegg alleges that Digitech is wholly owned by ARC and that ARC and Digitech share the same office address.

///

///

137443

(Counterclaim, ¶¶ 4-5.) That is it.[7] As in *Eclectic,* these sparse allegations clearly are insufficient to plead a "unity of interest" for an alter ego claim.

**b. The Counterclaim Should Be Dismissed Because Newegg Has Not Pled Fraud Or Injustice.**

Newegg also fails to plead the "fraud or injustice" element of an alter ego claim. Indeed, the counterclaim is completely silent as to what injustice Newegg supposedly would face if the corporate veil is not pierced.

The failure to plead the necessary facts in support of its claim is fatal to Newegg's alter ego allegations. In *Boston Scientific Corp. v. Wall Cardiovascular Tech.,* 647 F. Supp. 2d 358 (D. Del. 2009), the court held that plaintiffs' allegations of fraud were insufficient to support an alter ego claim. *Id.* at 367. Boston Scientific filed a declaratory judgment suit for non-infringement and invalidity against a parent corporation and a subsidiary that owned the patent-in-suit, naming the parent corporation based on an alter ego theory. *Id.* at 360. The court granted defendants' motion to dismiss, finding that the parent was not the alter ego of the subsidiary. *Id.* at 369. Plaintiffs argued that the parent was the alter ego because the parent and subsidiary shared common directors, that the parent controlled the subsidiary, and that the subsidiary was created to forum shop in Texas. *Id.* at 367. As to the fraud element, plaintiffs argued that the subsidiary was created as a "sham" company to engage in forum shopping. *Id.* The court rejected each of these arguments, stating that the "plaintiffs [did not] show fraud, injustice, or inequity in the use of the corporate form." *Id.; see also, Mid-Century Ins. Co. v. Gardner;* 9 Cal. App. 4th 1205, 1212:-16 (1992) (finding no fraud or injustice where a plaintiff is not harmed by recognition of separate corporate identities).

---

[7] Newegg also alleges that ARC represented in a press release that Acacia Research Group LLC and its affiliates acquired patents originally assigned to Polaroid. (Counterclaim, ¶ 7, Ex. A at 12.) As previously explained, Acacia Research Group is a different entity, and this press release is irrelevant to the alleged relationship between Digitech and ARC.

Unlike *Boston Scientific,* Newegg has not even pled a conclusory fraud or injustice allegation. Here, the counterclaim utterly ignores this requisite aspect of alter ego.

Newegg does not sufficiently plead either element of an alter ego claim. Accordingly, for each of these independent failures, ARC's motion to dismiss pursuant to Rule 12(b)(6) should be granted.

**2. Even If Newegg Had Adequately Pled Alter Ego, The Counterclaim Would Still Fail Because ARC Could Not Bring A Patent Infringement Suit Based Upon A "Reverse Piercing" Theory.**

Even if Newegg had adequately pled the existence of an alter ego relationship (which it did not), the counterclaim against ARC still should be dismissed. A parent company cannot bring a suit for patent infringement by virtue of an alter ego relationship with its patent-holding subsidiary *(i.e.,* a theory of reverse piercing of the corporate veil). Therefore, a parent cannot be a proper defendant in a patent infringement declaratory judgment suit, even if it is the alter ego of its subsidiary.

For example, in *Sun Microsystems, Inc. v. Hynix Semiconductor, Inc.,* 608 F. Supp. 2d 1166 (N.D. Cal. 2009), the court rejected the corporate parent's attempt to disregard its subsidiary's corporate form in order to establish a claim in its own name. *Id.* at 1188-89. Similarly, in *Disenos Artisticos, E Industriales, S.A. v. Costco Wholesale Corp.,* 97 F.3d 377 (9th Cir. 1996), the court stated that "[g]enerally, the corporate veil can be pierced only by an adversary of the corporation, not by the corporation itself for its own benefit." *Id.* at 380. *See also In re RCS Eng'rd Prods. Co., Inc.,* 102 F.3d 223, 226 (6th Cir. 1996) ("The general rule is that the corporate veil is pierced only for the benefit of third parties, and never for the benefit of the corporation or its stockholders."); *In re Ozark Rest. Equip. Co., Inc.,* 816 F.2d 1222, 1225 (8th Cir. 1987) (noting that piercing the

corporate veil is designed to protect the rights of third party creditors, not the rights of the corporation itself); *Carey v. Nat'l Oil Corp.*, 592 F.2d 673, 676 (2d Cir. 1979) (disallowing a parent corporation to create a subsidiary corporation and then ignore the separate corporate existence of that subsidiary whenever it would be advantageous to the parent).

Here, because ARC would not be permitted to pierce the corporate veil for its own benefit, *i.e.* to bring a patent infringement suit against Newegg, ARC is not a proper defendant for a declaratory judgment of non-infringement. Therefore, even if Newegg had adequately pled that ARC is the alter ego of Digitech, its claims still would fail.

## IV. CONCLUSION

For each and all of the foregoing reasons, ARC respectfully requests that its motion to dismiss be granted pursuant to either Federal Rule of Civil Procedure 12(b)(1) or 12(b)(6).

DATED: January 7, 2013

HODEL BRIGGS WINTER LLP
KARLA J. KRAFT
ASHLEY MERLO

By: /s/ KARLA J. KRAFT
KARLA J. KRAFT

Attorneys for Counter-Defendant
ACACIA RESEARCH CORPORATION