O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DIGITECH IMAGE TECHS., LLC,<br><br>             Plaintiffs,<br><br>      v.<br><br>NEWEGG INC. and NEWEGG.COM INC.,<br><br>             Defendants,<br><br>NEWEGG INC.,<br><br>             Counter-Plaintiff,<br><br>      v.<br><br>DIGITECH IMAGE TECHNS., LLC, and ACACIA RESEARCH CORP.,<br><br>             Counter-Defendants. | Case No. 2:12-cv-01688-ODW (MRWx)<br><br>**ORDER GRANTING ACACIA RESEARCH CORP.'S MOTION TO DISMISS [30]** |

## I.   INTRODUCTION

Acacia Research Corporation moves to dismiss itself as a defendant in this case for a lack of subject-matter jurisdiction or, in the alternative, for Digitech's failure to state a claim. Because Acacia has no legal interest in U.S. Patent No. 6,128,415 Patent and, consequently, would not have standing to sue for infringement, the Court

finds that that there is no controversy sufficient to confer jurisdiction under the Declaratory Judgment Act. The Court therefore **GRANTS** Acacia's motion to dismiss for lack of subject-matter jurisdiction.[1]

## II. FACTUAL BACKGROUND

On October 2, 2012, Digitech, the present owner of the '415 Patent, sued Newegg for patent infringement. (Compl. ¶ 7.) Acacia, Digitech's ultimate parent company,[2] was not a party to the initial Complaint. (See Compl. 1.) Rather, Acacia was brought into this case on October 25, 2012, when Newegg counterclaimed against Digitech and Acacia. (ECF No. 16.) Newegg's counterclaim seeks a declaratory judgment of noninfringement and invalidity of the '415 Patent. (*Id.*)

Newegg alleges that the Court has subject-matter jurisdiction over Acacia under the Declaratory Judgment Act. (Answer ¶ 6.) In support of this contention, Newegg asserts that the parent-subsidiary relationship between Acacia and Digitech creates a controversy sufficient to confer standing under the Act. (*Id.*) Specifically, Newegg argues that Acacia has an interest—which it styles an "equity interest"—in the '415 Patent because Acacia "has an ownership interest in Digitech directly or indirectly." (*Id.* ¶ 7.) Newegg claims that this equity interest creates a justiciable controversy between the parties, thus making Acacia a proper counter-defendant. (Opp'n 5.)

Newegg alleges three facts to support Acacia's alleged equity interest: (1) Digitech is a subsidiary of Acacia; (2) Digitech and Acacia share the same physical address and place of business; and (3) Acacia stated in a press release filed

---

[1] Having carefully considered the papers filed in support of and in opposition to Acacia's Motion to Dismiss, the Court deems this case appropriate for decision without oral argument. Fed. R. Civ. P. 78; L.R. 7-15.

[2] According to the counterclaim, Digitech is "a wholly-owned subsidiary of Acacia Research Corporation or otherwise affiliated." (ECF No. 16 at ¶ 5.) Acacia notes in its motion that in actuality, Digitech is a wholly owned subsidiary of Acacia Research Group, which is, in turn, a wholly owned subsidiary of Acacia Research Corporation. (Mot. 3.) This information goes outside of the pleadings, but the Court notes that the result in this action is the same whether Digitech is a subsidiary of Acacia, or Acacia's subsidiary's subsidiary.

with the Securities and Exchange Commission that "in May 2012 [Acacia and its affiliates] acquired patents, originally issued to Polaroid, covering digital imaging and related technologies." (ECF No. 16.) These are the only allegations in the counterclaim that address Acacia's relationship to the '415 Patent. Notably, Newegg does not allege that Acacia is the owner, assignee, or exclusive licensee of the '465 Patent. (*See id.*)

## III.  LEGAL STANDARD

The purpose of the Declaratory Judgment Act in patent cases is to provide the allegedly infringing party relief from uncertainty and delay regarding its legal rights. *Micron Tech., Inc. v. Mosaid Techs., Inc.*, 518 F.3d 897, 902 (Fed. Cir. 2008). But the Act "is not an independent basis for subject-matter jurisdiction." *Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329, 1335 (Fed. Cir. 2008). Rather, the Act affords a remedy *only* "if the court has jurisdiction from some other source." *Id.* Additionally, the party instituting the declaratory action must have standing to bring suit, and the issue presented to the Court must be ripe. *Teva Pharm. USA, Inc. v. Novartis Pharm. Corp.*, 482 F.3d 1330, 1337 (Fed. Cir. 2007).

### A.   Subject-matter jurisdiction under the Declaratory Judgment Act

The Declaratory Judgment Act provides that in the case of "an actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The situations in which a potential infringer may challenge the validity of a patent via declaratory judgment are thus limited: A court may exercise subject-matter jurisdiction under the Act only when the claim presents an actual controversy. U.S. Const. art. III, § 2.

In the patent context, an actual controversy exists where "the facts alleged show a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."

*MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007). The declaratory-judgment plaintiff bears the burden of proving that there is an actual controversy. *Fina Research, S.A. v. Baroid Ltd.*, 141 F.3d 1479, 1481 (Fed. Cir. 1998). Moreover, even if an actual controversy exists, the exercise of jurisdiction rests within the sound discretion of the district court. *Id.*

## B.     Standing under the Declaratory Judgment Act

Standing to sue is a threshold requirement in every federal action and must be present at the time suit is brought. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *Sicom Sys. Ltd. v. Agilent Techs., Inc.*, 427 F.3d 971, 975–76 (Fed. Cir. 2005). Section 281 of the Patent Act provides that "a patentee shall have remedy by civil action for infringement of his patent." 35 U.S.C. § 281. The term "patentee" includes the patentee to whom the patent was issued, as well as the patentee's successors in title. 35 U.S.C. § 100(d). Section 281 of the Patent Act, in conjunction with the definition of "patentee," requires that a patent-infringement suit be brought by a party holding legal title to the patent. *Arachnid, Inc. v. Merit Indus., Inc.*, 939 F.2d 1574, 1578–79 (Fed. Cir. 1991). Thus, only patentees, assignees, and exclusive licensees have standing to bring infringement suits. 35 U.S.C. § 281; *Sicom*, 427 F.3d at 976.

The Declaratory Judgment Act does not depart from this requirement. For a declaratory-plaintiff (the alleged infringer) to have standing in a declaratory action involving infringement allegations, the defendant must have been able to bring suit against the plaintiff in the first place. *See Fina Research*, 141 F.3d at 1480–81. A declaratory-defendant therefore must have a legal right in the patent-in-suit. *See id.* (finding no standing under the Act where the declaratory-defendants could not have brought suit for infringement, because they had no legal interest in the patent-in-suit); *see also Top Victory Elecs. v. Hitachi Ltd.*, No. C 10-01579 CRB, 2010 WL 4722482, at *2 (N.D. Cal. Nov. 15, 2000) ("In order for a plaintiff to have standing in a declaratory action involving allegations of patent infringement, the defendant must have a legal right in the patent at issue that would allow the defendant to bring suit for

infringement."); *GMP Techs., LLC v. Zicam, LLC*, No. 08-7077, 2009 WL 5064762, at *2 (N.D. Ill. Dec. 9, 2009).

The law summarized above controls standing in the context of patent-infringement actions at law, namely, claims for monetary damages. There is also authority that recognizes standing for equitable-title holders to a patent. *Arachnid*, 939 F.2d at 1579–80. The equitable-title holder has standing to seek equitable remedies but cannot maintain an action at law for infringement damages. *DDB Techs., L.L.C. v. MLB Advanced Media, L.P.*, 517 F.3d 1284, 1290 (Fed. Cir. 2008).

Equitable title may be defined as "the beneficial interest of one person whom equity regards as the real owner, although the legal title is vested in another." *Id.* at 1578 n.3 (quoting Black's Law Dictionary 1486 (6th ed. 1990)). Equitable title in a patent may be recognized, for example, on behalf of an employer whose inventor-employee has a duty or agreement to assign to the employer any inventions made during the course of employment. *See FilmTec Corp. v. Allied-Signal Inc.*, 939 F.2d 1568, 1572 (Fed. Cir. 1991). This vests the employer with equitable title in inventions, patent applications, and patents on the invention while legal title remains with the inventor. *DDB Techs.*, 517 F.3d at 1290.

## IV. DISCUSSION

Acacia's argument for dismissal is straightforward: just as ownership of a patent-holding subsidiary is insufficient to establish *legal* title or interest in a patent, ownership is likewise insufficient to establish equitable title in a patent. (Mot. 5.) Acacia argues that it is therefore not a proper counter-defendant, because it lacks the requisite interest in the '415 Patent to have standing to bring suit against Newegg. (*Id.*) Without this interest, Acacia argues, there is no case or controversy that would support jurisdiction under the Declaratory Judgment Act.

Newegg counters that Acacia's lack of a legal ownership interest in the '415 Patent is irrelevant because this case is about *equitable* relief (a declaration of

invalidity) and not monetary damages. (Opp'n 5.) Newegg contends that because Acacia is the ultimate parent company of Digitech, Acacia has an "equity interest" in the '415 Patent. (*Id.*) Newegg insists that this equity interest would give Acacia standing to seek equitable relief, and consequently Acacia is a proper counter-defendant to its declaratory counterclaim.

### A. Acacia lacks a legal ownership interest in the '415 Patent

The law is well settled that only the owner or exclusive licensee of a patent has standing to bring a patent-infringement action. 35 U.S.C. § 281; *Sicom*, 427 F.3d at 976. Consequently, a parent company generally cannot sue for patent infringement on behalf of its patent-holding subsidiary. Because Acacia neither owns nor holds an exclusive license to use the '415 Patent, Acacia does not have an ownership interest sufficient to affirmatively bring a patent-infringement suit against Newegg. There is therefore no *legal* controversy between the parties.

### B. Acacia lacks equitable title to the '415 Patent

Acacia's only connection to the '415 Patent is its relationship to Digitech through corporate ownership. Digitech holds legal title to the patents and it is a separate, operational corporation. Acacia cannot be deemed to have equitable title to the patent merely because it owns and exercises control over its subsidiary.

Corporate law sets clear boundaries between parents and subsidiaries. *E.g., Dole Foods Co. v. Patrickson*, 538 U.S. 468, 474–75 (2003) ("A basic tenet of American corporate law is that the corporation and its shareholders are distinct entities."); *Murray v. Mares*, 147 B.R. 688, 690 n.3 (E.D. Va. 1992) (explaining that a corporation is legally separate from the stockholders who own it, and a stockholder has a right to a share of the net assets of the corporation only upon dissolution). The veil separating corporations may be pierced in some circumstances, but Newegg does not allege an alter ego theory in its counterclaim. Moreover, Newegg went so far as to specifically disclaim such a theory in its opposition to this motion. (Opp'n 1.)

/ / /

The fact that a corporate parent's subsidiary owns a patent is not enough to establish that the parent has a *legal* ownership interest in the subsidiary's patent. *Abraxis Bioscience, Inc. v. Navinta LLC*, 625 F.3d 1359, 1366 (Fed. Cir. 2010) (finding that common corporate structure does not overcome the requirement that, even between a parent and a subsidiary, a written assignment is necessary for the parent to have legal title to the patent). It then follows that a parent-subsidiary relationship is likewise insufficient to establish equitable title to a patent.

This conclusion is in harmony with Federal Circuit law. The Federal Circuit has never held that a corporate parent has equitable title in a subsidiary's patents.[3] In addition, several district courts have held that the mere fact that a corporation's subsidiary owns a patent is insufficient to establish that the corporation has equitable title to the patent. *Top Victory*, 2010 WL 4722482, at *4 ("[T]hat a corporate parent's subsidiary owns a patent is not enough to establish that the parent has right to the subsidiary's patents."); *Merial Ltd. v. Intervet, Inc.*, 430 F. Supp. 2d 1357, 1361–63 (N.D. Ga. 2006) (granting motion to dismiss the parent corporation's infringement suit because "standing under the Patent Act cannot be based on the mere fact that [the subsidiary] is a wholly-owned subsidiary of [the parent company]"); *Beam Laser Sys., Inc. v. Cox Commc'ns, Inc.*, 117 F. Supp. 2d 515 (E.D. Va. 2000) ("[O]wnership of corporate stock does not create equitable title in that corporation's property."); *Site Microsurgical Sys., Inc. v. Cooper Cos.*, 797 F. Supp. 333, 338, (D. Del. 1992) (finding the mere fact of a parent-subsidiary relationship did not confer standing on the parent).

Newegg offers no authority persuading the Court otherwise. Newegg principally relies on a case from the Southern District of Texas in which the court

---

[3] The only Federal Circuit cases that recognize an equitable title to a patent involve contractual arrangements to assign rights in inventions between the asserted equitable-title holder and the inventor. *E.g.*, *Film Tec*, 939 F.2d 1568; *Arachnid*, 939 F.2d 1574; *DDB Techs.*, 517 F.3d 1284. The Federal Circuit has also alluded to equitable title where the rights to a patent are being held in a trust. *E.g.*, *Gellman v. Telular Corp.*, 449 F. App'x 941, 944 (Fed. Cir. 2011).

7

1 found that the parent corporation of a patent-holding subsidiary had equitable title to
2 the subsidiary's patents. *Pipe Liners, Inc. v. American Pipe & Plastics*, *Inc.*, 893 F.
3 Supp. 704, 706 (S.D. Tex. 1995). But this Court does not find *Pipe Liners* persuasive
4 in light of the previously outlined Supreme Court and Federal Circuit law. *See, e.g.*,
5 *Dole*, 538 U.S. at 474–75; *Abraxis*, 625 F.3d at 1366.

6       Patent rights are not acquired unless authorized by, and acquired in, the manner
7 prescribed by statute. While Courts permit true equitable-title holders to proceed out
8 of fairness, equitable rules were not intended to circumvent policies and rules having
9 their source in the patent statutes. *Crown Die & Tool Co. v. Nye Tool & Mach.*
10 *Works*, 261 U.S. 24, 44 (1923). The Court cannot find that mere ownership of
11 corporate stock can convey equitable title in a patent without contravening the clear
12 restrictions of both corporations and patent law. 35 U.S.C. §§ 100(d), 281; *Dole*, 538
13 U.S. at 474–75; *Arachnid*, 939 F.2d at 1578–79. Such a holding would lead to absurd
14 results.

15       Acacia's parent-subsidiary relationship with Digitech did not convey any
16 cognizable interest in the '415 Patent—legal or equitable. Acacia therefore would
17 lack standing to sue Newegg for either legal or equitable relief. The Court thus finds
18 that there is no controversy sufficient to confer subject-matter jurisdiction over Acacia
19 under the Declaratory Judgment Act.
20 / / /
21 / / /
22 / / /
23 / / /
24 / / /
25 / / /
26 / / /
27 / / /
28 / / /

## V. CONCLUSION

For the reasons discussed above, Acacia's Motion to Dismiss for Lack of Subject Matter Jurisdiction is **GRANTED**. Acacia is therefore **DISMISSED** from this action.

**IT IS SO ORDERED.**

May 3, 2013

_____
**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**