

| home | Main Menu ▼ | My Stories: 24 ▼ | Forums | Subscribe Now | | Search | 🔍 | Log In |

## LAW & DISORDER / CIVILIZATION & DISCONTENTS

# How Newegg crushed the "shopping cart" patent and saved online retail

It's game over for a patent troll that sued nearly 50 big retailers.

by **Joe Mullin** - Jan 27 2013, 4:00pm EST

INTELLECTUAL PROPERTY    LAWSUITS    127



📷 Aurich Lawson

Anyone who visited Soverain Software's website could be forgiven for believing it's a real company. There are separate pages for "products," "services," and "solutions." There's the "About Us" page. There are phone numbers and e-mail addresses for sales and tech support, even a login page for customers.

It's all a sham. Court records show Soverain hasn't made a sale —*ever*. The various voice mailboxes were all set up by Katherine Wolanyk, the former Latham & Watkins attorney who is a co-founder and partial owner of Soverain. And the impressive list of big corporate customers on its Web page? Those are deals struck with another company, more than a decade ago. That was OpenMarket, a software company that originally created these patents before going out of business in 2001. It sold its assets to a venture capital fund called divine interVentures, which in turn sold the OpenMarket patents to Soverain Software in 2003.

"Thank you for calling Soverain technical support," says Wolanyk, if you press option 2. "If you are a current customer and have a tech support question, please call us at 1-888-884-4432, or e-mail us at support@soverain.com." That number, like the "customer support" number on Soverain's contact page, has been disconnected.

> "We basically took a look at this situation and said, this is bullshit."

### TOP FEATURE STORY



**FEATURE STORY (3 PAGES)**
**Game of foam: 500 mages, orcs, and warriors get medieval in a Maryland state park**
Our LARPing correspondent embeds with the armies of Bellum Aeternus.

123

### STAY IN THE KNOW WITH

    

### LATEST NEWS

**YOU CAN EXPAND, BUT YOU CAN'T HIDE**
NASA to help build telescope that will study Universe's dark past

 Yes, that PC cleanup app you saw on TV at 3 a.m. is a waste

**4/10 AIN'T BAD**
Anti-piracy site claims small, 40 percent victory in anti-Mega campaign

**MOAR MUZAK**
Nokia will enter the mobile music subscription game with Music+

**JUSTICE MOONSHARK**
US Sentencing Commission site down, Anonymous claims responsibility (Updated)

Soverain isn't in the e-commerce business; it's in the higher-margin business of filing patent lawsuits against e-commerce companies. And it's been quite successful until now. The company's plan to extract a patent tax of about one percent of revenue from a huge swath of online retailers was snuffed out last week by Newegg and its lawyers, who won an appeal ruling [PDF] that invalidates the three patents Soverain used to spark a vast patent war.

The ruling effectively shuts down dozens of the lawsuits Soverain filed last year against Nordstrom's, Macy's, Home Depot, Radioshack, Kohl's, and many others (see our chart on page 2). All of them did nothing more than provide shoppers with basic online checkout technology. Soverain used two patents, numbers 5,715,314 and 5,909,492, to claim ownership of the "shopping carts" commonly used in online stores. In some cases, it wielded a third patent, No. 7,272,639.

Soverain will lose the $2.5 million it stood to gain from Newegg, as well as two much bigger verdicts it won against Victoria's Secret and Avon. Those two companies were ordered to pay a total of almost $18 million, plus a "running royalty" of about one percent, after a 2011 trial. The ruling in the Newegg case is a total wipeout for a patent troll that had squeezed many millions from online retailers, was backed by big-firm lawyers, and was determined to collect hundreds of millions more.

For Newegg's chief legal officer Lee Cheng, it's a huge validation of the strategy the company decided to pursue back in 2007: not to settle with patent trolls. Ever.

"We basically took a look at this situation and said, this is bullshit," said Cheng in an interview with Ars. "We saw that if we paid off this patent holder, we'd have to pay off every patent holder this same amount. This is the first case we took all the way to trial. And now, nobody has to pay Soverain jack squat for these patents."



Soverain Software's website gives the impression of an active, thriving company, not a patent troll.

## For online commerce, "the mother of all patent battles"

By 2010, with Newegg's trial in patent-happy East Texas coming up, the entire online shopping sector was waking up to the threat posed by Soverain. The battle with Newegg was "the mother of all patent battles," wrote the research director at InternetRetailer.com. Retailers were tired of paying millions in legal fees, and several decided to cut checks to Soverain for "at least $2.5 million."

The company's lawyers weren't some corner-store operation, either. Back then Soverain was represented by Jones Day, the largest law firm in the US.

> **Soverain... wanted nothing less than to extract a patent tax from the entire retail sector.**

Soverain had already picked a fight with the biggest kid on the playground and won. The first company it sued was Amazon, and Soverain scored a $40 million settlement from the giant retailer back in 2005. The Gap also settled for an undisclosed sum. That was back when defendants were afraid of RIM-sized damage payouts, before eBay v. MercExchange and subsequent Supreme Court decisions started to put some limits on what do-nothing patent holders could win.

So the case filed against Newegg and seven other retailers was closely watched. It went to trial in 2010 with Newegg the only remaining defendant; all the other companies settled. It was a classic East Texas-style trial; a jury was picked on Monday, and the case wrapped up by Friday morning.

During closings, Soverain's lawyer Kenneth Adamo, then a partner at Jones Day, argued the patents were a small but vital part of Newegg's shopping network, like a spark plug in a car. "Take the spark plugs out of the car, and you won't go two blocks," Adamo told the jury, a panel of eight gathered in Tyler, Texas. "Take the shopping cart and the session identifier out of Newegg's system, and they won't sell a nickel of anything."

The jury had its decision within a few hours. Newegg was found to infringe and ordered to pay damages. But the jury ordered it to pay $2.5 million, a slim fraction of the $34 million that Soverain's lawyers had asked for. (Although still more than the $500,000 that Newegg's expert suggested would be appropriate if infringement was found.) Remarkably, the judge overseeing the case ruled during trial that the jury wouldn't be allowed make a decision about Newegg's arguments that the patent was invalid. That line of reasoning—that Soverain's patents were bogus to begin with—would become the basis of Newegg's appeal.

Overall, the damages figure was actually a decent result for Newegg, which would be able to tell the next patent troll that it had cut down Soverain's anticipated payoff by more than 90 percent. But there was more bad news for the California-based technology seller. US District Judge Leonard Davis, who had overseen the case, awarded Soverain an ongoing royalty as well as an additional damages-only trial on a third patent. (That extra trial won't happen now that Soverain's patents are dead on appeal.)

## Getting stronger

Soverain's plans were always bigger than Amazon and bigger than Newegg. It wanted nothing less than to extract a patent tax from the entire retail sector, using three patents it claimed covered pretty much any use of  "shopping cart" technology.

Jones Day and Soverain eventually parted ways, but the patent-holding company was still able to hire another top law firm: Quinn Emanuel. That same law firm has done loads of defense work for Google and become the search giant's go-to patent-troll killer; it's the same firm that defended Samsung in its blockbuster showdown with Apple.

About a year after the Newegg showdown, Soverain's second case went to trial in the same East Texas courtroom. After an hour and a half of deliberation, the jury returned a verdict that ordered Avon and Victoria's Secret to hand over $17.9 million to Soverain—just $1 million less than its lawyers asked for. They also won a running royalty that would have forced the two companies to hand over around one percent of their Web sales for the life of Soverain's patents.

Soverain was strong and getting stronger. The overall economy was struggling, but online commerce was growing at a breakneck pace—and Soverain wanted its one percent. That became crystal clear in 2012, when the company launched a full-scale assault on dozens of retailers: hardware stores like Home Depot, clothiers like Macy's, Nordstrom's and Kohl's, electronics sellers like Best Buy and Radioshack, Drugstore.com and Walgreen's.

PAGE: 1  2  NEXT →

READER COMMENTS  127


**Joe Mullin** / Joe Mullin has covered the intersection of law and technology — including the world's biggest copyright and patent battles — for a number of years, mostly at The American Lawyer.

← OLDER STORY  |  NEWER STORY →

YOU MAY ALSO LIKE 

**SITE LINKS**
About Us
Advertise with us
Contact Us
Reprints

**SUBSCRIPTIONS**
Subscribe to Ars

**MORE READING**
RSS Feeds
Newsletters

**CONDE NAST SITES**
Reddit
Wired
Vanity Fair
Style
Details

Visit our sister sites
Subscribe to a magazine


VIEW MOBILE SITE

© 2013 Condé Nast. All rights reserved
Use of this Site constitutes acceptance of our **User Agreement** (effective 3/21/12) and **Privacy Policy** (effective 3/21/12), and **Ars Technica Addendum** (effective 5/17/2012)
**Your California Privacy Rights**
The material on this site may not be reproduced, distributed, transmitted, cached or otherwise used, except with the prior written permission of Condé Nast.

**Ad Choices**



home | Main Menu ▼ | My Stories: 24 ▼ | Forums | Subscribe Now | Search | Log In

## LAW & DISORDER / CIVILIZATION & DISCONTENTS

# How Newegg crushed the "shopping cart" patent and saved online retail

It's game over for a patent troll that sued nearly 50 big retailers.

by Joe Mullin - Jan 27 2013, 4:00pm EST

INTELLECTUAL PROPERTY    LAWSUITS     127

### On appeal, it's CompuServe to the rescue

Those lawsuits are toast now, thanks to Newegg's appeal victory. The company didn't give up on the invalidity argument that it hadn't been allowed to make to the jury. Instead, it doubled down on it. The main piece of prior art used at the appeals trial was the CompuServe Mall, and Newegg's lawyers, led on appeal by Ed Reines of Weil Gotshal, argued that system hit each and every patent claim in Soverain's patents.

At district court, the judge hadn't even let those invalidity arguments go to the jury, stating there wasn't "sufficient testimony" on obviousness, and that it would be "very confusing" to them.

Soverain argued that CompuServe's system didn't include a "product identifier" as they define it in their patent, and that CompuServe lacked a "shopping cart database." Soverain also argued that its system was new and superior because it was adapted to the Internet, whereas CompuServe's system was a pre-Internet network.

Just saying "do it on the Internet" isn't a novel invention, the appeals court ruled [PDF]. The three-judge panel found that all of the "shopping cart" patent claims were rendered obvious in light of the CompuServe Mall.



Enlarge / A May 1984 magazine ad for CompuServe's Electronic Mall.
gsbrown.org

### Lawsuits Filed by Soverain Over US Patent Nos. 5,715,314 and 5,909,492

All suits filed in the Eastern District of Texas.

| CASE NO. | DATE FILED | DEFENDANTS | CASE STATUS |
|---|---|---|---|
| 6:07-cv-00511 Case also included U.S. Patent No. 7,272,639 | 11/2/2007 | CDW Corporation, Newegg Inc., Redcats USA, Inc., Redcats USA, L.P., Systemax Inc., The Sportsman's Guide, Inc. TigerDirect, Inc. Zappos.com, Inc. | Resolved - All parties settled except Newegg. Verdict & judgment against Newegg for $2.5 million, now wiped out on appeal. |
| 6:09-cv- | 6/25/2009 | J.C. Penney Corporation, Inc. Amway Corp. | Resolved - Verdict & judgment against |

### TOP FEATURE STORY

FEATURE STORY (3 PAGES)

**Game of foam: 500 mages, orcs, and warriors get medieval in a Maryland state park**

Our LARPing correspondent embeds with the armies of Bellum Aeternus.

123

### STAY IN THE KNOW WITH

    

### LATEST NEWS

**YOU CAN EXPAND, BUT YOU CAN'T HIDE**
NASA to help build telescope that will study Universe's dark past

 Yes, that PC cleanup app you saw on TV at 3 a.m. is a waste

**4/10 AIN'T BAD**
Anti-piracy site claims small, 40 percent victory in anti-Mega campaign

**MOAR MUZAK**
Nokia will enter the mobile music subscription game with Music+

**JUSTICE MOONSHARK**
US Sentencing Commission site down, Anonymous claims responsibility (Updated)

| | | | |
|---|---|---|---|
| 00274Case also included U.S. Patent No. 7,272,639 | | Avon Products, Inc. Ballard Designs, Inc. Bidz.com, Inc.Cornerstone Brands, Inc. Etronics, Inc. Garnet Hill, Inc. HSN Improvements, LLC HSN, Inc. QVC, Inc. Shutterfly, Inc. Smith & Noble, LLC The Territory Ahead, Inc. Victoria's Secret Direct Brand Management, LLC Victoria's Secret Stores Brand Management, Inc. Vistaprint, Ltd. Vistaprint USA, Inc. | Victoria's Secret on '314 and '492 in the amount of $9,200,000 plus running royalty of 1%. Verdict & judgment against Avon on '314 and '492 in the amount of $8,700,000 plus running royalty of 1.05% for avon.com and .875% for youravon.com. (Won't be paid in light of Newegg appeal win.) |
| 6:12-cv-00141 | 3/14/2012 | BergdorfGoodman.com, LLC, Best Buy Co., Inc. BestBuy.com, LLC, Neiman Marcus, Inc., Office Max, Inc., Oracle CorporationOracle OTC Subsidiary LLC, The Neiman Marcus Group, Inc. | Pending |
| 6:12-cv-00142 | 3/14/2012 | Fossil, Inc., Home Depot USA, Inc., International Business Machines Corporation, Quill Corporation, Staples, Inc. | Pending |
| 6:12-cv-00143 | 3/14/2012 | GSI Commerce, Inc., PayPal, Inc., Radioshack Corporation, eBay, Inc. | Pending |
| 6:12-cv-00144 | 3/14/2012 | J. Crew Group, Inc., Madewell, Inc. | Pending |
| 6:12-cv-00145 | 3/14/2012 | Euromarket Designs, Inc., Meadowbrook LLC | Pending |
| 6:12-cv-00146 | 3/14/2012 | GHC Specialty Brands, LLC, WW Grainger, Inc. | **Resolved** |
| 6:12-cv-00147 | 3/14/2012 | Bloomingdales, Inc., Macy's, Inc., Macys.com, Inc. | Pending |
| 6:12-cv-00148 | 3/14/2012 | Nordstrom, Inc. | Pending |
| 6:12-cv-00149 | 3/14/2012 | Kohl's Corporation, Kohl's Department Stores, Inc. | Pending |
| 6:12-cv-00150 | 3/14/2012 | Williams-Sonoma, Inc. | Pending |
| 6:12-cv-00151 | 3/14/2012 | Saks Direct LLC, Saks Incorporated | Pending |
| 6:12-cv-00152 | 3/14/2012 | Office Depot, Inc. | Pending |
| 6:12-cv-00153 | 3/14/2012 | Beauty.com, Inc., Drugstore.com, Inc., Vision Direct, Inc., Walgreen Co.Walgreens.com, Inc. | Pending |

## Six years of fighting trolls: An interview with Newegg's Chief Legal Officer, Lee Cheng

Newegg is unique in its willingness to take on patent troll cases and fight them through trial. The company won't hire law firms that take on patent troll cases, and its top lawyer, Lee Cheng, is vocal about his view that others should take the same approach. Cheng talked with Ars about Newegg's strategy, why they do it, and how it's going for them.

**Ars: You've taken a few patent cases through judgment now, including a couple trials. Have you ever lost a case?**

Cheng: We've never lost a patent case, unless you count the Soverain verdict. This is the first case that we took to trial. After Soverain, we won a full defense verdict against Alcatel-Lucent, a corporate troll, at the end of 2011. In 2012 we won some summary judgments and dismissals. Also, we're part of a group that wiped out Kelora.

[The company has another East Texas jury trial coming up later this year, as well.]

**Ars: So what happened at the Soverain trial?**



Newegg Chief Legal Officer Lee Cheng.
Newegg

We told our story to the jury and the judge-who we were, what we represented, and why we didn't think we infringed.

They trotted out some of the inventors, who had long since moved on, and brought them in as high-

priced consultants. And they had a bunch of experts to talk about how this was indeed a truly fundamental breakthrough in technology and innovation.

Lo and behold, I unveil to you the world of—shopping cart! And this shopping cart—unlike all the shopping carts used for hundreds, if not thousands of years—should be paid for based on the total dollars of transactions in the shopping cart.

It's very common in troll cases for them to say, our widget is so critical, we deserve a penny on every dollar. But what they have is a completely commodity functionality, that could be coded any one of dozens of different ways.

I mean, come on. Let's not stretch credibility. The good people of East Texas who sit on juries, and I think juries anywhere, are not going to buy that crap.

The American justice system has issues, but it fundamentally works. The jury system is sound. Juries are people of good will and have common sense.

**Ars: Spoken like a lawyer who won a patent trial! But you didn't, at least at district court. Newegg was found to infringe and ordered to pay $2.5 million.**

The jury in this case found us not guilty of direct infringement, but found us guilty of indirect infringement in five claims. We thought the verdict was very appealable on many different grounds.

Just think about the dynamic if you're a juror. Most of the jury could be very pro defense, and think the plaintiff is full of it. But all you need is a single one who is friendly to the plaintiff and holds out on the verdict. You just need one really stubborn person—that can drive a whole jury to make a decision that swings the other way. Everyone wants to go home. It's not their money. Defense oriented jurors are more likely to compromise and say, 'Maybe we'll just split the baby. Maybe we'll just give them $2.5 million and call it a day.'

When a jury rules against a defendant, even if you are 100 percent certain that prevailing case law supports an appeal where you will win completely, you have to put up a bond for the amount of the damages. That requires you to tie up that amount on your corporate balance sheet until the appeal comes through. So procedurally, defendants tend to be driven to settle.

Reform needs to occur there. If we have to post a bond if we lose, they should have to post a bond if they win. In this case, for example, if they wanted to pursue review by an en banc panel of the Federal Circuit, they should have to post a bond.

For now, it's extremely gratifying to see the Federal Circuit moving in a direction that recognizes imbalances, and prevents the assertion of very poor patents, frivolous patents, to benefit a few—mostly lawyers and hedge fund managers. I seriously doubt inventors get much more than a tiny fraction.

**Ars: Why is Newegg able to pursue this strategy where other companies feel they shouldn't or can't?**

We're majority-controlled by an extremely principled guy, our founder [Newegg CEO Fred Chang]. We have always been willing to sacrifice tactical gain for strategic success. We're successful because, since 2001, we have taken really good care of our customers.

Also, a lot of our systems are homegrown. Our CTO [James Wu, who testified at trial] wrote this code from complete scratch, without knowing about these patents, or anybody else's. His approach to coding is different. In the Soverain case in particular, it gave us a tremendous advantage in being to explain that we didn't infringe. Our shopping cart is architected differently.

And we'll take a case through trial as a matter of principle because we want to accomplish the purpose of making good law. Like eBay did, like Quanta did when they challenged LG. It's part of our duty as a good corporate citizen to try to accelerate the rationalization of patent law.

**Ars: Why is this an important cause to you?**

Patent trolling is based upon deficiencies in a critical, but underdeveloped, area of the law. The faster we drive these cases to verdict, and through appeal, and also get legislative reform on track, the faster our economy will be competitive in this critical area. We're competing with other economies that are not burdened with this type of litigation. China doesn't have this, South Korea doesn't have this, Europe doesn't have this.

Just in our experience, we've been hit by companies that claim to own the drop-down menu, or a search box, or Web navigation. In fact, I think there's at least four that claim to 'own' some part of a search box.

It's actually surprising how quickly people forget what Lemelson did. [referring to Jerome Lemelson, an infamous patent troll who used so-called "submarine patents" to make billions in licensing fees.] This activity is very similar. Trolls right now "submarine" as well. They use timing, like he used timing.

Then they pop up and say "Hello, surprise! Give us your money or we will shut you down!" Screw them. Seriously, screw them. You can quote me on that.

## PAGE: 1 2

READER COMMENTS 127



**Joe Mullin** / Joe Mullin has covered the intersection of law and technology — including the world's biggest copyright and patent battles — for a number of years, mostly at The American Lawyer.

← OLDER STORY    |    NEWER STORY →

YOU MAY ALSO LIKE

**About Us**

**Advertise with us**

**Contact Us**

**Reprints**

**SUBSCRIPTIONS**

**Subscribe to Ars**

**RSS Feeds**

**Newsletters**

**Reddit**

**Wired**

**Vanity Fair**

**Style**

**Details**

Visit our sister sites

Subscribe to a magazine

VIEW MOBILE SITE

© 2013 Condé Nast. All rights reserved
Use of this Site constitutes acceptance of our **User Agreement** (effective 3/21/12) and **Privacy Policy** (effective 3/21/12), and **Ars Technica Addendum (effective 5/17/2012)**
**Your California Privacy Rights**
The material on this site may not be reproduced, distributed, transmitted, cached or otherwise used, except with the prior written permission of Condé Nast.

**Ad Choices**