1
2
3
4
5
6

CHRISTOPHER P. BRODERICK (SBN 180254)
cbroderick@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
777 South Figueroa Street, Suite 3200
Los Angeles, California 90017
Telephone: +1-213-629-2020
Facsimile: +1-213-612-2499

Attorneys for Defendant
Micro Electronics, Inc.

7
8
9
10

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DIGITECH IMAGE
TECHNOLOGIES, LLC,

        Plaintiff,

    v.

MICRO ELECTRONICS, INC.,

        Defendant.

Case No. SACV12-01686 ODW (MRWx)

**DEFENDANT MICRO ELECTRONICS, INC.'S MEMORANDUM IN SUPPORT OF ITS MOTION TO STAY THIS PROCEEDING IN ITS ENTIRETY OR IN THE ALTERNATIVE TO STAY DISCOVERY WITH RESPECT MICRO ELECTRONICS UNTIL THE COMPLETION OF INVALIDITY AND NON-INFRINGEMENT DISCOVERY**

Honorable Otis D. Wright, II

Hearing Date: January 14, 2013
Hearing Time: 1:30 p.m.
Location: Courtroom 11, Spring Street

Case 8:12-cv-01685-ODW-MRW Document 45-1 Filed 01/25/13 Page 2 of 16 Page ID #:58

# TABLE OF CONTENTS

**Page**

I.     SUMMARY OF ARGUMENT .......................................................1

II.    STATEMENT OF FACTS..............................................................2

III.   MEI IS PERIPHERAL TO THE DCM LITIGATIONS ................................3

     A.      Staying The Case Against MEI Will Simplify The Issues And Promote Judicial Economy ................................................4

     B.      Courts Routinely Stay Claims Against Retailer Defendants ...............5

     C.      Staying The Case Against MEI Will Not Prejudice Digitech .............9

     D.      MEI Will Suffer Substantial Prejudice Without a Stay .....................10

     E.      The Court Can Order a Stay Under Its Inherent Power.....................11

IV.   IF THIS CASE IS NOT STAYED IN ITS ENTIRETY, DISCOVERY WITH RESPECT TO MEI SHOULD BE STAYED UNTIL AFTER COMPLETION OF INVALIDITY AND NON-INFRINGEMENT DISCOVERY .......................................................11

V.     CONCLUSION ...........................................................12

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Ambrose v. Steelcase, Inc.*,
   2002 WL 1447871 (N.D. Ill., July 3, 2002) ......................................................... 10

*Aro Mfg. Co. v. Convertible Top Replacement, Co.*,
   377 U.S. 476 (1964) ............................................................................................. 10

*Aspex Eyeware, Inc. v. Revolution Eyeware, Inc.*,
   No. CV 07-05042, slip op. (C.D. Cal. March 7, 2008) ....................................... 11

*Avia Group Int'l, Inc. v. Nike, Inc.*,
   1991 U.S. Dist. LEXIS 20492 (D. Or. Sept. 17, 1991) ...................................... 11

*Brown Mfg. Corp. v. Alpha Lawn & Garden Equip. Inc.*,
   219 F. Supp. 2d 705 (E.D. Va. 2002) .................................................................... 9

*Calmedica LLC v. Novoste Corp.*,
   2004 WL 413296 (N.D. Ill. Jan. 30, 2004) ........................................................... 4

*CMAX, Inc. v. Hall*,
   300 F.2d 265 (9th Cir. 1962) ............................................................................... 11

*Commissariat A L'Energie Atomique v. Dell Computer Corp. et al.*,
   2004 WL 1554382 (D. Del., May 13, 2004) ................................................. 3, 6, 7

*Corry v. CFM Majestic Inc.*,
   16 F. Supp. 2d 660 (E.D. Va. 1998) ................................................................... 8, 9

*Encyclopaedia Britannica, Inc. v. Magellan Navigation, Inc.*,
   512 F. Supp. 2d 1169. (W.D. Wis. 2007) ............................................................ 10

*Eon-Net LP v. Flagstar Bancorp*,
   635 F.3d 1314 (Fed. Cir. 2011) ........................................................................... 10

*Glenayre Elecs., Inc. v. Jackson*,
   443 F.3d 851 (Fed. Cir. 2006) ............................................................................... 4

*In re Papst Licensing*,
   2011 WL 350427 (D. D.C. Feb. 1, 2011) .............................................................. 3

*Intel Corp. v. ULSI Sys. Tech., Inc.*,
   95 F.2d 1566 (Fed. Cir. 1993) ............................................................................... 4

ii

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

C<small>ASES</small>

*Katz v. Lear Siegler,*
    909 F.2d 1495 (Fed. Cir. 1990) ............................................................. 3

*Kessler v. Eldred,*
    206 U.S. 285 (1907) ............................................................................... 4

*Landis v. North Am. Co.,*
    299 U.S. 248 (1936) ............................................................................. 11

*Lemelson v. Apple Computer Inc. et al.,*
    1993 U.S. Dist. LEXIS 20128 (D. Nev. June 4, 1993) ....................... 12

*LG Elec., Inc. v. Asustek Computers,*
    126 F. Supp. 2d 414 (E.D. Va. 2000) .................................................... 5

*MGA, Inc. v. Gen. Motors Corp.,*
    827 F.2d 729 (Fed. Cir. 1987) ............................................................... 4

*Micro Enhanced Tech., Inc. v. Videx, Inc.,*
    No. 1:11-cv-05506, slip op. (N.D. Ill. August 16, 2012) ..................... 7

*Oplus Tech. Ltd. v. Sears Holding Corp.,*
    2012 U.S. Dist. LEXIS 83597 (N.D. Ill. June 15, 2012) ............. 4, 7, 8

*Refac Int'l Ltd. v. IBM,*
    790 F.2d 79 (Fed. Cir. 1986) ............................................................. 5, 6

*Refac Int'l Ltd. v. IBM,*
    798 F.2d 459 (Fed.Cir. 1986) ............................................................ 5, 6

*Ricoh Co., Ltd. v. Aeroflex Inc.,*
    279 F. Supp. 2d 554 (D. Del. 2003) ...................................................... 5

*Rivers v. Walt Disney Co.,*
    980 F. Supp. 1358 (C.D. Cal. 1997) .................................................... 11

*Shifferaw v. Emson USA,*
    2010 WL 1064380 (E.D. Tex. Mar. 18, 2010) ..................................... 5

*Spread Spectrum Screening, LLC v. Eastman Kodak Co.,*
    2010 U.S. Dist. LEXIS 90549 (N.D. Ill. Sept. 1, 2010) ....................... 8

MICRO ELECTRONICS, INC.'S MOTION TO STAY

**I.     SUMMARY OF ARGUMENT**

Defendant Micro Electronics, Inc. ("MEI") requests that the Court stay this action in its entirety because MEI is merely a retailer of the accused products,[1] and as such the claims against it are secondary to the principal claims Digitech has filed against the Digital Camera Manufacturers ("DCMs.")[2]

MEI is a peripheral defendant because it merely resells the accused cameras. MEI is not familiar with the detailed technical workings of the accused cameras nor does it have control over, possession of or access to the technical documents and information needed to defend against patent infringement allegations. The DCMs, which design, develop and/or manufacture the accused digital cameras, are in the best position to defend their own products.

Staying the case against MEI will permit the DCMs, Digitech, and this Court to focus on the merits of the cases, without prejudice to Digitech. On the other hand, without a stay, MEI will suffer substantial prejudice and will be forced unfairly to devote resources to defend against infringement claims which it is not reasonably positioned to defend.

If this Court does not stay the case against MEI in its entirety, MEI requests in the alternative that the Court at least stay discovery with respect to MEI until discovery related to invalidity and non-infringement is complete.

---

[1]  The retailer defendants are B&H Foto & Electronics Corporation, Best Buy Co., Inc., Best Buy Stores, LP, Bestbuy.Com, LLC, Buy.com, CDW LLC, Micro Electronics, Inc., Newegg, Inc., Newegg.Com, Inc., Overstock.com, Inc., and Target Corporation. The retailer case numbers, all beginning with 8-12-cv, are: 1668, 1669, 1671, 1683, 1686-1688, and 1695.

[2]  The DCMs (listing separate but related entities together for convenience) are Canon, Casio, Fujifilm, General Imaging, Hasselblad, Leica, Mamiya, Nikon, Olympus, Panasonic, Pentax/Ricoh, Sakar, Sigma and Sony. The DCM case numbers, all beginning with 8-12-cv, are: 1667, 1670, 1673, 1675-1681, 1685, 1689, 1694, 1696, and 1697.

MICRO ELECTRONICS, INC.'S MOTION TO STAY

## II.    STATEMENT OF FACTS

On July 16, 2012, Digitech asserted the '415 patent against numerous defendants in a single lawsuit (Digitech I).[3]  Digitech's Complaint alleged infringement by two separate and distinct groups of defendants: (1) digital camera manufacturers, and (2) consumer electronics retailers, such as MEI.  (Digitech I, Dkt. 1.)  On October 1, 2012, this Court dismissed all but AgfaPhoto, the first named defendant in Digitech I, due to misjoinder.  (Digitech I, Dkt. 190.)  On October 1 and 2, 2012, Digitech filed new individual complaints against all of the defendants dismissed from Digitech I. The newly filed Digitech cases are pending before this Court.  Digitech has not served infringement contentions and discovery has not begun.

The DCMs are responsible for the design, development and manufacture of the accused cameras.  Digital cameras made by different DCMs have different operational attributes and technical specifications.  Documents and information relevant to the operational attributes and technical specifications of the accused cameras are proprietary to the individual DCMs.  The fact witnesses with knowledge about the design, development and manufacture of the accused cameras will be current and former DCM employees.

Retailers like MEI are mere customers of the DCMs—they purchase the accused cameras from the DCMs and resell them as is.  (*See* MARK THOMAS DECL at ¶ 3.)  MEI does not alter the internal operations, functional attributes, or technical specifications of the cameras.  (*Id*. at ¶ 4.)  MEI has no input or control over the design, development or manufacture of the accused cameras.  (*Id*. at ¶ 5.) MEI does not have substantive knowledge regarding the internal operations of the accused cameras.  (*Id*. at ¶ 6.)  MEI does not have possession, control or access to

---

[3]  *Digitech Image Technologies, LLC v. Agfaphoto Holding GMBH, et al.*, 8:12-cv-01153-ODW-MRW.

MICRO ELECTRONICS, INC.'S MOTION TO STAY

1  the proprietary documents that describe the operational attributes and technical

2  specifications of the accused cameras. (*Id*. at ¶ 7.)

3       The claims of the '415 patent require specific technical elements that the

4  accused cameras may or may not have.  Whether the accused cameras have the

5  required technical elements will be key to the litigation.  A retailer like MEI simply

6  does not have knowledge or information concerning the functional attributes and

7  technical specifications of the accused cameras to contribute to the litigation.

8  **III.  MEI IS PERIPHERAL TO THE DCM LITIGATIONS**

9       Litigation against, or brought by, the manufacturer of infringing goods takes

10  precedence over a suit against customers of the manufacturer.[4]  Courts prefer that

11  "infringement determinations [ ] be made in suits involving the true defendant, the

12  party that controls the product's design, rather than suits involving secondary

13  parties such as customers of the manufacturer." [5]

14       MEI is merely a customer of the DCMs and the infringement allegations

15  against MEI are premised on MEI reselling certain of the DCMs' products.  This

16  case will focus on the technical operations of the DCMs' cameras and whether

17  those products practice the claims of the '415 patent.  Because MEI does not have

18  control, access or possession to documents and information relevant to the

19  operational attributes and technical specifications of the accused cameras, MEI

20  _____

21  [4]  *Katz v. Lear Siegler*, 909 F.2d 1495, 1464 (Fed. Cir. 1990); *Commissariat A
22  L'Energie Atomique v. Dell Computer Corp. et al.*, 2004 WL 1554382, at *2-3
(D. Del., May 13, 2004) (staying the cases against OEM/distributors and
23  retailers pending resolution of the cases against the manufacturers because "it is
common practice to stay all pending [patent] litigation except the [ ] suit
24  between the patent owner and a manufacturer…")

25  [5]  *See e.g., In re Papst Licensing*, 2011 WL 350427, at *10 (D. D.C. Feb. 1, 2011)
(staying litigation against a retailer until after the completion of the
26  manufacturer lawsuits reasoning that infringement determinations should be
made in lawsuits involving the true defendant, the party that controls the
27  product's design, rather than lawsuits involving secondary parties such as
28  customers of the manufacturer.)

MICRO ELECTRONICS, INC.'S MOTION TO STAY

1   lacks relevant and material to the merits of information to this lawsuit and is

2   situated similarly to the peripheral customer defendants in cases where plaintiffs

3   sue manufacturers and their customers. *See e.g.*, *Oplus Tech. Ltd. v. Sears Holding*

4   *Corp.*, 2012 U.S. Dist. LEXIS 83597 at *7 (N.D. Ill. June 15, 2012) ("Defendants

5   are 'peripheral' when they lack relevant and material information…"); *Calmedica*

6   *LLC v. Novoste Corp.*, 2004 WL 413296 at *2 (N.D. Ill. Jan. 30, 2004) (same).

7        As in the case of the defendants in *Oplus* and *Calmedica*, MEI is merely a

8   peripheral defendant  Accordingly, the claims against MEI should be stayed for the

9   reasons set forth in those cases.

10       **A.    Staying The Case Against MEI Will Simplify The Issues And**

11              **Promote Judicial Economy.**

12       Digitech's allegations against MEI relate only to cameras supplied by the

13  DCMs.  Accordingly, resolution of the claims against DCMs will dispose of and

14  eliminate any need to decide Digitech's claims against MEI. *See e.g.*, *Intel Corp. v.*

15  *ULSI Sys. Tech., Inc.*, 95 F.2d 1566, 1568 (Fed. Cir. 1993) ("[E]ither [the accused

16  infringer] will prevail and the use of the [accused product] will be determined to be

17  non-infringing, or [the patentee] will prevail, and [the accused infringer] will be

18  forced to pay damages or license the patent.  In the latter situation, [the accused

19  infringer's] customers would then be immunized from liability.")

20       That is, if the DCMs succeed on either invalidity or non-infringement, ,

21  Digitech would be precluded from pursuing the same allegations against MEI.

22  *MGA, Inc. v. Gen. Motors Corp.*, 827 F.2d 729, 734 (Fed. Cir. 1987) ("The Kessler

23  doctrine bars a patent infringement action against a customer of a seller who has

24  previously prevailed against the patentee because of invalidity or non-infringement

25  of the patent;" *see also Kessler v. Eldred*, 206 U.S. 285 (1907).)

26       Likewise, if Digitech prevails in proving infringement against and recovering

27  damages from any of the DCMs, Digitech will be barred from obtaining further

28  relief from MEI with regard to that DCM's products. *See e.g., Glenayre Elecs., Inc.*

MICRO ELECTRONICS, INC.'S MOTION TO STAY

*v. Jackson*, 443 F.3d 851, 864 (Fed. Cir. 2006) ("[A] party is precluded from suing to collect damages for direct infringement by a buyer and user of a product when actual damages covering that very use have already been collected from the maker and seller of that product.")[6]

### B. Courts Routinely Stay Claims Against Retailer Defendants.

A number of courts have granted the relief requested by MEI herein and stayed claims against peripheral customer and retailer defendants (entities in positions similar to the position MEI is in here) pending resolution of a case against manufacturers (similarly situated to the DCMs here):

In *Refac*,[7] a district court stayed the case against 31 customer defendants.[8] On appeal, the Federal Circuit refused to disturb the decision because "[t]he order staying the prosecution of claims against [customer] defendants is a matter of case management within the discretion of the district court…"[9] The customer defendants in *Refac*, like MEI in this case, are not necessary to advance the litigation. As the Federal Circuit articulated "[p]roof of direct infringement does

---

[6] *Shifferaw v. Emson USA*, 2010 WL 1064380, at *3 (E.D. Tex. Mar. 18, 2010) (if the manufacturer "is found liable and [the patentee] collects damages from [the manufacturer], then the plaintiff cannot then in turn collect damages from the Retailer Defendants, because [plaintiff] cannot receive a double recovery for the same sales."); *LG Elec., Inc. v. Asustek Computers*, 126 F. Supp. 2d 414, 422 (E.D. Va. 2000) ("If the court does find [the manufacturer] liable and allows [the patent owner] to collect royalties… [the patent owner] cannot then in turn collect royalties from the entity to whom the infringer sells the product"); *Ricoh Co., Ltd. v. Aeroflex Inc.*, 279 F. Supp. 2d 554, 558 (D. Del. 2003) (if the defendant licensed the patent in suit, its customers would be immunized from liability.).

[7] *Refac Int'l Ltd. v. IBM*, 790 F.2d 79, 80 (Fed. Cir. 1986).

[8] *Id.* at 80.

[9] *Refac Int'l Ltd. v. IBM*, 798 F.2d 459, 460 (Fed.Cir. 1986).

not require the participation [] of, or prosecution of claims against, the [customer] defendants who, though their participation is stayed, remain parties to the case."[10]

Digitech can and must obtain all relevant documents and information relating to the design, development, and manufacture of the accused cameras from the DCMs. MEI, like the customer defendants in *Refac*, is not in a position to advance Digitech infringement claims. As in *Refac*, this Court should stay the case against MEI to prevent unnecessary discovery and promote judicial economy.

In *Commissariat A L'Energie Atomique*,[11] plaintiff sued over 60 manufacturers, distributors and retailers in several cases. The court stayed the litigation against the OEM/distributors and retailers, holding that a stay was appropriate because: 1) plaintiff would not suffer real prejudice or tactical disadvantage with a stay; and 2) the stay would streamline the case.

The court noted that common practice is to stay all litigation except the suit between the patent owner and the manufacturers. Because the manufacturers are intimately involved in the design, operation, and use of the accused products, they are in the best position to contest the validity and infringement of the asserted patent.[12] The court reasoned that resolving invalidity and infringement issues prior to proceeding against the OEM/distributors and retailers "would surely simplify th[e] case."[13] For example, if the asserted patents were found invalid or not infringed, "there would be no need to proceed against the OEM/distributors or retailers, thus conserving judicial resources and expense to the parties."[14]

Like the manufacturers in *Commissariat A L'Energie Atomique*, the DCMs

---

[10] *Id.*

[11] *Commissariat A L'Energie Atomique*, 2004 WL 1554382 (D.Del. May 13, 2004).

[12] *Id.* at *3.

[13] *Id.*

[14] *Id.*

MICRO ELECTRONICS, INC.'S MOTION TO STAY

are intimately involved in the design, operation, and use of the accused products and are in the best position to contest the validity and infringement of the asserted patent. As in *Commissariat A L'Energie Atomique*, resolving invalidity and infringement issues prior to proceeding against retailers like MEI would simplify the litigations.

In *Micro Enhanced Tech*. v. Videx, Inc., the plaintiff accused Videx and its customers of patent infringement. Videx's customers were accused of "install[ing] and us[ing] the [accused Videx] systems."[15] The court found Videx's customers to be peripheral defendants.[16] The court stayed the claims against Videx's customers because "[p]laintiff's suit is brought primarily against Videx, which has a greater interest in defending against charges of patent infringement, and severance and stay [of Videx's customers] will promote judicial economy by reducing discovery disputes, costs, and motions."[17]

In *Oplus Tech.*, Oplus sued television manufacturer Vizio and retailer Sears for patent infringement. Oplus accused Sears of "importing, selling or offering to sell infringing Vizio products."[18] The court found that Sears was a peripheral defendant that had no involvement in the design, development, manufacture, or any other technical aspect of the accused products,[19] and was unlikely to have information bearing on Oplus's infringement claims or Vizio's defenses.[20] The court stayed the case against Sears. In doing so, the court that

---

[15] *Micro Enhanced Tech., Inc. v. Videx, Inc.*, No. 1:11-cv-05506, slip op. at 2 (N.D. Ill. August 16, 2012).

[16] *Id.*

[17] *Id.*

[18] *Oplus Tech.*, 2012 U.S. Dist. LEXIS 83597 at *3-4 (N.D. Ill. June 15, 2012).

[19] *Id.* at *4.

[20] *Id.* at *8.

"granting a motion to stay… is appropriate because 'litigation against the manufacturer of infringing goods takes precedence over a suit by the patent owner against customers of the manufacturer.'[21] The court also found "[a] stay in this instance benefits judicial economy and serves 'the just, speedy and inexpensive disposition of this litigation.'…Vizio is the real party in interest who must defend this infringement suit. All of the substantive issues regarding patent infringement as they relate to the claims against Sears will be resolved in the action against Vizio – indeed, the resolution of the Vizio action could potentially eliminate the claims against Sears – and this would significantly simplify the issues in the Sears case and substantially reduce the burden of litigation on the parties, as well as the Court."[22]

In *Spread Spectrum Screening, LLC v. Eastman Kodak Co.*,[23] the plaintiff accused Kodak and its customers of patent infringement. Kodak moved to stay the claims against customers. The court found that the customers were peripheral defendants that would "add nothing to plaintiff's infringement action against Kodak."[24] The court stayed the customers because they "have nothing substantive to offer during plaintiff's action against Kodak and likely do not even understand how the product software actually works and will not be helpful to determine whether Kodak's [product] infringes the [patent]… they are merely peripheral to the litigation between plaintiff and Kodak."[25]

Corry v. *CFM Majestic*, Inc.,[26] the plaintiff accused a fireplace manufacturer and its largest distributor of patent infringement. The court stayed the case against

---

[21] *Id.* at *10-11.

[22] *Id.* at *11.

[23] *Spread Spectrum Screening, LLC v. Eastman Kodak Co.*, 2010 U.S. Dist. LEXIS 90549 (N.D. Ill. Sept. 1, 2010).

[24] *Id.* at *8.

[25] *Id.* at *9.

[26] *Corry v. CFM Majestic Inc.*, 16 F. Supp. 2d 660 (E.D. Va. 1998).

MICRO ELECTRONICS, INC.'S MOTION TO STAY

the distributor because it "(i) was only secondarily involved, (ii) did not manufacture the alleged infringing device, and (iii) would be liable only if the main defendant was found to be infringing the patent."[27]  Similarly, MEI is only secondarily involved in this case, does not manufacture the accused cameras, and would be liable only if the DCMs were found to be infringing the '415 patent.

In *Brown Manufacturing v. Celpha Lawn & Garden*,[28] the plaintiff accused the manufacturer, the marketer, a distributor, and two retail sellers of a trenching machine of patent infringement.  The court stayed the case against the distributor and the retail sellers because "the claims associated with those [defendants] are peripheral to the claims that lie at the heart of this case -- that the design and manufacture of the [trenching machine] infringed on [p]laintiff's patents."[29]

### C.    Staying The Case Against MEI Will Not Prejudice Digitech.

Digitech will not be prejudiced by a stay of this case.  Digitech has not invested any effort into the case against MEI that will be wasted with a stay.  Discovery has not yet begun.  Digitech has not served any infringement contentions.

Staying the case against MEI will not impact Digitech's ability to obtain relevant discovery.  Digitech's infringement claims, and many of the defendants' non-infringement defenses, will depend on the design, development, and manufacture of the accused cameras.  As noted, the documents and information relevant to the design, development and manufacture of the accused cameras are proprietary to individual DCMs.  Witnesses with knowledge and information about the design, development and manufacture of the accused cameras will be current and former employees of the DCMs.  Digitech will have full access to relevant

---

[27]  *Id*. at 665-666.

[28]  *Brown Mfg. Corp. v. Alpha Lawn & Garden Equip. Inc.*, 219 F. Supp. 2d 705, 706-07 (E.D. Va. 2002).

[29]  *Id*. at 709.

MICRO ELECTRONICS, INC.'S MOTION TO STAY

1    discovery on the accused products from the DCMs. Digitech will not be able to

2    obtain information from MEI about the accused cameras that it cannot obtain from

3    the DCMs.

4            A stay would also not impact Digitech's ability to recover damages, if any.

5    As noted, if Digitech prevails in its claims against the DCMs, it will be able to fully

6    recover from the DCMs. It is well established that recovery on a judgment

7    constitutes full compensation to the patent owner for related acts of infringement

8    and bars further relief as against other entities. *Aro Mfg. Co. v. Convertible Top*

9    *Replacement, Co.*, 377 U.S. 476, 499 (1964). Simply put, a patentee is entitled to

10   full compensation for related acts of infringement, but the patenteetort victim, is not

11   entitled to multiple recoveries for the same injury. As such, Digitech will not be

12   able to recover any additional damages from MEI.

13           **D.    MEI Will Suffer Substantial Prejudice Without a Stay.**

14           MEI will be severely prejudiced if no stay is entered. MEI's lack of

15   involvement in the development and manufacturing of the accused devices restricts

16   its ability to defend against the infringement claims at the core of this case. *See*

17   *e.g.*, *Encyclopaedia Britannica, Inc. v. Magellan Navigation, Inc.*, 512 F. Supp. 2d

18   1169, 1174. (W.D. Wis. 2007); *Ambrose v. Steelcase, Inc.*, 2002 WL 1447871, at

19   *6-7 (N.D. Ill., July 3, 2002) ("[The customer defendant] is not in a position to

20   defend the infringement claims…"). MEI will also suffer significant disruptions

21   defending against infringement allegations on the DCMs' products. MEI will incur

22   substantial costs associated with discovery, motion practice, claim construction

23   proceedings, and prior art searching, even though resolution of the claims against

24   the DCMs will resolve the major case issues. Imposing unnecessary defense costs

25   artificially drives up settlement demands and is fundamentally unfair. *See e.g. Eon-*

26   *Net LP v. Flagstar Bancorp*, 635 F.3d 1314, 1327 (Fed. Cir. 2011) (criticizing

27   patentee's acts that "exploit[] the high cost to defend complex litigation to extract a

28   nuisance value settlement.")

MICRO ELECTRONICS, INC.'S MOTION TO STAY

**E.     The Court Can Order a Stay Under Its Inherent Power.**

A district court has inherent power to control the disposition of the cases on its docket in a manner which will promote economy of time and effort for itself, for counsel, and for litigants.  *Landis v. North Am. Co.*, 299 U.S. 248, 254-55 (1936); *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962) (same); *Rivers v. Walt Disney Co.*, 980 F. Supp. 1358, 1360 (C.D. Cal. 1997) ("District courts have inherent power to stay their proceedings, which is incidental to the power to promote the efficient disposition of cases on their docket.").  In exercising such discretion, the court "must weight competing interests and maintain an even balance." *Landis*, 299 U.S. at 254-55.[30] All of these factors weigh in favor of staying the case against MEI.  A stay benefits this Court, the plaintiff is not prejudiced by a stay, and MEI will be prejudiced if a stay is not granted.

**IV.     IF THIS CASE IS NOT STAYED IN ITS ENTIRETY, DISCOVERY WITH RESPECT TO MEI SHOULD BE STAYED UNTIL AFTER COMPLETION OF INVALIDITY AND NON-INFRINGEMENT DISCOVERY**

If this Court does not stay the case against MEI in its entirety, the Court should at a minimum stay discovery against MEI until discovery related to invalidity and non-infringement in Digitech's cases against the DCMs is complete.

It is not uncommon for courts to bifurcate issues of liability and damages before substantial discovery has occurred and there is time to stay discovery of damages.[31]  Here, no discovery has occurred and a schedule has not been entered.  Indeed, a stay of damages discovery is appropriate in patent cases to defer costly

---

[30] *See Aspex Eyeware, Inc. v. Revolution Eyeware, Inc*., No. CV 07-05042, slip op. at 7 (C.D. Cal. March 7, 2008) (The Court considers a variety of factors in assessing whether a stay is appropriate: (1) the benefits to the court of a stay; (2) the prejudice to plaintiff if a stay is granted; and (3) the prejudice to defendant if a stay is not granted);  *CMAX*, 300 F.2d at 268.

[31] *See e.g., Avia Group Int'l, Inc. v. Nike, Inc.*, 1991 U.S. Dist. LEXIS 20492, at *6 (D. Or. Sept. 17, 1991).

MICRO ELECTRONICS, INC.'S MOTION TO STAY

1 and possibly unnecessary discovery proceedings on the damages issues pending

2 resolution of the liability issues.[32]  While MEI is not seeking bifurcation, the

3 principle and benefits of bifurcating discovery into different phases applies here.

4      Digitech will not be prejudiced because it can obtain discovery of technical

5 information directly from the DCMs.  Further, Digitech will be able to obtain

6 damages related discovery from all parties, including MEI, towards the end of

7 discovery.  To stay discovery against MEI will further enhance judicial economy

8 because it would streamline the Digitech cases and avoid costly discovery disputes

9 and motions.  Accordingly, if the Court is unwilling to enter a complete stay, the

10 Court should stay discovery with respect to MEI until discovery related to

11 invalidity and non-infringement in Digitech's cases against DCMs is complete.

12 **V.    CONCLUSION**

13      For the foregoing reasons, the claims against MEI should be stayed pending

14 resolution of the litigation against the DCMs.

15      If that relief cannot be had, MEI requests in the alternative that discovery

16 with respect to MEI be stayed until discovery related to invalidity and non-

17 infringement in Digitech's cases against the DCMs is complete.

18 Dated:  November 29, 2012       CHRISTOPHER P. BRODERICK
19                                 Orrick, Herrington & Sutcliffe LLP

21                                 By: *//Christopher P. Broderick*
                                   CHRISTOPHER P. BRODERICK

22                                 Attorney for Defendant Micro Electronics, Inc.

[32]  *See e.g., Lemelson v. Apple Computer Inc. et al.*, 1993 U.S. Dist. LEXIS 20128, at *10 (D. Nev. June 4, 1993).

MICRO ELECTRONICS, INC.'S MOTION TO STAY