printed from http://www.iPFrontline.com

# iP|Frontline

### WORLD'S LEADING IP PORTAL

Printed: Tue, Aug 27, 2013



**MySpace - Eschewing a "Murky Mess"**

Wed, Apr 4, 2012

[Thomas G. Field, Jr.](#)

It is hoped that poignant calls to limit the excesses of patent subject matter jurisprudence will succeed

Judge Plager, joined by Judge Newman, recently called patent subject matter jurisprudence a "murky mess" and a "swamp." MySpace, Inc. v. Graphon Corp., 2012 WL 716435, *7, *8 (Fed. Cir. 2012). He cites with approval, id. at *5 n. 9, Chief Judge Rader's urging that the "court should decline to accept invitations to restrict subject matter eligibility." Classen Immunotherapies, Inc. v. Biogen IDEC, 659 F.3d 1057, 1074 (Fed. Cir. 2011) (Additional views).

Judge Plager also cites with favor the amicus brief of the United States in Prometheus. MySpace at *8. There, the government agrees that claims in issue seem to be invalid. 2011 WL 4040414 at *11. "Contrary to petitioners' argument, however, the barrier to patentability is imposed not by Section 101 but by 35 U.S.C. [§§] 102 and 103." Id. The Supreme Court, since concluding that such an approach would "make the 'law of nature' exception... a dead letter," has rejected it. Mayo Collaborative Services v. Prometheus Laboratories, Inc. (Prometheus), 2012 WL 912952 *16.

But what is "a law of nature," and why is it unpatentable? Writing for the unanimous Court in Prometheus, Justice Breyer notes it "has repeatedly emphasized... that patent law not inhibit further discovery by improperly tying up the future use of laws of nature." Id. at * 13. Yet, his support begins with O'Reilly v. Morse, 56 U.S. (15 How.) 62, 113 (1853), where the Court finds the scope of claim 8 excessively broad. Today, such a problem should be addressed under § 112, not § 101.

Failure to sort such things out precisely means, "cases... do not establish rules that enable a conscientious patent lawyer to determine with a fair degree of accuracy which, if any, program-related inventions will be patentable." Diamond v. Diehr, 450 U.S. 175, 219 (1981) (Stevens, J. dissenting). A major problem is "[t]he Court... [has] never provide[d] a satisfying account of what constitutes an unpatentable abstract idea." Bilski v. Kappos, 130 S.Ct. 3218, 3236 (2010) (Stevens, J. concurring in the judgment).

The same might be said of laws of nature, business methods, mental steps, algorithms, and other terms used to deny protection based on subject matter alone. What is gained by rejecting a claim that exceeds the scope of disclosure on the basis of subject matter? What are the fundamental aims underlying various subject matter rejections? The Court seems not to have given a satisfying account of "unpatentable abstract ideas" and other unpatentable things because it has yet to devise concrete rationales. Unfortunately, rules based on labels that, themselves, lack rationales are worse than useless.

Judges as well as patent attorneys are in the dark. As Judge Plager notes in MySpace, "Our opinions spend page after page revisiting our cases and those of the Supreme Court, and still we continue to disagree vigorously over what is or is not patentable subject matter. This effort to descriptively cabin § 101 jurisprudence is reminiscent of the oenologists trying to describe a new wine. They have an abundance of adjectives --earthy, fruity, grassy, nutty, tart, woody, to name just a few -- but picking and choosing in a given circumstance which ones apply and in what combination depends

8/27/13                                MySpace vs. Facebook a Murky Mess of Patent Footline.com

Case 8:12-cv-01688-ODW-MRW   Document 48-13   Filed 08/31/12   Page 2 of 2   Page ID #:754

less on the assumed content of the words than on the taste of the tongue pronouncing them." Id. at * 6 (citations and note omitted).

Continuing, he says, "[i]n each of sections 102, 103, and 112, the validity issue turns on whether one or more of the particular claims in the patent are rendered invalid by... well developed and generally well understood [criteria]. .... No universal truths need be found... the corpus of jurisprudence need not be expanded, contracted, redefined, or worse, become the source of yet more abstractions." Id. at *7 (note omitted).

Judge Plager therefore recommends that courts, "to control the processes of litigation," should "insist that litigants initially address patent invalidity issues in terms of... §§ 102, 103, and 112. If that were done in the typical patent case, litigation over the question of validity of the patent would be concluded under these provisions, and it would be unnecessary to enter the murky morass that is § 101 jurisprudence. This would make patent litigation more efficient, conserve judicial resources, and bring a degree of certainty to the interests of both patentees and their competitors." Id. He seeks to reduce subject matter issues lest they become, as inequitable conduct claims once were, "the next toss-in." Id. at *8. But, acknowledging that subject matter might need to be initially addressed in some "unusual and infrequent circumstance[s]," he does not seek to eliminate it from consideration.

Dissenting, id. at *11, Judge Mayer correctly counters that In re Comiskey, 554 F.3d 967, 975 n. 7 (Fed.Cir.2009); Bilski v. Kappos, 130 S.Ct. at 3225; and Parker v. Flook, 437 U.S. 584, 593 (1978), require subject matter to be considered as a threshold issue. Those cases, however, should not preclude the Federal Circuit or the Supreme Court from solving the serious problems highlighted by Judge Plager and, if needed, from adjusting legal principles that interfere.

In one Prater opinion, Judge Rich laments, "We have already given this case a disproportionate number of judicial man hours. Judge Smith devoted most of his time to it for the last two months of his life, in addition to the time spent at the end of last term preparing the first opinion. The backlog of this court is growing and so is our disposal time. We have cut back on our planned hearings by 20% since Judge Smith died. We owe it to the other litigants and to the judicial system to get on with our work." In re Prater, 415 F.2d 1378, 1393 (CCPA 1968) (dissenting from grant of petition for rehearing).

Although Judge Rich's observations went unheeded then, maybe repeated experiences of the same ilk will induce courts to heed them now.